**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LISA ALCORN, as Plenary Guardian of the** | ) | |
| **Estate and Person of TYLER LUMAR** | ) | |
| | ) | |
| **Plaintiff** | ) | |
|     **v.** | ) | |
| | ) | |
| **THE CITY OF CHICAGO, a Municipal** | ) | |
| **Corporation; THE CITY OF CHICAGO** | ) | |
| **POLICE DEPARTMENT,** | ) | |
| **OFFICER DANIEL** | ) | |
| **WARREN (#17444), OFFICER CARLOS** | ) | |
| **VEGA (#17477), OFFICER CORRINA** | ) | |
| **ESTEBAN (#17617); OFFICER JUSTIN** | ) | |
| **CONNER (#18863), OFFICER KE PEALS,** | ) | **17 CV 5859** |
| **OFFICER DANY MASTERS HELWINK (#261)** | ) | |
| **OFFICER JAMES JONES (#73),** | ) | |
| **OFFICER ALEXANDE (#7662),** | ) | |
| **OFFICER VINSON (#17066)** | ) | |
| **SERGEANT ALAN LASCH (#1434),** | ) | |
| **SERGEANT KEVIN GEYER (#1679);** | ) | |
| **SERGEANT WESLENE O'DONNELL (#2167),** | ) | |
| **SERGEANT JOHN GARTNER (#2523),** | ) | |
| **CHARLES BARRY (#49970), Individually** | ) | |
| **and in their official capacity as** | ) | |
| **agents/employees of the CITY OF CHICAGO,** | ) | |
| **COOK COUNTY, the COOK COUNTY** | ) | |
| **SHERIFF THOMAS J. DART, and** | ) | |
| **OFFICER T. WLODARSKI, Individually** | ) | |
| **and in his official capacity as an agent/employee** | ) | |
| **of the COOK COUNTY SHERIFF'S OFFICE** | ) | |

**Defendants.**

## COMPLAINT AT LAW AND JURY DEMAND

   NOW COMES Plaintiff LISA ALCORN, as Plenary Guardian of the Estate and Person of

TYLER LUMAR, by her attorneys, O'CONNOR LAW GROUP, LLC, and for their Complaint at

Law against Defendants, THE CITY OF CHICAGO, a Municipal Corporation, OFFICER

DANIEL WARREN (#17444), OFFICER CARLOS VEGA (#17477), OFFICER CORRINA

ESTEBAN (#17617); OFFICER JUSTIN CONNER (#18863), OFFICER KE PEALS, OFFICER DANY MASTERS HELWINK (#261), OFFICER JAMES JONES (#73), OFFICER ALEXANDE (#7662), OFFICER VINSON (#17066), SERGEANT ALAN LASCH (#1434), SERGEANT KEVIN GEYER (#1679), SERGEANT WESLENE O'DONNELL (#2167), SERGEANT JOHN GARTNER (#2523), CHARLES BARRY (#49970), Individually and in their official capacity as agents/employees of the CITY OF CHICAGO, COOK COUNTY, the COOK COUNTY SHERIFF THOMAS J. DART, and OFFICER T. WLODARSKI, Individually and in his official capacity as an agent/employee of the COOK COUNTY SHERIFF'S OFFICE, allege and state as follows:

## JURISDICTION

1.      This action is brought pursuant to 42 USC § 1983 to redress the Defendants' tortious conduct and their deprivation of Plaintiff's rights secured by the U.S. Constitution.

2.      This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. §1331 and supplemental jurisdiction of his state-law claims pursuant to 28 U.S.C. §1367.

3.      Venue is proper under 28 U.S.C. §1391(b).  Plaintiff resides in this judicial district, the Defendants reside in this judicial district, and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES

1.      Plaintiff LISA ALCORN is a resident of Chicago, Cook County, Illinois. ALCORN currently resides at 430 N. Waller Avenue, Unit 2W, Chicago, IL 60644.

2.      Plaintiff LISA ALCORN was appointed as Plenary Guardian of TYLER LUMAR's person and estate on November 7, 2016 by the Probate Division of the Circuit Court of Cook County.

2

4.     Defendant CITY OF CHICAGO is an Illinois municipal corporation that is or was the employer of the individual police officers named as defendants herein.   Each of the aforementioned officers acted as an agent of the City of Chicago while conducting the arrest, search, interrogation, and detention of TYLER LUMAR.   Defendant CITY OF CHICAGO is additionally responsible for the policies and practices of the Chicago Police Department.

5.     Defendants OFFICER DANIEL WARREN (#17444) and OFFICER CARLOS VEGA (#17477) are employees and/or duly authorized agents of the City of Chicago Police Department and/or the CITY OF CHICAGO and were acting in the course and scope of their employment, as well as under color of law.   They were the acting Chicago Police Officers who arrested TYLER LUMAR on August 18, 2016.

6.     DEFENDANT OFFICER KE PEALS is an employee and/or duly authorized agent of the City of Chicago Police Department and/or the CITY OF CHICAGO and was acting in the course and scope of his employment, as well as under color of law.   He was one of the Chicago Police Officers who searched and detained TYLER LUMAR at the 11th District station on August 18, 2016.

7.     DEFENDANT OFFICER ESTEBAN (#17617) is an employee and/or duly authorized agent of the City of Chicago Police Department and/or the CITY OF CHICAGO and was acting in the course and scope of his employment, as well as under color of law.   He was the Chicago Police Officer who received and verified the Lee County Warrant for TYLER LUMAR and issued hold #Z14221 for TYLER LUMAR on August 18, 2016.   OFFICER ESTEBAN (#17617) searched TYLER LUMAR on August 18, 2016.

8.     DEFENDANT JUSTIN CONNER (#18863) is an employee and/or duly authorized agent of the City of Chicago Police Department and/or the CITY OF CHICAGO and was acting

in the course and scope of his employment, as well as under color of law. He was the Chicago Police Officer who took TYLER LUMAR's mugshot for his arrest and also searched TYLER LUMAR on August 18, 2016.

9.     Defendant DANY MASTERS HELWINK (#261) is an employee and/or duly authorized agent of the City of Chicago Police Department and/or the CITY OF CHICAGO and was acting in the course and scope of his employment, as well as under color of law. He was the Watch Commander on duty on August 18, 2016 and August 19, 2016, during the time in which Plaintiff TYLER LUMAR was in lockup at the 11th District.

10.    OFFICER VINSON (#17066) is an employee and/or duly authorized agent of the City of Chicago Police Department and/or the CITY OF CHICAGO and was acting in the course and scope of his employment, as well as under color of law. He is the Chicago Police Officer who received TYLER LUMAR from OFFICER T. WLODARSKI at Cook County Department of Corrections on August 19, 2016.

