IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA ALCORN, et al., ) | |
| ) | CASE NO. 17 C 5859 |
| Plaintiff, ) | |
| vs. ) | JUDGE KENDALL |
| ) | |
| CITY OF CHICAGO, et al. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS DANIEL WARREN, CARLOS VEGA, CORRINA ESTEBAN, JUSTIN CONNER, KIMONI PEALS, DANY MASTERS HELWINK, JAMES JONES, DIETRICE ELLENS-ALEXANDER, PETER VINSON, ALAN LASCH, KEVIN GEYER, WESLENE O'DONNELL, JOHN GARTNER, CHARLES BARRY, JONATHAN ERRUM, AND FREDERICK ULLEWEIT'S MOTION TO DISMISS COUNTS I, V, VI, AND VII OF PLAINTIFF'S FIRST AMENDED COMPLAINT AT LAW**

Defendants Daniel Warren, Carols Vega, Corrina Esteban, Justin Conner, Kimoni Peals, Dany Masters Helwink, James Jones, Dietrice Ellens-Alexander, PeterVinson, Alan Lasch, Kevin Geyer, Weslene O'Donnell, John Gartner, Charles Barry, Jonathan Errum, and Frederick Ulleweit (collectively herein "Defendants"), by and through one of their attorneys, Caroline Fronczak, Chief Assistant Corporation Counsel, hereby move to Dismiss Counts I, V, VI, and VII[1] of Plaintiff's First Amended Complaint at Law. In support thereof, Defendants state:

**INTRODUCTION**

Plaintiff brings four claims pursuant to 42 U.S.C. §1983 against The City of Chicago Police Department. Plaintiff defines the "Chicago Police Department" as the City of Chicago, the Chicago Police Department, and the individual City of Chicago Police Officer Defendants. *See* Plaintiff's First Amended Complaint (hereinafter referred to as "Complaint"), ECF No. 69, at

---

[1] All Individual Chicago police officers and employees, except Defendant Detention Aide Jonathan Errum, are moving to dismiss Count VII of Plaintiff's First Amended Complaint.

1

¶6. This motion is brought on behalf of the City of Chicago employees which have been identified above as "Defendants." This Court must dismiss Count I, V, and VI against the Defendants because they are devoid of sufficient facts that state claims for relief that are plausible on their face. Further, Count VII should be dismissed against all Defendants, except for Jonathan Errum, because Plaintiff fails to state a set of facts that would establish personal liability of those Defendants.

## FACTS[2]

Plaintiff, Lisa Alcorn (hereinafter referred to as "Plaintiff") is the appointed guardian of Tylar Lumar (hereinafter referred to a "Lumar"). On August 18, 2016 at approximately 3:50 p.m., Lumar was arrested by Defendants Daniel Warren ("Warren") and Carlos Vega ("Vega"). *See* Complaint at ¶ 36. Lumar was arrested based upon a traffic warrant for his arrest from Lee County. *Id.* Lumar was searched, and neither contraband nor narcotics were found at that time. *Id.* at ¶ 37. Lumar informed the officers there was no outstanding traffic warrant for his arrest. *Id.* at ¶38. Lumar was transported to Chicago police department's 11th district police station, and he was searched and processed, and received in the11th district lock-up on August 18, 2016 at approximately 18:26. *Id*. at ¶¶ 40 – 44. Lumar was searched multiple times, and not found in possession of contraband, nor did he appear to be under the influence of drugs or alcohol. *Id.* At approximately 4:48 p.m., it was confirmed that the Lee County traffic warrant 15TR1515 was valid, the bond was $500.00, and Lumar could pay $50.00 to bond himself out of jail. *Id.* at ¶ 46. On June 17, 2015, Chief Judge of the Circuit Court of Cook County, entered General Administrative Order No. 2015-06 regarding Procedures for Arrests on Illinois Intrastate Warrants Issued Out of Cook County. *See* General Administrative Order No. 2015-06 ("The

---

[2] For purposes of this motion to dismiss only, Defendants take as true Plaintiff's well-pleaded allegations in her First Amended Complaint.

