IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA ALCORN, as Independent Administrator Of the Estate of TYLER LUMAR<br><br>Plaintiff<br>v.<br><br>THE CITY OF CHICAGO, a Municipal Corporation; OFFICER DANIEL WARREN (#17444), OFFICER CARLOS VEGA (#17477), OFFICER CORRINA ESTEBAN (#17617); COMMANDER JAMES JONES (#73), SERGEANT KEVIN GEYER (#1679), SERGEANT ALAN LASCH (#1434), JONATHAN ERRUM (#117727), Individually and as employees and/or agents of the CITY OF CHICAGO,<br><br>COOK COUNTY, OFFICER T. WLODARSKI, OFFICER CRAWFORD, OFFICER GARMON, OFFICER LEON, CORRECTIONAL LIEUTENANT CHAUNTE LATHAM, and LIEUTENANT ANGELA T. LEWIS, Individually and as employees and/or agents of the COOK COUNTY SHERIFF'S OFFICE<br><br>Defendants. | No. 17 CV 5859<br><br>Judge Virginia M. Kendall<br><br>Magistrate Judge Sunil R. Harjani |

**DEFENDANTS' JOINT MOTION FOR RULING ON PARAMETERS ON THE RECORDING OF DEPOSITIONS PROCEEDING VIA ZOOM**

NOW COME the Defendants, **DANIEL WARREN, CARLOS VEGA, CORRINA ESTEBAN, JAMES JONES, KEVIN GEYER**, and **JONATHAN ERRUM**, by and through their attorneys, Special Assistant Corporation Counsel Elaine C. Davenport of Sanchez Daniels & Hoffman LLP; **THE CITY OF CHICAGO,** by and through its attorney Special Assistant Corporation Counsel Katherine Morrison of Reiter Burns, LLP; and, **THOMAS DART, SHERIFF OF COOK COUNTY,** by and through Assistant State's Attorney John Power of the

State's Attorney's Office of Cook County; and in support of their Joint Motion for Ruling on Parameters on the recording of Depositions Proceeding via Zoom, state as follows:

1. This matter involves certain alleged civil rights violations during a series of events occurring over a two-day period related to Tyler Lumar's arrest and detentions by the Chicago Police Department and the Cook County Sheriff's Office, on August 18-19, 2016. *See generally Dkt.#121.*

2. Litigation commenced in State Court on 26 August 2016 under cause number 16 L 8490. After extensive written discovery was exchanged between the parties in State court, the matter was transferred to the Northern District of Illinois on 11 August 2017 for the continuation of discovery and trial.

3. Since the matter's inception, a significant amount of discovery has proceeded, both in the form of depositions as well as document production. The fact discovery closure date has been continued multiple times, and is currently set for 16 September 2020. To date, more than 30 depositions have been taken, including of the named Defendants, 30(b)(6) witnesses, Plaintiff, family members of Lumar, and additional fact witnesses who actually interacted with Lumar on August 18-19, 2016. Plaintiff did not request that any of those depositions be video recorded.

4. In June 2020, several years into litigation and after prior fact closure dates had been extended, Plaintiff disclosed three (3) additional witnesses for the first time. In July 2020, Plaintiff disclosed an additional ten (10) witnesses for the first time. Generally, those witnesses appear to have known Lumar in the years leading up to August 18-19, 2016, but do not have actual first-hand knowledge regarding the dates in question. The parties promptly coordinated dates for these witnesses' depositions such that all were confirmed to proceed prior to the fact closure date.

5. Defendants issued subpoenas to all thirteen (13) witnesses, all of which Plaintiff's counsel accepted service on the witnesses' behalf, such that the depositions were to proceed via Zoom.

6. Three (3) of the depositions proceeded without incident or objection.

7. The fourth witness was confirmed for deposition on Monday, 03 August 2020. *See Defendants' Subpoena for Paige Alcorn, attached as* **Exhibit "A."**

8. On Friday, 31 July 2020, at 3:20 pm, Plaintiff's counsel's office emailed a "Cross Notice of Video Recorded Discovery Deposition Via Zoom" of Paige Alcorn. *See attached Notice, attached as* **Exhibit "B."**

9. Promptly upon receipt of the "Cross Notice of Recorded Discovery Deposition," counsel for Individual Chicago Police Officers contacted Plaintiff's counsel and advised that, although there was no objection to depositions being recorded, that the parties should meet and confer in order to discuss and agree on the parameters and protocol of recording the Zoom depositions. *See email exchange, attached as* **Exhibit "C."**

10. On 03 August 2020, all parties of record met and conferred regarding agreeing to protocols for the recording of Zoom depositions. The parties could not productively resolve the issues, and as such, respectfully request the Court's intercession.

11. Defendants submitted that they have no objection to the depositions being video recorded with the following precautions:

   a) **Defendants submit that the deposition be video recorded by a certified videographer who will certify the video recording upon completion.**

   Plaintiff objected to the use of a certified videographer, who would produce a certified video recording of the deposition and instead acknowledged that Plaintiff wanted

the court reporter to simply hit "record" on the Zoom host screen. The host screen is the screen view of the host (in our case, the Court reporter), which could include a myriad of formats depending on the particular court reporter's preference, including: "speaker view" which constantly toggles between speakers; "gallery view" which shows all attendees; or, an "exhibit view" with participants minimalized. A Court reporter has advised that any such "video" stemming from the recording of the Zoom session would not be a certified video recording of the deposition. A videographer would be the only one who could produce a certified video recording of the evidentiary deposition.