11.    OFFICER ALEXANDE (#7662) is an employee and/or duly authorized agent of the City of Chicago Police Department and/or the CITY OF CHICAGO and was acting in the course and scope of his employment, as well as under color of law. He is the Chicago Police Officer who transported TYLER LUMAR to the Cook County Department of Corrections on August 19, 2016; he performed a search of TYLER LUMAR at the time of the transfer.

12.    CHARLES BARRY (#49970) is an employee and/or duly authorized agent of the City of Chicago Police Department and/or the CITY OF CHICAGO and was acting in the course and scope of his employment, as well as under color of law. He was the Chicago Police Detention Aide who was responsible for the watch command for Cellblock E on August 19, 2016.

13.    DANY MASTER HELWINK (#261) is an employee and/or duly authorized agent

4

of the City of Chicago Police Department and/or the CITY OF CHICAGO and was acting in the course and scope of his employment, as well as under color of law. He was responsible for watch command of the inmates on August 18, 2016 and August 19, 2016. He supervises the Chicago Police Detention Aides, including CHARLES BARRY (#49970).

14. Defendant JAMES JONES (#73) is an employee and/or duly authorized agent of the City of Chicago Police Department and/or the CITY OF CHICAGO and was acting in the course and scope of his employment, as well as under color of law. He was the District Commander for the 11th District on August 18, 2016 and August 19, 2016.

15. Defendant SERGEANT ALAN LASCH (#1434) is an employee and/or duly authorized agent of the City of Chicago Police Department and/or the CITY OF CHICAGO and was acting in the course and scope of his employment, as well as under color of law. He was the acting Station Supervisor of the 11th District Station during the 2nd watch on August 18, 2016.

16. Defendant SERGEANT KEVIN GEYER (#1679) is an employee and/or duly authorized agent of the City of Chicago Police Department and/or the CITY OF CHICAGO and was acting in the course and scope of his employment, as well as under color of law. He was the acting Station Supervisor of the 11th District Station during the 3rd watch on August 18, 2016. Defendant GEYER was the Chicago Police Officer who acted as the Approving Supervisor, who approved the arrest and finding of probable cause to arrest TYLER LUMAR on August 18, 2016.

17. Defendant WESLENE O'DONNELL (#2167) is an employee and/or duly authorized agent of the City of Chicago Police Department and/or the CITY OF CHICAGO and was acting in the course and scope of his employment, as well as under color of law. He was the acting Station Supervisor of the 11th District Station during the 1st watch on August 19, 2016.

18. Defendant JOHN GARTNER (#2523) is an employee and/or duly authorized agent

5

of the City of Chicago Police Department and/or the CITY OF CHICAGO and was acting in the course and scope of his employment, as well as under color of law. He was the acting Station Supervisor of the 11th District Station during the 1st watch on August 19, 2016.

19. Defendant OFFICER T. WLODARSKI ("15733") was at the time of the alleged events herein, an employee and/or duly authorized agent of the COOK COUNTY SHERIFF and/or COOK COUNTY and was acting in the course and scope of his employment, as well as under color of law.

20. Cook County is a duly incorporated government entity in Illinois and the Sheriff runs the services for its detainees housed at Cook County Department of Corrections, located at 26th and California. Cook County, through the Cook County of Board of Commissioners, is responsible for all jail facilities operated by the Sheriff and/or Cook County, including the Cook County Department of Corrections. Cook County is liable for any judgments related of its agents and employees arising out of an in the course and scope of their employment. These same facts were true during the relevant facts alleged herein.

21. The Sheriff is an independently elected Cook County Officer and a governmental entity. The Sheriff is liable for any judgments related to its agents and employees arising out of and in the course and scope of their employment.

22. Each of the individual Defendants acted under color of law (state action) and within the scope of his employment. Each of the individual Defendants is sued in both his individual and official capacity unless otherwise noted.

23. As alleged in Counts I - IV below, the City of Chicago, the Chicago Police Department, and the individual City of Chicago Police Officer Defendants will collectively be referred to as the "Chicago Police Department."

24.     As alleged in Count V below, the County of Cook, the Cook County Sheriff, and Defendant OFFICER T. WLODARSKI ("15733") will collectively be referred to as the Sheriff of Cook County.

## FACTS

1.     At approximately 3:00 p.m. on August 18, 2016, Chicago Police Officer DANIEL WARREN (#17444) and CARLOS VEGA (#17477) were called to respond to Madison Family Health Center, located at 3800 W. Madison, in Chicago, Illinois, after receiving a complaint from certain medical personal at Madison Family Health Clinic that TYLER LUMAR was yelling at the scene and refusing to leave the medical grounds.

2.     Upon their arrival, the Madison Family Health Center medical staff requested that Chicago Police Officer DANIEL WARREN (#17444) and CARLOS VEGA (#17477) give TYLER LUMAR a verbal notice to inform him that he was banned from the property.

3.     The Madison Family Health Center advised Chicago Police Officers DANIEL WARREN (#17444) and CARLOS VEGA (#17477) that they did not wish to pursue any criminal charges against TYLER LUMAR.

4.     At approximately 3:15 p.m. on August 18, 2016, Chicago Police Officers DANIEL WARREN (#17444) and CARLOS VEGA (#17477) advised TYLER LUMAR that he was banned from returning to the Madison Family Health Center in the future but that he was free to leave; no charges were brought.   TYLER LUMAR thereafter left Madison Family Health Center and proceeded to walk peacefully down on Madison Street.

5.     Then, on August 18, 2016, at approximately 3:50 p.m., Chicago Police Officers DANIEL WARREN (#17444) and CARLOS VEGA (#17477) stopped TYLER LUMAR, who was peacefully walking down Madison Street, and placed him under arrest after advising TYLER

LUMAR that there was a warrant for his arrest issued by Lee County.

6.      On August 18, 2016, at approximately 3:50 p.m. Chicago Police Officers DANIEL WARREN (#17444) and CARLOS VEGA (#17477) searched TYLER LUMAR's person after placing him under arrest.  The Chicago Police Officers who searched TYLER LUMAR found that he was not in possession of any contraband or narcotics.  He did not appear to be under the influence of drugs or alcohol at the time of his arrest.

7.      TYLER LUMAR informed Officers DANIEL WARREN (#17444) and CARLOS VEGA (#17477) that the information they had was incorrect; that there was no outstanding warrant for his arrest.