Order"), attached hereto as Exhibit A[3]. The Order states, "Defendants taken into custody by an arresting agency located within Cook County on an arrest warrant issued by an Illinois state court outside of Cook County *shall be required to appear in bond court* in the appropriate district or division of this Court. *Id. (emphasis added).* A hold was placed on Lumar. *Id.* at ¶47 Lumar was charged under 725 ILCS 5.01/110-3, Issuance of Warrant, Class Z. *Id.* at ¶ 48. At 11:30 p.m. on August 18, 2016, Lumar was transferred to Mount Sinai Hospital for evaluation and treatment of an asthma attack. *Id.* at ¶ 51. Both before and after his visit to Mount Sinai, Lumar was searched and not found to be in possession of contraband. *Id*. at ¶¶ 52-55. Lumar was returned to the 11th district on August 19, 2016 at 7:00 a.m. *Id.* at ¶ 54. At 8:40 a.m., Lumar was transported to Cook County Department of Corrections by Vinson and Alexander. *Id.* at ¶ 56. Lumar was placed in Bullpen 23 with other detainees. *Id.*at ¶ 57. Lumar was seated next to an unknown African American male, who removed contraband from his shoe and dropped it behind the bench. *Id.* The contraband was dropped while Cook County Sherriffs Wlodarski, Crawford, Garmon, and Leon were searching the pretrial detainees who were inside Bullpen 23. *Id.* at ¶ 58. Neither Vinson nor Alexander witnessed Wlodarski pick up the package believed to be narcotics. *Id.* at ¶ 180. *Id.* at ¶58. Wlodarski recovered the package containing 12 small white rocks, and removed Lumar from the Bullpen. *Id.* at ¶59. While Cook County Sherriff's Wlodarski and Crawford restrained Lumar, Defendant Vinson handcuffed Lumar. *Id.* at ¶ 60. The narcotics were turned over to Cook County Lt. Angela Lewis. *Id.* at ¶ 61. Wlodarski claimed that he found the narcotics on Lumar's person. *Id.* Wlodarski told Vinson and

---

[3] While in general, consideration of matters outside the pleadings is improper without conversion of a 12(b)(6) motion into a motion for summary judgment, documents that a defendant attaches to a motion to dismiss may be considered if such documents are incorporated into the complaint by reference or are matters of which a court may take judicial notice and are central to the plaintiff's claim. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). Here, this Court may take judicial notice of the General Administrative Order (Ex. A). Exhibit A is an order issued by the Chief Judge of the Circuit Court of Cook County. Accordingly, these documents are prior court records whose application to the current proceeding is beyond reasonable dispute, and contain easily verifiable facts.

Alexander that he found narcotics on Lumar's person. *Id.* at ¶ 182. Vinson and Alexander transported Lumar back to the 11th District along with the recovered contraband. *Id.* at ¶ 62. The contraband was turned over to Chicago police Sgt. Gartner at the 11th district. *Id.* Lumar was returned to the 11th district lock-up and placed in cell E2 by Detention Aide Jonathan Errum. *Id.* at ¶62, 227. While placing him into his cell, Lumar was visbly upset, anxious, and appeared hopeless about his situation, and informed Errum that he was suicidal and hopeless. *Id.* at ¶ 227. Lumar only express his suicidal thoughts to Errum. *Id.* at ¶ 245. Erick Spann, another detainee, was housed in cell E1. *Id.*at ¶ 65. After Lumar was placed in his cell, Spann heard Lumar praying to God for forgiveness. *Id.* at ¶ 67. Later, Spann heard loud banging noises coming from Lumar's cell. *Id.* at ¶ 230. Spann then yelled for a guard because he needed tissue. *Id.* at ¶ 231. Defendant Charles Barry came into the cellblock to deliver tissue, and noticed Lumar hanging from his cell. *Id.* at 232. Lumar was placed in his cell between 10:15 a.m. and 10:45 a.m. and found hanging at 11:15 a.m. *Id.* at ¶¶226, 234.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts, accepted as true, "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks omitted). *Iqbal* goes on to state that legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to the presumption of truth, and can be disregarded when evaluating whether the complaint pleads a claim. *Id.* at 678-79. A

plaintiff cannot "unlock the doors of discovery" when "armed with nothing more than conclusions"; such a complaint must be dismissed under Rule 12(b)(6). *Id.*