During the August 3, 2020 conference call, Plaintiff would not articulate any reason why they objected to using a videographer. When pressed if it was because of financial costs, Plaintiff denied that financing a videographer was an issue. Plaintiff presented not a single argument or justification why they do not want to use an official videographer. Indeed, Plaintiff's counsel stated that they wanted the recording for "internal purposes" and doubted that they would be able to use the video recording at trial. Nevertheless, when asked if they would stipulate not to use the video recording at trial, Plaintiff's counsel declined to agree to that limitation. Defendants therefore request that this Court order that a certified videographer be retained by Plaintiff if the Plaintiff wishes to record the Zoom depositions.

**b) Defendants submit that videographer should record the deponent throughout the entire duration of the deposition, only terminating the recording of the deponent after the videographer certifies that s/he is going off the record.**

During the August 3, 2020 conference call, Plaintiff voiced an objection to the deposition recording being limited to the deponent, and instead insists that *all* attendees to

the deposition be video recorded. Defendants object to this approach for a number of reasons. For one, it is the custom and practice of videographer to video the deponent only. If the video is used at trial in lieu of live testimony, if the requirements allowing for such use are met and allowed by the Court, the jury would have the right to focus their observations on the witness as if he or she were providing live testimony on the stand in its presence. Removing the witness from the camera view robs the jury from their unfettered right to focus on the witness. The jury may miss the opportunity to experience a witness' reaction to questions, body language between questions or during questions, and mannerisms. It is a distortion of the testimony that a jury would otherwise have been afforded inasmuch as it is truncated to cut in and out of other attendees.

Defendants further object to "all attendees" being recorded as Plaintiff was unable to provide even one single reason as to why imaging of defense counsel was appropriate. Although Plaintiff stated she would like to have herself video taped when asking questions, Plaintiff's counsel could not provide a justification to require the video taping of defense counsel.

Not only is Plaintiff unable or unwilling to say why there is a desire to record defense counsel, it is particularly unsettling considering that some counsel are attending Zoom sessions from personal locations. As noted above, there have been more than 30 depositions already taken in this litigation, and none of them have been recorded. Further, with the exception of one deposition, where the deponent had moved to Arizona, all depositions have been taken in person and stenographically. The new witnesses are local and are being deposed via Zoom not for the ease of the parties, but due to the COVID-19 global pandemic. All parties are doing the best they can during these times and do not

object to remote depositions. However, counsel are making do with home offices, occasionally with pets or children in the background, or other unusual distractions. Defendants are willing to proceed, but do not want to be penalized for their good faith efforts to move the case along by risking having prejudicial and irrelevant material played before a jury in a sterile courtroom under very different circumstances. Indeed, that concern is heightened by the fact that, even though Plaintiff's counsel doubted the recording would be admissible and professed to want it for undefined "internal purposes", they were unwilling to agree not to use it at trial. Plaintiff's counsel herself clearly acknowledges this expectation of counsel maintaining privacy, since she herself blacked-out her own imagee during the entire Zoom deposition of one of the witnesses because of her private personal surroundings at the same time that she was attending the Zoom deposition.

Again, Defendants recognize the realities of COVID-19, and do not object to remote depositions or their recording. However, there should be rules for what gets recorded as part of a Zoom deposition in unusual times. Any video recording of the depositions should be limited to the deponent.

If, *arguendo,* this Honorable Court does entertain Plaintiff's desire to record any one besides the deponent during the deposition over Defendants' objection, Defendants would then request this Court to allow Defendants to black-out their Zoom image in the deposition.

12. For the reasons set forth *supra*, Defendants submit that although there is no objection to video recording the Zoom depositions, that certain protocol be allowed to preserve

the integrity of the evidentiary deposition and the privacy of the attendees, including that the deposition be video recorded by a videographer so that a certified video recording may be produced, and that the recording be fixed on the deponent during the entirety of the deposition. Inasmuch as this Court is willing to entertain Plaintiff's request to have others besides the deponent be recorded, Defendants request that such allowance for additional recorded individuals be limited to Plaintiff, and all others be allowed to black-out their own images if so desired.

WHEREFORE, the Defendants JOINTLY respectfully request an Order in their Favor as follows:

a) The deposition be recorded by a certified videographer who will certify the video recording;

b) The videographer will record only the deponent throughout the duration of the deposition, only removing the recording from the deponent when the videographer certifies that s/he is off the record; and,

c) In the alternative, if additional persons other than the deponent are allowed to be recorded, that attendees be allowed to black-out their image.

Respectfully Submitted,

**SANCHEZ DANIELS & HOFFMAN, LLP**

By: /s/ Elaine C. Davenport
    Elaine C. Davenport
    Special Assistant Corporation Counsel
    On behalf of Defendants
    **DANIEL WARREN, CARLOS VEGA,**
    **CORRINA ESTEBAN, JAMES JONES,**
    **KEVIN GEYER,** and **JONATHAN ERRUM**

Elaine C. Davenport
Federal ID No. 6272827
**SANCHEZ DANIELS & HOFFMAN, LLP**
**333 West Wacker Drive**
**Suite 500**
**Chicago, Illinois 60606**
**(312) 641-1555 – Telephone**
**(312) 641-3004 – Facsimile**