8.      Officers DANIEL WARREN (#17444) and CARLOS VEGA (#17477) transported TYLER LUMAR to the 11th District Station, located at 3151 W. Harrison St. Chicago, IL 60612.

9.      Upon arrival, Chicago Police Officers, including Officer ESTEBAN (#17617), again searched TYLER LUMAR.  Officer ESTEBAN (#17617) and the other Chicago Police Officers who searched TYLER LUMAR found that he was not in possession of any narcotics.  He did not appear to be under the influence of drugs or alcohol at the time of his arrest.

10.     TYLER LUMAR was booked, processed, and searched by Officer KE PEALS and/or other Chicago Police Officers.

11.     At the time TYLER LUMAR was searched, the booking Chicago Police Officers, including Officer KE PEALS, found that he had $130.00 on his person and a necklace.  The Chicago Police Officers who searched TYLER LUMAR found that he was not in possession of any narcotics.  He did not appear to be under the influence of drugs or alcohol at the time of his arrest.  TYLER LUMAR reported that he was presently taking prescription medication for asthma.

12.     Officer JUSTIN CONNER (#18863) took TYLER LUMAR's mugshot for his

8

arrest and also searched TYLER LUMAR, once again, on August 18, 2016. Officer JUSTIN CONNER found that TYLER LUMAR was not in possession of any narcotics. He did not appear to be under the influence of drugs or alcohol at the time of his arrest.

13.     TYLER LUMAR was received in lockup at District 011, 3151 W. Harrison St. Chicago, IL 60612, on August 18, 2016 at or about 18:26 hours.

14.     Officer CARLOS VEGA (#17477) contacted Lee County through the Law Enforcement Agencies Data System (LEADS) at approximately 4:43 p.m. on August 18, 2016.

15.     At approximately 4:48 p.m., Lee County CO Stewart relayed to the Chicago Police Department that warrant 15TR1515 was valid, that the bond was $500.00, with 10% to apply, so that TYLER LUMAR could pay $50.00 to bond himself out of jail. Lee County further advised the Chicago Police Department that if TYLER LUMAR was unable to bond himself out, to place a hold on LUMAR for Lee County to pick up and extradite TYLER LUMAR.

16.     After receiving Lee County's response, Defendant Chicago Police Officers refused and/or failed to advise TYLER LUMAR that he could bond out by simply paying $50.00 and instead Officer ESTEBAN (#17617) issued a hold for TYLER LUMAR, under hold #z14221.

17.     Defendant Chicago Police Officers then charged TYLER LUMAR under 725 ILCS 5.01/110-3, Issuance of Warrant, Class Z. Chicago Police Officers falsely reported on TYLER LUMAR's Arrest Report that "Bond Information Not Available" even though the Bond Information was provided by Lee County/LEADS at 4:48 p.m. on August 18, 2016.

18.     The Lee County Warrant, 15TR1515, was issued on June 9, 2016 after TYLER LUMAR failed to timely make a payment on an outstanding balance of court costs. TYLER LUMAR owed such costs after pleading guilty to the charge of Driving on a Suspended License, a Class A Misdemeanor, on May 15, 2015. He was charged with this offense on April 10, 2015.

19.     On May 15, 2015, as part of his guilty plea in the Lee County case, TYLER LUMAR was assessed and agreed to pay fines and court costs totaling $673.00.  On November 6, 2015, TYLER LUMAR entered into an installment agreement with Lee County in which TYLER LUMAR agreed to make payments of $25.00 per month, with each payment due on the 1st of the month until all fees and costs were paid in full.  TYLER LUMAR timely made payments from May of 2015 through May of 2016.  TYLER LUMAR made his June 2016 $25.00 payment a few days late, on June 6, 2016, which was received by Lee County.  Unbeknownst to TYLER LUMAR, Lee County had issued warrant 15TR1515 on June 3, 2016 after his payment had not been received on the 1st of June.  The warrant was never vacated or canceled after Lee County received TYLER LUMAR's June installment payment on June 6, 2016.  TYLER LUMAR thereafter timely made his July and August 2016 payments.  On August 18, 2016, at the time Chicago Police Officers DANIEL WARREN (#17444) and CARLOS VEGA (#17477) arrested TYLER LUMAR, the outstanding balance owed by TYLER LUMAR to Lee County was $24.00.  The last and final payment of $24.00 was not due until September 1, 2016.

20.     On or about 11:30 p.m. on August 18, 2016, while still in police custody, TYLER LUMAR experienced an emergent asthma attack and was transferred to Mount Sinai Hospital for evaluation and treatment.

21.     Prior to his transfer, Chicago Police Officers searched TYLER LUMAR's person. The Chicago Police Officers did not find any narcotics on TYLER LUMAR.

22.     TYLER LUMAR was treated in the emergency room at Mount Sinai Hospital for complaints of shortness of breath and an asthma attack.  He was discharged from Mount Sinai's emergency room at approximately 6:30 a.m. on August 19, 2016.

23.     Upon discharge from the emergency room on August 19, 2016, Officer WALTER

DELGADO and other Chicago Police Officers transported TYLER LUMAR back to the 11th District station Officer WALTER DELGADO again searched TYLER LUMAR prior to transporting him back to the 11th District. Officer DELGADO did not find any narcotics on TYLER LUMAR. LUMAR was received by Officer John P. Granat at approximately 7:00 a.m. on August 19, 2016.

24.    TYLER LUMAR was searched, again, by Officer GRANAT and/or other Chicago Police Officers upon his return to the 11th District Station on August 19, 2016. He was not found to have any narcotics on his person.

25.    At approximately 8:40 a.m. on August 19, 2016, TYLER LUMAR was transported to Cook County Department of Corrections, located at 26th and California by Central Detention Prisoner Transport Personnel, including Officer ALEXANDE (#7662). Central Detention personnel again searched TYLER LUMAR prior to transporting him to Cook County. The searching officers, including Officer ALEXANDE (#7662), did not find any narcotics on TYLER LUMAR's person.

26.    At approximately 9:00 a.m. on August 19, 2016, TYLER LUMAR arrived at Cook County Jail and was placed into a group lockup, Bullpen 23, at Cook County Jail, with more than 20 other detainees. TYLER LUMAR was seated next to several other detainees on a bench inside Bullpen 23. While TYLER LUMAR was sitting in Bullpen 23, an unknown African American male, seated to the right of LUMAR, removed contraband from his shoe and dropped it behind the bench that both he and LUMAR were seated on.