## ARGUMENT

### I. Count I, Plaintiff's wrongful/unlawful detention claim in violation of the 4th Amendment, must be dismissed.

Plaintiff alleges that Defendants Warren and Vega lacked probable cause to arrest Lumar under 725 ILCS 5.01/110-3, issuance of a Warrant, Class Z because they knew that the underlying charge was a Class A misdemeanor bondable offense and not a Class Z non-bondable offense based upon Lumar's failure to make a payment. Plaintiff's Count I must be dismissed since: 1.) Defendants Warren and Vega had probable cause to arrest Lumar based on a facially valid warrant and 2) Defendants Warren and Vega are entitled to qualified immunity from a 4th Amendment violation because Judge Evans' Court order required them to hold Lumar and bring him to Court.

#### a. Since Warren and Vega had probable cause to arrest Lumar, based on a facially valid warrant, Count I must be dismissed.

A police officer who receives a facially valid arrest warrant is ordinarily expected to act upon it, not to second-guess the court's decision to issue it. *Brunson v. Murray*, 843 F.3d 698, 709 (7th Cir. 2016). An officer does not personally violate the Constitution by making an arrest the court has authorized. *Id*.

There are two narrow exceptions to this rule. One narrow exception is where a reasonable officer would have known that the evidence provided to support the warrant failed to establish probable cause. *Williamson v. Curran*, 714 F.3d 432, 442 (7th Cir. 2013). That exception does not apply here. Defendants Warren and Vega would not have known what evidence was provided to support the issuance of the Lee County warrant. Plaintiff has not made any

5

allegations that Warren and Vega had any knowledge of the evidence used to obtain the warrant. Therefore, this case does not present an issue concerning the scope of a police officer's duty to evaluate the available evidence of an affirmative defense. While an officer "may not ignore conclusively established evidence of the existence of an affirmative defense," an officer may end his investigation once he has probable cause since the Fourth Amendment imposes no duty to investigate the validity of a defense. *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) quoting *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004).

A second narrow exception could apply if Defendants Warren and Vega "knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and [if] the false statements were necessary to the judicial officers' determinations that probable cause existed for the arrests." See *Beauchamp v. City of Noblesville*, 320 F.3d 733, 742–43 (7th Cir. 2003), citing *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). This can include law enforcement deliberately or recklessly failing to inform the judicial officer of facts negating probable cause. *Id.* at 743. Plaintiff has not alleged Defendants Warren and Vega played any role in the procurement of the warrant from the Lee County judge. There are no allegations that Warren and Vega deliberately or recklessly made any false statement or omitted any critical fact to the Lee County judge. Since Defendants Warren and Vega had probable cause to arrest Lumar, based on a facially valid warrant, Count I must be dismissed.

### b. Since Warren and Vega are entitled to qualified immunity, Count I must be dismissed against them.

"[P]retrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case." *Manuel v. Joliet*, 137 S.Ct

6

911, 918 (2017). "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause". *Id.* Here, as argued above, Defendants Warren and Vega had probable cause to arrest Lumar based upon the warrant that was issued out of Lee County. However, Plaintiff argues that despite the presence of the warrant, that Lumar should have been release because the warrant allowed him to be released upon payment of 10% of the bond. *Complaint* at ¶46.

"The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not clearly violate established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, (2009). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (U.S. 2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Determining whether a defendant state officer is entitled to qualified immunity involves two inquiries: '(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation.' If *either* inquiry is answered in the negative, the defendant official is entitled to summary judgment." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014) (emphasis original) (internal citation omitted). Moreover, a constitutional violation was not clearly established in the law. For a right to be clearly established "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, it was not clearly established that it was unconstitutional for Warren and Vega to arrest and continue to detain Lumar based upon the warrant from Lee County. General