27.    Cook County Sheriff Officer T. WLODARSKI recovered a package from the floor which contained 12 individually packaged small white rocks from behind the bench in Bullpen 23 on which TYLER LUMAR was seated. Officer WLODARSKI wrongfully and knowingly

11

claimed that he found the narcotics on TYLER LUMAR's person. Officer WLODARSKI then detained TYLER LUMAR and subsequently turned over the narcotics to Chicago Police Officer VINSON (#17066). Chicago Police Central Detention 5 Transport, Police Officers VINSON (#17066) and ALEXANDE (#7662) transported TYLER LUMAR back to the 11th District Lockup. At approximately 11:04 a.m. on August 19, 2016, TYLER was returned to the 11th District Chicago Police Department, along with the contraband found by WLODARSKI. Officer VINSON (#17066) turned over the narcotics to Station Supervisor Officer JOHN GARTNER (#2523).

28.     Sometime after 11:04 a.m. on August 19, 2016, TYLER LUMAR was placed in Cellblock #E2 at the 11th District.

29.     Officer DANY MASTER HELWINK (#261) was responsible for watch command of the inmates on August 18, 2016 and August 19, 2016.

30.     At approximately 11:15 a.m., TYLER LUMAR was found hanging from his cell by Chicago Police Detention Aide CHARLES BARRY (#49970).

31.     Paramedics were called at 11:17 a.m. and arrived at the 11th District at 11:33 a.m. The paramedics transported TYLER LUMAR from the 11th District to Mount Sinai Hospital.

32.     TYLER LUMAR remained as a patient at Mount Sinai Hospital until September 11, 2016. He was transferred to Kindred North for long term acute care. He was subsequently transferred and currently resides at Ballard Respiratory and Rehabilitation Center in Des Plaines, Illinois.

33.     On August 19, 2016, TYLER LUMAR was released from custody without charging him with any crime.

34.     On August 19, 2016, Chicago Police Department Officer Joseph Tripoli contacted

the Lee County Sheriff's Office and requested that they reissue a warrant for TYLER LUMAR.

35.     Lee County refused to reissue a warrant for TYLER LUMAR.

36.     The Chicago Police Department never charged TYLER LUMAR with possession of a controlled substance or for any other crime related the narcotics/contraband recovered by Officer T. WLODARSKI (#15733).

**COUNT I**
**LUMAR v. CITY OF CHICAGO POLICE DEPARTMENT**
**42 U.S.C. § 1983 – WRONGFUL/UNLAWFUL DETENTION**
**VIOLATION OF 14TH AMENDMENT**

37.     Plaintiff realleges and incorporates fact paragraphs 1 through 36 as Paragraph 37 of Count I.

38.     At the time of his arrest and after transfer to the 11th District station, on August 18, 2016, TYLER LUMAR advised Defendant Chicago Police Officers, including Defendants WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617), that he had made the outstanding payment which served as the basis for the Lee County warrant and that there was no warrant for his arrest.

39.     Defendant Chicago Police Officers, including Defendants WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) also spoke with Casey Tecate who advised them that TYLER LUMAR had made the outstanding payment which served as the basis for the Lee County warrant.

40.     Defendant Chicago Police Officers, including Defendants WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) contacted Lee County through the Law Enforcement Agencies Data System (LEADS) at approximately 4:43 p.m. on August 18, 2016.

41.     On or about August 18, 2016 at 16:48 hours, Defendant Chicago Police Officers, including Defendants WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) received

verification from the Lee County Sheriff's Office that TYLER LUMAR could be released by simply positing $50.00 to bond himself out. They also were informed that the basis for the warrant was TYLER LUMAR's failure to make a payment on court costs owed which were related to a guilty plea on a Class A misdemeanor.

42.     Defendant Chicago Police Officers, including Defendants WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) intentionally failed to advise TYLER LUMAR and instead concealed from him the option to make bail by posting $50.00 to bond himself out.

43.     Defendant Chicago Police Officers, including Defendants WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) falsely advised TYLER LUMAR that Lee County's warrant was a nonbondable offense and that he would have to remain detained at the 11th District station.

44.     Defendant Chicago Police Officers, including Defendants WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) knowingly and intentionally concealed the fact that the arresting charge was a bondable offense with the purpose of restraining TYLER LUMAR against his will.

45.     TYLER LUMAR had more than $50.00 on his person which he would have used to bond himself out if Defendant Chicago Police Officers, including WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) would have advised TYLER LUMAR of his right to bond himself out of jail.

46.     TYLER LUMAR made several phone calls to his mother Lisa Alcorn and his fiancé Casey Tencate on August 18, 2016. If Defendant Chicago Police Officers, including WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) had not concealed from TYLER LUMAR that he had the right to bond himself out of jail, TYLER LUMAR would have requested that his

mother Lisa Alcorn and/or his fiancé Casey Tencate post the $50.00 necessary to bond TYLER LUMAR out of jail.

47.     Instead of offering bail to TYLER LUMAR, the Chicago Police Officer Defendants, including Officer ESTEBAN (#17617), issued a hold for TYLER LUMAR, under hold #z14221.

48.     Defendant Chicago Police Officers then charged TYLER LUMAR under 725 ILCS 5.01/110-3, Issuance of Warrant, Class Z. Chicago Police Officers falsely stated on TYLER LUMAR's Arrest Report that the "Bond Information Not Available" even though the Bond Information was provided by Lee County/LEADS at 4:48 p.m. on August 18, 2016.

49.     Defendant Chicago Police Officers charged TYLER LUMAR with a "z warrant" (nonbondable offense) even though Chicago Police Department policy prohibited the use of "z warrants." Defendant Chicago Police Officers intentionally charged TYLER LUMAR with a "Class Z" (nonbondable) offense even though Defendants knew the Lee County warrant did not support such offense. The Chicago Police Officers did so with the intent to wrongfully detain TYLER LUMAR.

50.     Defendant District Commander JAMES JONES (#73), and Station Supervisors SERGEANT ALAN LASCH (#1434) and SERGEANT KEVIN GEYER (#1679) approved of the charges, approved of the issuance of a Class Z charge, and approved of Officers WARREN (#17444), VEGA (#17477) and ESTEBAN's (#17617) concealment of the fact that TYLER LUMAR could have posted bail and left the 11th District station.

51.     As a result of Defendants' unconstitutional conduct, TYLER LUMAR was unlawfully detained. As a result of his unlawful detainment, TYLER LUMAR attempted to commit suicide, suffering pain, permanent injury, and emotional distress.

52. The conduct of Defendants violated the 14th Amendment to the U.S. Constitution by depriving TYLER LUMAR of life and liberty without due process of law.