Administrative Order No. 2015-06 regarding Procedures for Arrests on Illinois Intrastate Warrants Issued Out of Cook County, required Defendants to hold Lumar and transfer him to bond Court. *See* Exhibit A. The Order clearly applies to the allegations in this case, since the warrant was issued by an Illinois state court outside of Cook County. It has not been clearly established that it would be unconstitutional for Defendants Warren and Vega, or any other Defendant, to continue to hold Lumar under the direction of Judge Evans' Court order requiring Lumar to be taken to bond court. *See White v. City of Markham,* 310 F.3d 989 (7th Cir. 2002) (Officers entitled to qualified immunity when it was not clearly established that Plaintiff's rights were greater than landlord who had court order to take possession of property…); *see also Speigel v. City of Chicago*, 106 F.3d 209, 210 (7th Cir. 1997) (Court did not find whether or not a seizure occurred because it ruled that qualified immunity attached when Plaintiff could not show that the police did not have a right to prevent him from entering an apartment that landlord had taken pursuant to court order.) Therefore, Defendants Warren and Vega are entitled to qualified immunity with regard to Plaintiff's Count I.

### c. Since the remaining Defendants did not have personal involvement in Plaintiff's arrest or unlawful detention, Count I must be dismissed against them.

Plaintiff has alleged that it was only Defendants Warren and Vega who arrested Lumar without probable cause and continued to unlawfully detain him. Plaintiff has not alleged the personal involvement of any of the other Defendant. Defendants cannot be held liable for Plaintiff's 42 U.S.C. §1983 claims unless each individual caused or participated in the alleged constitutional deprivation, because individual liability for damages under 42 U.S.C. § 1983 is predicated upon personal involvement. *See Wolf-Lillie v. Sonquist.* 699 F.2d 864, 869 (7th Cir.

1983). Since all Defendants, except for Warren and Vega, had no personal involvement in Plaintiff's alleged unlawful arrest, Plaintiff's Count I must be dismissed against them.

### II. Count V, Plaintiff's unlawful arrest and detention claim in violation of the 4th Amendment, must be dismissed.

Plaintiff alleges that Lumar's arrest, while at 26th and California and while already in custody for an earlier arrest, was unlawful. Lumar was already in custody, at the time Plaintiff claims he was unlawfully seized a second time, for possession of a controlled substance. A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). Lumar cannot be seized a second time when he was already seized by Defendants Warren and Vega pursuant to the Lee County warrant. "A person can't be seized while seized any more than he can jump while jumping. He's either seized or not…" *Swanigan v. City of Chicago*, 881 F.3d 577, 584 (7th Cir. 2018). . Further, under Illinois law, an individual arrested with a warrant shall be taken without unnecessary delay before the nearest and most accessible judge in that county. 725 ILCS 5/109-1; *also* 725 ILCS 5/109-2. Unlike many other jurisdictions, Illinois does not set a specific hour limit in its statute. So, Plaintiff cannot argue that his initial seizure on the warrant was unnecessarily delayed due to the second arrest. Since Plaintiff was not seized a second time, while at 26th and California, Count V must be dismissed.

Alternatively, if Lumar was seized a second time, while at 26th and California, he was lawfully seized by Defendants Vinson and Alexander. An eyewitness' account of an unlawful act alone can supply probable cause to arrest. "When an officer has 'received his information from some person - normally the putative victim or an eyewitness - who it seems reasonable to

9

believe is telling the truth,' he has probable cause." *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir. 1991) *quoting Gramenos,* 797 F.2d at 439. Indeed, a single eyewitness or victim's testimony is sufficient to support probable cause, so long as that person is not babbling or inconsistent. *Gramenos*, 797 F.2d at 439, 440. When a court assesses probable cause, it must do so "not on the facts as an omniscient observer would perceive them, but on the facts as they would have appeared to a reasonable person in the position of the arresting officer - seeing what he saw, hearing what he heard." *Mahoney v. Kersery,* 976 F.2d 1054, 1057 (7th Cir. 1992), *citing Richardson v. Bonds,* 860 F.2d 1427, 1431 (7th Cir. 1988).

"The police who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency. In that case, the arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause. *U.S. v. Randall*, 947 F.2d 1314, 1319 (7th Cir. 1991). "The collective knowledge doctrine is designed to allow law enforcement personnel from the same agency, or from different jurisdictions, to rely on probable cause determinations of one another in order to apprehend specific suspects." *Maltby v. Winston*, 36 F.3d 548, 564 n. 26 (7th Cir. 1994).