53. TYLER LUMAR was deprived of the rights, privileges, and immunities secured to him by the Fourteenth Amendment to the United States Constitution and law enacted thereunder. Therefore, Defendants are liable to Plaintiff TYLER LUMAR pursuant to 42 U.S.C. §1983.

54. The Defendants' misconduct was undertaken with malice, willfulness, and deliberate indifference to TYLER LUMAR'S rights.

55. Defendants' conduct proximately caused the injuries suffered by TYLER LUMAR.

56. As a result of Defendants' conduct, LISA ALCORN, Plenary Guardian of the ESTATE AND PERSON OF TYLER LUMAR, has incurred medical bills, long term residential care bills and other expenses.

WHEREFORE, Plaintiff LISA ALCORN, as Plenary Guardian of the ESTATE AND PERSON OF TYLER LUMAR, prays for judgment in her favor and against Defendants and that she be awarded compensatory and punitive damages, reasonable attorney's fees, and the costs of this action.

**COUNT II**
**LUMAR V. CITY OF CHICAGO POLICE DEPARTMENT**
**42 U.S.C. § 1983 – WRONGFUL/UNLAWFUL DETENTION**
**VIOLATION OF 4TH AMENDMENT**

57. Plaintiff realleges and incorporates fact paragraphs 1 through 36 as Paragraph 57 of Count II.

58. At the time of his arrest and after transfer to the 11th District station, on August 18, 2016 TYLER LUMAR advised Defendant Chicago Police Officers, including Defendants WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617), that he had made the outstanding payment which served as the basis for the Lee County warrant.

16

59.     Defendant Chicago Police Officers, including Defendants WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) also spoke with Casey Tencate, Tyler's fiance' and mother of Tyler's child, who advised them that TYLER LUMAR had made the outstanding payment which served as the basis for the old Lee County warrant.

60.     Defendant Chicago Police Officers, including Defendants WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) contacted Lee County through the Law Enforcement Agencies Data System (LEADS) at approximately 4:43 p.m. on August 18, 2016.

61.     On or about August 18, 2016 at 16:48 hours, Defendant Chicago Police Officers, including Defendants WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) received verification from the Lee County Sheriff's Office that TYLER LUMAR could be released by simply positing $50.00 to bond himself out.  The Lee County Sheriff also advised Defendants that the warrant issued for TYLER LUMAR was for LUMAR's failure to make a payment of court costs after he had plead guilty to a Class A misdemeanor.

62.     Defendant Chicago Police Officers, including Defendants WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) intentionally failed to advise and concealed from TYLER LUMAR that he could be released by simply positing $50.00 to bond himself out.

63.     Defendant Chicago Police Officers, including Defendants WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) falsely advised TYLER LUMAR that Lee County's warrant was a nonbondable offense and that he would have to remain detained at the 11th District station.

64.     Defendant Chicago Police Officers, including Defendants WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) knowingly and intentionally concealed the fact that the arresting charge was a bondable offense with the purpose of restraining TYLER LUMAR against

17

his will.

65.     TYLER LUMAR had more than $50.00 on his person which he would have used to bond himself out if Defendant Chicago Police Officers, including WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) would have advised TYLER LUMAR of his right to bond himself out of jail.

66.     TYLER LUMAR made several phone calls to his mother Lisa Alcorn and his fiancé Casey Tencate on August 18, 2016. If Defendant Chicago Police Officers, including WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) had not concealed from TYLER LUMAR that he had the right to bond himself out of jail, TYLER LUMAR would have requested that his mother Lisa Alcorn and/or his fiancé Casey Tencate post the $50.00 necessary to bond TYLER LUMAR out of jail.

67.     Instead of offering bail to TYLER LUMAR, the Defendant Chicago Police Officers, including Officer ESTEBAN (#17617), issued a hold for TYLER LUMAR, under hold #z14221.

68.     Defendant Chicago Police Officers then charged TYLER LUMAR under 725 ILCS 5.01/110-3, Issuance of Warrant, Class Z. Chicago Police Officers falsely stated on TYLER LUMAR's Arrest Report that the "Bond Information Not Available" even though the Bond Information was provided by Lee County/LEADS at 4:48 p.m. on August 18, 2016.

69.     Defendant Chicago Police Officers charged TYLER LUMAR with a "z warrant" (nonbondable offense) even though Chicago Police Department policy prohibited the use of "z warrants." The Defendant Chicago Police Officers intentionally charged TYLER LUMAR with a "Class Z" (nonbondable) offense even though Defendants knew that the Lee County warrant arose out of a Class A Misdemeanor charge. The Chicago Police Officers did so with the intent to

18

wrongfully detain TYLER LUMAR.

70.     Defendants lacked probable cause to arrest TYLER LUMAR under 725 ILCS 5.01/110-3, Issuance of Warrant, Class Z, as Defendants knew from their direct contact with Lee County, that the underlying charge was for a Class A Misdemeanor bondable offense and not a Class Z nonbondable offense based upon TYLER LUMAR's failure to make payment on an outstanding balance of court costs.

71.     Defendant District Commander JAMES JONES (#73), and Station Supervisors SERGEANT ALAN LASCH (#1434) and SERGEANT KEVIN GEYER (#1679) approved of the charges, approved of the issuance of a Class Z charge, instead of a Class A charge, and approved of Officers WARREN (#17444), VEGA (#17477) and ESTEBAN (#17617) concealment of the fact that TYLER LUMAR could have posted bail and left the 11th District station.  Defendants also knew that bond information was readily available after Lee County had contacted the Chicago Police Department to confirm the issuance of the warrant.

72.     As a result of Defendants' unconstitutional conduct, TYLER LUMAR was unlawfully seized and detained.  As a result of his unlawful seizure and detainment, TYLER LUMAR attempted to commit suicide, suffering pain, permanent injury, and emotional distress.

73.     The conduct of Defendants violated the 4th Amendment to the U.S. Constitution because it resulted in an unlawful seizure and restraint of TYLER LUMAR's freedom of movement in that Defendants unreasonably detained TYLER LUMAR using information known to be false in order to unlawfully charge TYLER LUMAR with a Class Z nonbondable offense.

74.     TYLER LUMAR was deprived of the rights, privileges, and immunities secured to him by the Fourteenth Amendments to the United States Constitution and law enacted thereunder. Therefore, Defendants are liable to Plaintiff TYLER LUMAR pursuant to 42 U.S.C. §1983.

75.     The Defendants' misconduct was undertaken with malice, willfulness, and deliberate indifference to TYLER LUMAR'S rights.

76.     Defendants' conduct proximately caused the injuries suffered by TYLER LUMAR.

77.     As a result of Defendants' conduct, LISA ALCORN, Pleanry Guardian of the ESTATE AND PERSON OF TYLER LUMAR, has incurred medical bills, long term residential care bills and other expenses.