Here, Plaintiff concedes that neither Vinson nor Alexander saw, nor claimed to see, Lumar in possession of contraband. Lumar's arrest at 26th and California was based solely on the report of Defendant Cook County Sherriff Wlodarski. *Complaint* at ¶ 182. Wlodarski is a law enforcement officer for Cook County. He informed Vinson and Alexander that he found the narcotics on Lumar's person. *Id.* Despite Lumar's numerous searches, as alleged by Plaintiff in her Complaint, Vinson and Alexander are entitled to rely on the information relayed to them by another law enforcement officer to make arrests. Based upon information that they received

from another law enforcement officer, Lumar was lawfully arrested by Vinson and Alexander at 26th and California for possession of a controlled substance.

Further, neither Vinson nor Alexander are required to do any further investigation as suggested by Plaintiff[4]. Police officers have no duty to investigate extenuating circumstances or search for exculpatory evidence once probable cause has been established via the accusation of a credible witness. *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006) (internal citations omitted). Here, they had credible information, from another law enforcement officer, that Lumar was in possession of a controlled substance, establishing probable cause for his arrest.. Since Defendants Vinson and Alexander had probable cause to arrest Lumar at 26th and California, Count V must be dismissed against them.

> **d. Since the remaining Defendants did not have personal involvement in Plaintiff's second arrest or unlawful detention, Count V must be dismissed against them.**

Plaintiff has alleged that it was only Defendants Vinson and Alexander who arrested Lumar without probable cause while at 26th and California. Plaintiff has not alleged the personal involvement of any of the other Defendants. Since all Defendants, except for Vinson and Alexander, had no personal involvement in Plaintiff's alleged second unlawful arrest, Count V must be dismissed against them. *See Wolf-Lillie* 699 F.2d at 869 (7th Cir. 1983).

> **III. Count VI must be dismissed against Defendants because only a municipality can be held liable under *Monell*.**

Count VI of Plaintiff's complaint is entitled, "Lumar v. Chicago Police Department 42 U.S.C. §1983 – Municipal Liabilty/Monell Claim 4th Amendment Constitutional Violation."

---

[4] Plaintiff pleads that neither Vinson nor Alexander viewed surveillance footage of the bullpen despite knowing that Cook County possessed such video surveillance. *See Complaint* at ¶ 185.

Plaintiff has defined "Chicago Police Department" in her pleading as, "the City of Chicago, the Chicago Police Department, and the individual City of Chicago Police Officer Defendants will collectively be referred to as the 'Chicago Police Department'." *See* Complaint at ¶ 30. Therefore, Defendants interpret this *Monell* claim as plead against them as individuals. The individual Chicago police employees adopt the facts and arguments in Defendant City of Chicago's Motion to Dismiss Plaintiff's First Amended Complaint.

"Local governing bodies, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers". *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035, 56 L. Ed. 2d 611 (1978) "Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels. *Id.* at 690-691. In *Monell,* the Supreme Court established both the fact that "municipalities and other local government units [were] included among those persons to whom § 1983 applies" and the limits of such actions. *Id.* at 690. Instead, municipal liability exists "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id..* at 694. However, "[m]isbehaving employees are responsible for their own conduct[;] 'units of local government are responsible only for their policies rather than misconduct by their workers." *Estate of Sims v.*

12

*County of Bureau,* --- F.3d, ---- 2007 WL 3036752 (7th Cir.2007) (citations omitted). Thus, to prevail on a *Monell* claim, a plaintiff must go beyond proving that an individual municipal employee violated the plaintiff's constitutional rights. *Elrod v. City of Chicago*, No. 06 C 2505, 2007 WL 3241352, at *2 (N.D. Ill. Nov. 1, 2007). In short, Defendants cannot be held liable for a policy or practice of the municipality. Only the municipality can be held liable under this theory. Since Defendants are individuals, not a municipality, Plaintiff's Count VI must be dismissed against them.

### IV. Plaintiff's Count VII, denial of medical care and conditions of confinement, must be dismissed against all Defendants, except for Jonathan Errum.