WHEREFORE, Plaintiff LISA ALCORN, as Plenary Guardian of the ESTATE AND PERSON OF TYLER LUMAR, prays for judgment in his favor and against Defendants and that she be awarded compensatory and punitive damages, reasonable attorney's fees, and the costs of this action.

**COUNT III**
**LUMAR V. CITY OF CHICAGO POLICE DEPARTMENT**
**42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**(DENIAL OF PROPER MEDICAL CARE & SUPERVISION)**
**VIOLATION OF 14TH AMENDMENT**

78.     Plaintiff realleges and incorporates fact paragraphs 1 through 36 as Paragraph 78 of Count III.

79.     As outlined in Count I and Count II of the instant complaint (in that the Defendants knew that the Lee County warrant was for a bondable Class A misdemeanor offense and not a Class Z), TYLER LUMAR was wrongfully detained by Defendants.  The wrongful detainment caused TYLER LUMAR to suffer severe emotional and physical distress as LUMAR was transferred for emergency medical treatment at Mount Sinai for an asthma attack after he was advised by Defendants that he could not bail himself out.

80.     Defendants knew that TYLER LUMAR believed himself to be wrongfully detained as TYLER LUMAR had advised Defendants multiple times while in Defendants' custody that he

20

had timely made his installment payment of court costs and that any warrant issued by Lee County was invalid.

81.     Defendants also knew, from speaking with Casey Tecate, TYLER LUMAR's fiancé that she and TYLER LUMAR believed that TYLER LUMAR was being wrongfully detained as Casey Tecate also advised Defendants that TYLER LUMAR had timely made his installment payment of court costs and that any Lee County warrant was invalid.

82.     Casey Tecate advised Defendants that she had proof of all of TYLER LUMAR's payments as she possessed receipts from each monthly installment payment; she offered to provide the receipts to Defendants; however, Defendants refused to accept the documents.

83.     Additionally, the City of Chicago Police Officer Defendants knew that TYLER LUMAR did not possess the controlled substance which was alleged to have been found on his person while he was in the bullpen at Cook County Department of Corrections, located at 26th & California.

84.     After his initial arrest on August 18, 2016, TYLER LUMAR was at all times within the custody of the Chicago Police Department, even while he was treated at Mount Sinai Hospital on August 18, 2016.

85.     Defendants were the sole persons responsible for searching TYLER LUMAR and for transporting TYLER LUMAR to the hospital and to the Cook County Department of Corrections.

86.     TYLER LUMAR was first searched by Chicago Police Officers DANIEL WARREN (#17444) and CARLOS VEGA (#17477) on August 18, 2016, at the time of their initial arrest, at approximately 3:50 p.m. on Madison Street.  Chicago Police Officers DANIEL WARREN (#17444) and CARLOS VEGA (#17477) found no contraband or narcotics on TYLER

21

LUMAR's person.

87.    TYLER LUMAR was searched a second time by Defendants, including Officer ESTEBAN (#17617), when he first arrived to the 11th District station.  Officer ESTEBAN (#17617) found that TYLER LUMAR was not in possession of any contraband or narcotics.

88.    TYLER LUMAR was searched a 3rd time by booking officer KE Peals after arriving at the 11th District station on August 18, 2016.  At the time TYLER LUMAR was searched, the booking Chicago Police Officers found that he had $130.00 on his person and a necklace.  TYLER LUMAR was wearing a long sleeve pocket less shirt and a pair of pocket less gym shorts.   Officer KE Peals and the other Chicago Police booking Officers who searched TYLER LUMAR found that he was not in possession of any contraband or narcotics.

89.    TYLER LUMAR was searched a 4th time by Officer JUSTIN CONNER (#18863), at the time he took TYLER LUMAR's mugshot.  Officer JUSTIN CONNER found that TYLER LUMAR was not in possession of any contraband or narcotics.

90.    TYLER LUMAR was then placed in lockup until he was transferred to Mount Sinai Hospital at about 11:30 p.m. on August 18, 2016 for complaints related to an emergent asthma attack.  The Chicago Police Officers transporting TYLER LUMAR to the hospital searched TYLER LUMAR a 5th time prior to the transfer.  The transporting officers did not find any contraband and/or narcotics on TYLER LUMAR.

91.    Officer WALTER DELGADO and other Chicago Police Officers transported TYLER LUMAR back to the 11th District station from Mount Sinai at approximately 6:30 a.m. on August 19, 2016.  Officer WALTER DELGADO searched TYLER LUMAR for the 6th time prior to transporting him back to the 11th District.  Officer DELGADO did not find any narcotics or contraband on TYLER LUMAR.

92.     LUMAR was received by Officer John P. Granat at the 11th District station at approximately 7:00 a.m. on August 19, 2016.  TYLER LUMAR was searched by Officer GRANAT for a 7th time.  He was not found to have any contraband or narcotics on his person.

93.     At approximately 8:40 a.m. on August 19, 2016, Officer ALEXANDE (#7662), as part of Central Detention Prison Transport, transported TYLER LUMAR to the Cook County Department of Corrections, located at 26th and California.  Prior to transporting TYLER LUMAR to Cook County, Officer ALEXANDE (#7662) searched LUMAR for the 8th time.  Officer ALEXANDE did not find any narcotics or contraband on TYLER LUMAR's person.

94.     As such, TYLER LUMAR had been searched by Defendants at least 8 times prior to the time he was transferred to the custody of the Cook County Department of Corrections.  Upon each search TYLER LUMAR never had any contraband and/or narcotics on his person.

95.     Cook County Department of Corrections maintains video footage of the bullpen lockup areas for pretrial detainees.  Video footage of TYLER LUMAR shows that another detainee sitting next to TYLER LUMAR dropped the contraband on the floor; Cook County Officer T. WLODARSKI then discovered the contraband on the floor of the bullpen.

96.     At no time did Cook County Officer T. WLODARSKI discover the contraband on TYLER LUMAR's person.

97.     Defendants knew that Cook County maintained live footage of the bullpen/holding cells at the time they received TYLER LUMAR back from the Cook County officers.  Defendants never reviewed the footage prior to accepting TYLER LUMAR back into their custody.

98.     TYLER LUMAR continuously advised Defendants that the contraband discovered by Cook County Officer T. WLODARSKI was not in his possession, was not found on his person and was dropped by another detainee.

99. TYLER LUMAR never received a bond hearing for the arrest and Class Z charges brought by Defendants.

100. TYLER LUMAR was instead transported back to the 11th District sometime after 11:04 a.m. on August 19, 2016 and was placed in Cellblock #E2.