In Count VII, Plaintiff alleges Defendants were deliberately indifferent to Lumar's medical care in violation of the Fourth Amendment. Suicide in lockup claims are generally governed by the failure to provide medical care analysis under the Fourth Amendment's reasonableness standard. *See Saucedo v. City of Chicago*, No. 11 C 5868, 2015 WL 3643417, at *4 (N.D.Ill. June 11, 2015) (Zagel, J.). When determining whether an officer's response to an arrestee's medical need was objectively unreasonable, courts look to four facts: (1) notice of the medical need; (2) seriousness of the medical need; (3) nature or scope of the required treatment; and (4) police interests involved. *Florek v. Vill. of Mundelein, Ill.*, 649 F.3d 594, 600 (7th Cir. 2011). Absent notice of a medical need – here, suicidal ideations – Plaintiff cannot show any Defendant's conduct, other than Jonathan Errum's, was objectively unreasonable. *Saucedo*, 2015 WL 3643417, at *4.

The closest Plaintiff comes to meeting this requirement is by pleading the conclusory statement that the Defendants knew Lumar posed a substantial risk of self-harm/suicide to himself in that she alleged that Lumar "had a propensity to suffer severe emotional distress from

13

continued unlawful detention, based upon his prior emotional and physical reactions…". *Complaint* at ¶ 242. Plaintiff further alleges without factual support that, "Defendants knew that inmates who are wrongfully detained and inmates who are framed for crimes of which they did not commit, … pose a substantial risk of suicide." *Id.* at ¶244. As the Court knows, however, conclusory statements such as these are not afforded the presumption of truth if not supported by sufficient factual allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Mikolon v. City of Chicago*, No. 14 C 1852, 2014 WL 7005257, at *4-5 (N.D.Ill. Dec. 11, 2014) (Shah, J.).

Plaintiff fails to put any factual backing for that assertion that all Defendants were on notice that Lumar was at risk of suicide. Nowhere in the Complaint does Plaintiff allege that he actually appeared depressed, that he actually appeared irrational, or that he actually put any Defendant on notice that he was contemplating self-harm or suicide, except as to Jonathan Errum. Instead, Plaintiff relies solely on generalized statements about other inmates and detainees. A conclusory statement that all Defendants were on notice that Lumar was suicidal, because of his alleged asthma attack in which he sought medical treatment (which was granted) is a far cry, and untenably unconnected, from being on actual notice that the Plaintiff was suicidal, which is what Plaintiff is required to show. *Saucedo*, 2015 WL 3643417, at *4.

Further, Plaintiff's allegation that all Defendants were aware of Lumar's statements to Errum, is also without factual support and not plausible. As just one example, Plaintiff alleges that Defendants Warren and Vega arrested Lumar on August 18, 2016 at 3:50 p.m. *See Complaint* at ¶36. However, Plaintiff then alleges that Lumar was lead into a cell by Errum between 10:15 a.m. and 11:45 a.m. on August 19, 2016. *Id.* at ¶ 226. Plaintiff has no evidence to support her contention that Warren and Vega would have been present, or on notice, that Lumar

expressed suicidal feelings to Errum almost 20 hours after his arrest on Madison Street.   Since Plaintiff has failed to allege  actual notice to all Defendants, except for Errum, Plaintiff has not established that his attempted suicide was a Fourth Amendment violation.

## CONCLUSION

**WHEREFORE**, Defendants pray this Honorable Court dismiss Counts I, V, VI, and VII of Plaintiff's First Amended Complaint and for such further relief this Court deems just.

Respectfully submitted,

By: /s/     *Caroline Fronczak*

|  |  |
|---|---|
| | CAROLINE FRONCZAK |
| | Chief Assistant Corporation Counsel |
| 30 N. LaSalle Street, Suite 900 | Jason Marx |
| Chicago, Illinois 60602 | Assistant Corporation Counsel Supervisor |
| (312) 744-5126 | JESSICA GOMEZ-FEIE |
| Attorney No. 6284817 | Assistant Corporation Counsel |

## **Certificate of Service**

I, the undersigned attorney, certify that I filed the foregoing document using the Court's electronic filing system. As a result, electronic copies of the filed document were automatically served upon all counsel of record.

In addition, a courtesy copy of the filed document may have been provided to the Court in compliance with the Court's standing order.

*/s/ Caroline Fronczak*