101. Defendants did not charge TYLER LUMAR with any offense related to the contraband discovered by Cook County Officer T. WLODARSKI.

102. Officer DANY MASTER HELWINK (#261) was responsible for watch command of the inmates on August 18, 2016 and August 19, 2016.

103. Chicago Police Detention Aide CHARLES BARRY (#49970), working under Officer DANY MASTER HELWINK (#261), was responsible for monitoring and supervising the inmates, including TYLER LUMAR.

104. Defendants, knowingly and wrongfully detaining TYLER LUMAR from the outset of his arrest, without probable cause to arrest him for a Class Z nonbondable offense, and knowing that TYLER LUMAR did not have the contraband/narcotics in his possession which were discovered by Cook County Officer T. WLODARSKI (because Defendants had searched TYLER LUMAR at least 8 times), knew that TYLER LUMAR would become emotionally unstable and a suicide risk as a result of his unlawful incarceration, and knowing that TYLER had exhibited extreme stress because he represented, truthfully, that he had paid the outstanding sums owed to Lee County, yet was told he could not be bonded out even though the CPD officers knew that the this was a bondable arrest and Tyler could easily bond himself out.

105. Defendants knew TYLER LUMAR had a propensity to suffer severe emotional distress from continued unlawful detention, based upon his prior emotional and physical reactions, including the emergent asthma attack for which required medical attention on August 18, 2016.

106.     Defendants showed deliberate indifference to TYLER LUMAR's health and medical needs by failing to take the appropriate steps to protect him, including failing to monitor and supervise him, knowing that TYLER LUMAR posed a substantial risk of self-harm /suicide to himself.

107.     Defendants knew that inmates who are wrongfully detained, such as TYLER LUMAR, pose a substantial risk of suicide and that the risk of suicide increases as the length of wrongful detention progresses.

108.     Knowing this risk of suicide, Defendants consciously disregarded it by failing to perform the minimally required 15 minute inmate checks on TYLER LUMAR.

109.     Chicago Police Department Special Orders and policy require that all inmates are visually checked on every 15 minutes as Defendants know that suicide attempts are common and that inmates pose a substantial risk of self-harm/suicide to themselves.

110.     At approximately 11:15 a.m., TYLER LUMAR was found hanging from his cell by Chicago Police Detention Aide CHARLES BARRY (#49970).

111.     Chicago Police Detention Aide CHARLES BARRY (#49970), working under Officer DANY MASTER HELWINK (#261), knowingly and falsely completed a watch log for August 19, 2016 which purports to show that he performed the required 15 minute visual checks on all inmates, including TYLER LUMAR.  TYLER LUMAR, however, was not brought back to the 11th District until sometime after 11:04 and was found unresponsive at 11:15 a.m.; as such Chicago Police Detention Aide CHARLES BARRY (#49970) could not have performed the required 15 minute checks as documented in his report.  As such, Defendants not only consciously disregarded the risk of suicide to TYLER LUMAR, but knowingly created false records in an attempt to conceal their actions/disregard.

112.     The conduct of the Defendants violated the 14th Amendment to the U.S. Constitution in that it was objectively unreasonable and deliberately indifferent to TYLER LUMAR'S health needs; specifically, Defendants wrongful detention on both August 18, 2016 and on August 19, 2016 (after returning from Cook County) predicated on knowingly false information created a substantial risk of self-harm/suicide to TYLER LUMAR.

113.     Defendants' misconduct was undertaken with malice, willfulness, and deliberate indifference to TYLER LUMAR's rights.

114.     As a proximate result of Defendants deliberate indifference, Plaintiff TYLER LUMAR sustained pain, emotional distress, and permanent injuries by hanging himself in his jail cell.

115.     As a result of Defendants' conduct, LISA ALCORN, Plenary Guardian of the ESTATE AND PERSON OF TYLER LUMAR, has incurred medical bills, long term residential care bills and other expenses.

WHEREFORE, Plaintiff LISA ALCORN, as Plenary Guardian of the ESTATE OF TYLER LUMAR, prays for judgment in his favor and against Defendants and that she be awarded compensatory and punitive damages, reasonable attorney's fees, and the costs of this action.

**COUNT IV**
**LUMAR V. CITY OF CHICAGO POLICE DEPARTMENT**
**42 U.S.C. § 1983 – SUPERVISOR AND MUNICIPAL LIABILITY**

116.     Plaintiff realleges and incorporates fact paragraphs 1 through 36 as Paragraph 116 of Count IV.

117.     In August of 2016, and for a period of time prior, Defendants had notice of a widespread practice by employees at Chicago Police district stations, specifically the 11th District station under which Chicago Police Detention Aides would falsify watch logs and other records

by falsely claiming to perform the required 15 minute visual checks on inmates.

118.    Chicago Police Department Special Orders require that lockup personnel complete a visual check of each arrestee every 15 minutes and that the personnel create an Inspection Log which records the time of each inspection, a concise statement of conditions found, notable occurrences, actions taken, and the initials and employee identification number.

119.    Around and before the suicide attempt of TYLER LUMAR, it was extremely common for Chicago Police Department employees who were responsible for performing the 15 minute visual checks on inmates to falsely reports that such checks were being performed according to Chicago Police Department Special Order.

120.    Specifically, there existed, around and before the time of TYLER LUMAR'S attempted suicide, a widespread practice within the Chicago Police Department under which employees, including Chicago Police Detention Aides and Watch Commanders, commonly created an Inspection Log which falsely stated that the employee was performing the required visual inmate checks every 15 minutes.  Instead, the employees engaged in a widespread practice of completing the Inspection Logs only for purposes of satisfying the requirements of the Special Order; however, the employees failed to actually perform the visual checks.  The employees then engaged in the practice of providing these Inspection Logs to their supervisors, who also knew them to be false.

121.    This widespread practice was and is allowed to flourish because the City of Chicago, through its agents, including the Chicago Police Department, directly encouraged or approved and was thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control police officers and personnel and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging

27

future abuses such as those that caused TYLER LUMAR's injuries.

122.    The above described widespread practice, so well-settled as to constitute the de facto policy of the City of Chicago and the Chicago Police Department, were able to exist and thrive because governmental policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

123.    Defendants violated TYLER LUMAR's rights by establishing and maintaining policies and practices that were the moving force for the foregoing constitutional violations he suffered.  Specifically, Chicago Police Detention Aide CHARLES BARRY (#49970) falsely created an Inspection Report purporting to claim that he conducted 15 minute visual checks of TYLER LUMAR.  CHARLES BARRY (#49970) failed to monitor and supervise TYLER LUMAR every 15 minutes, even though he and the other Defendants knew he posed a substantial risk of suicide to himself.  CHARLES BARRY's participation in the City of Chicago's widespread practice caused CHARLES BARRY to leave TYLER LUMAR unattended so that he was able to inflict self-harm/suicide upon himself.

124.    As a proximate result of Defendants deliberate indifference, Plaintiff TYLER LUMAR sustained pain, emotional distress, and permanent injuries by hanging himself in his jail cell.

125.    TYLER LUMAR's injuries were caused by employees/agents of the Chicago Police Department and the CITY OF CHICAGO, including but not limited to the individually named Defendants who acted pursuant to the Chicago Police Department and/or the CITY OF CHICAGO and their policies and practices in engaging in misconduct described in this count.

126.    The Chicago Police Department and the City of Chicago are therefore directly liable for TYLER LUMAR's injuries.

127.    As a result of Defendants' conduct, LISA ALCORN, Plenary Guardian of the ESTATE AND PERSON OF TYLER LUMAR, has incurred medical bills, long term residential care bills and other expenses.

WHEREFORE, Plaintiff LISA ALCORN, as Plenary Guardian of the ESTATE OF TYLER LUMAR, prays for judgment in his favor and against Defendants and that she be awarded compensatory and punitive damages, reasonable attorney's fees, and the costs of this action.

**COUNT V**
**LUMAR v. SHERIFF OF COOK COUNTY**
**42 U.S.C. § 1983 – WRONGFUL/UNLAWFUL DETENTION**
**VIOLATION OF 14TH AMENDMENT**

126    Plaintiff realleges and incorporates fact paragraphs 1 through 36 as Paragraph 126 of Count V.

127    At no time did TYLER LUMAR bring in or carry in any narcotics or other contraband to Cook County Jail, either on his person or otherwise.

128    At all times while TYLER LUMAR remained at Cook County Jail, TYLER LUMAR did not obtain and/or possess any contraband and/or narcotics on his person.

129    Sometime after 9:00 a.m. on August 19, 2016, TYLER LUMAR was placed into Cook County Jail, Bullpen 23 with more than 20 other detainees. While TYLER LUMAR was sitting in Bullpen 23, an unknown African American male, seated to the right of LUMAR, removed contraband from his shoe and dropped it behind the bench that both he and LUMAR were seated on.

128.    Cook County Sheriff Officer T. WLODARSKI recovered a package which contained 12 individually packaged small white rocks from the floor behind the bench where LUMAR and several other inmates were seated.

129.    At no time did Cook County Officer T. WLODARSKI locate the contraband on

29

TYLER LUMAR's person.

130.     Officer WLODARSKI, however, wrongfully and knowingly claimed that he found the narcotics on TYLER LUMAR's person. Officer WLODARSKI then detained TYLER LUMAR and subsequently turned over the narcotics to Chicago Police Officer VINSON.  Chicago Police Central Detention 5 Transport, Police Officers VINSON (#17066) and ALEXANDE (#7662) transported TYLER LUMAR back to the 11th District Lockup.  At approximately 11:04 a.m. on August 19, 2016, TYLER was returned to the 11th District Chicago Police Department, along with the contraband found by WLODARSKI at the Cook County Jail.  Officer Vinson turned over the narcotics to the Station Supervisor Officer John Gartner (#2523).

131.     TYLER LUMAR continuously advised Defendants that the contraband discovered by Cook County Officer T. WLODARSKI was not in his possession, was not found on his person and was dropped by another detainee.

132.     The Cook County Department of Corrections maintains video footage of the bullpen lockup areas for pretrial detainees.  Video footage of TYLER LUMAR shows that another detainee sitting next to TYLER LUMAR dropped the contraband on the floor immediately before Cook County Officer T. WLODARSKI discovered the contraband on the floor of the bullpen. Officer WLODARSKI never reviewed the video footage of Bullpen 23.

133.     COOK COUNTY knew that the Cook County Jail maintained live footage of the bullpen/holding cells.  Defendants never viewed the footage of Bullpen 23.

134.     Officer WLODARSKI then wrongfully and knowingly falsified an Incident Report with the Cook County Sheriff's Office claiming that he recovered the contraband and/or narcotics from TYLER LUMAR's person while processing new prisoner arrestees.

135.     Officer WLODARSKI acted with the intent to wrongfully detain TYLER LUMAR.

136.    Officer WLODARSKI then contacted the Chicago Police Department and returned TYLER LUMAR to Officer DANIEL WARREN (#17444).

137.    The Chicago Police Department never arrested or charged TYLER LUMAR with possession or any other crime related to the contraband/narcotics.

138.    As a result of Defendants' unconstitutional conduct, TYLER LUMAR was unlawfully detained.  As a result of his unlawful detainment, TYLER LUMAR became emotionally and medically unstable, attempted to commit suicide.  He suffered pain, permanent injury, and emotional distress.

139.    The conduct of Defendants violated the 14th Amendment to the U.S. Constitution by depriving TYLER LUMAR of life and liberty without due process of law.

140.    TYLER LUMAR was deprived of the rights, privileges, and immunities secured to him by the Fourteenth Amendment to the United States Constitution and law enacted thereunder. Therefore, Defendants are liable to Plaintiff TYLER LUMAR pursuant to 42 U.S.C. §1983.

141.    The Defendants' misconduct was undertaken with malice, willfulness, and deliberate indifference to TYLER LUMAR'S rights.

142.    Defendants' conduct proximately caused the injuries suffered by TYLER LUMAR.

143.    As a result of Defendants' conduct, LISA ALCORN, Guardian of the ESTATE OF TYLER LUMAR, has incurred medical bills, long term residential care bills and other expenses.

WHEREFORE, Plaintiff LISA ALCORN, as Plenary Guardian of the ESTATE OF TYLER LUMAR, prays for judgment in his favor and against Defendants and that she be awarded compensatory and punitive damages, reasonable attorney's fees, and the costs of this action.

31

**JURY DEMAND**

Plaintiff LISA ALCORN, as Plenary Guardian of the ESTATE OF TYLER LUMAR, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

s/Eileen M. O'Connor

Eileen M. O'Connor

Eileen M. O'Connor, #6290372
O'CONNOR LAW GROUP LLC
Attorney for Plaintiff
140 S. Dearborn, Suite 320
Chicago, IL 60603
Phone: (312) 236-1814
Facsimile: (312) 580-5479
Email  eoc@oconnorlawgrp.com