IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA ALCORN, as Independent Administrator<br>Of the Estate of TYLER LUMAR<br><br>Plaintiff<br><br>v.<br><br>THE CITY OF CHICAGO, a Municipal<br>Corporation; et al<br>Defendants. | No. 17 CV 5859 |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT IN PART PURSUANT TO F.R.C.P. 12(F) AND F.R.C.P 15 & PLAINTIFF'S RESPONSE TO DEFENDANT CITY'S PARTIAL MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT**

Plaintiff, LISA ALCORN, by her attorneys, O'CONNOR LAW GROUP, LLC, in response to Defendant Individual Chicago Police Officers' Motions to Strike Counts I, in part, Count V in its entirety, and certain allegations of Count VII; and, in response to Defendant's City Partial Motion to Strike Counts VI and Counts VIII of Plaintiff's Third Amended Complaint ("TAC"), states as follows:

## INTRODUCTION

On September 17, 2020, this Court granted Plaintiff's oral motion to amend her complaint. Defendants now move, pursuant to F.R.C.P. 15, to strike certain allegations contained in Count VII and VIII in its entirety. First, F.R.C.P. 15 affords no relief to strike these counts. Nevertheless, Defendants seemingly request that this Court reconsider its prior order granting Plaintiff leave to amend. As explained below, this Court properly granted leave to amend. Separately, pursuant to F.R.C.P. 12(F), Defendants move to strike Count I, in part, Count V, and Count VI, arguing Plaintiff improperly replead counts previously dismissed without prejudice. For the reasons herein, Defendants motions should be denied.

1

### I.     COUNT VII & COUNT VIII

Count VII of Plaintiff's TAC pleads the same cause of action as Count VII of Plaintiff's Second Amended Compliant ("SAC"): a cause of action for a 4th amendment violation against Chicago Police Detention Aide Jonathan Errum for his denial to provide proper medical care and proper conditions of confinement to Lumar during his detention which occurred over the period of approximately one ½ hour, between the hours of 11:00 – 11:30 a.m. on August 19, 2016. Count VIII of Plaintiff's TAC pleads the same cause of action as Count VIII of Plaintiff's SAC: a cause of action for the City of Chicago's policy/practice of failing to provide proper medical care and conditions of confinement for suicidal inmates, pursuant to *Monell*. Plaintiff alleges both constitutional deprivations caused and contributed to Lumar's injuries and eventual death.

Defendant Errum argues that Count VII pleads "a completely new and different theory of liability" against him and Defendant City argues that Count VIII "includes an entirely new *Monell* theory." Plaintiff disagrees. As Plaintiff advised the Court on September 17, 2020, Plaintiff sought to amend her original causes of action to conform to the facts adduced through discovery. Contrary to Defendants' claims, Plaintiff never filed any new cause of action. The facts developed in discovery support Plaintiff's original 4th amendment claims of Defendants' failure to provide proper medical care/proper conditions of confinement to Lumar during his detainment on August 19, 2016. Plaintiff concedes certain facts supporting these legal theories are indeed new; however, Plaintiff only discovered such facts during discovery and plead them accordingly.

Defendants spend quite a bit of time discussing Magistrate Judge Harjani's decision to limit the testimony of a requested 30(b)(6) witness, in which he distinguished facts pertaining to Lumar's pre-hanging from his post-hanging. First, no legally recognized distinction exists between "pre" and "post" suicide hanging for purposes of a 4th amendment failure to provide

2

medical care/conditions of confinement case. Plaintiff submits she should have been allowed to depose the 30(b)(6) witness on all discoverable issues related to Lumar's suicide, irrespective of the fact that the last pleading failed to specifically include "post-hanging" facts.

Notwithstanding, following Judge Harjani's ruling, Plaintiff requested leave to amend her complaint to conform the facts to the pleadings; specifically, to include facts discovered from the cumulative testimony of Chicago Police Department Detention Aides Jonathan Errum and Charles Barry, along with the City's production of suicide policies, procedures, and training materials. Notably, Defendants do not contest that the newly included facts arise out of the same set of core facts alleged in the original complaint. Plaintiff submits that this is not a new "theory;" however, even if Counts VII and VIII were deemed to contain a new legal theory as Defendants allege, Rule 15 allows such amendment:

> Rule 15(c)(1)(B) allows an amendment to relate back to the original pleading when the amendment asserts a new claim based on the same core set of facts alleged in the original pleading, but involves a new legal theory ... an amended claim need not be based on the same theory of recovery asserted in the original pleading.

*Luckett v. Conlan,* 561 F. Supp. 2d 970, 975 (N.D. Ill. 2008). *See also Bularz v. Prudential Ins. Co. of Am.,* 93 F. 3d 372, 379 (7th Cir. 1996). Nevertheless, Defendants argue that allowing such amendments would be "unduly prejudicial." As explained below, however, Plaintiff reasonably and timely amended her pleadings, in compliance with F.R.C.P. 8. More importantly, Defendants fail to meet their burden in establishing any tangible "undue prejudice" necessary to overcome F.R.C.P. 15's liberal standard, which directs our courts "to freely give leave [to amend] when justice so requires." *F.R.C.P. 15(a)(2). See also Ward Electronics Service, Inc.,* 819 F.2d 496 (4th Cir. 1987) (neither change in theory of recovery nor fact that plaintiff previously amended its complaint is sufficient, alone or in combination, to justify denial of motion to amend).

### A. Defendants rely on caselaw applying the incorrect legal standard to assess whether Plaintiff should be granted leave to amend.

F.R.C.P. 15 mandates that leave to amend a complaint should be freely given. "This mandate must be heeded to enable the plaintiff to test a claim on its merits when the underlying facts relied upon by the plaintiff are a proper subject of relief. A complaint merely serves to put defendant on notice and should be freely amended or constructively amended as the case develops. Leave to amend should only be denied on the grounds of (1) undue delay, (2) bad faith, (3) dilatory motive, (4) prejudice, or (5) futility. *Forman v. Davis,* 371. U.S. 178, 182 (1962). Notably, Defendants only assert undue delay and/or prejudice in opposing Plaintiff's amendment.

As to "undue delay", Defendants rely on a litany of cases inapplicable here, i.e., cases in which the plaintiff moved to amend his complaint several months, if not years, after the court's order setting the deadline to amend pleadings had passed. In such cases, the plaintiff bears the burden of first showing "good cause." In cases where Defendants object to a timely amendment, as the case here, Defendants bear the burden to establish "undue delay/prejudice." For example, in *U.S. v. Alacran Contracting, LLC,* cited by Defendants, the court denied Plaintiff's motion to amend because it brought the motion more than a year after the deadline to file amended pleadings. "When a scheduling order has been entered and the deadline to file amended pleadings has passed, the party seeking an amendment must first demonstrate good cause under Rule 16(b)(4) before Rule 15(a)'s more *liberal standard* for amendment applies. 2014 WL 5461391, *2 (emphasis added).

Similarly, in *Driveline Systems, LLC v. Artic Cat, Inc.,* the court denied the plaintiff's motion to amend his complaint because he filed it after the deadline to amend pleadings, which the court previously extended three times on the plaintiff's motion. 2014 WL 6674721, *1. The court in *Driveline Systems* noted that because the court ordered deadline for amendments had

4

passed, plaintiff had to first demonstrate good cause under Rule 16(b)(4) *before* Rule 15(a)'s more liberal standard applied. In *Myers v. Mid-West Nat'l Life Ins. Co.,* also cited by Defendants, the court denied Plaintiff's motion for leave to amend its complaint because the plaintiff moved almost a year after the Court's scheduling order deadline to amend pleadings. 2008 WL 927646 (D. Colo. 2008). In the case at bar, because Plaintiff is not in violation of any Rule 16 Scheduling Order, Rule 15's more liberal standard applies, with the burden falling on the Defendants to establish undue delay/prejudice.

### B. **Defendants fail to establish facts sufficient to support any finding of undue delay or undue prejudice brought on by Plaintiff.**

Defendants argue that Plaintiff unduly delayed amending her complaint to add additional facts to Counts VII and VIII, which they characterize as 'post-hanging' facts, because she failed to immediately move to amend her complaint after deposing Detention Aide Errum. According to defense counsel, plaintiff's counsel realized the existence of this 'new theory' the day she deposed Errum, on September 18, 2019 a.m.

First, the recent facts plead as part of Counts VII and Count VIII arose from multiple sources and not simply from Mr. Errum's deposition. During Mr. Errum's deposition, Plaintiff counsel learned for the first time that Defendants delayed in responding to Lumar's medical needs after Errum testified that neither he nor Chuck Barry, the other detention aide, equipped themselves with a cut down rescue tool. Specifically, Errum testified that Mr. Barry discovered Lumar hanging from his cell and then yelled for Errum, who ran down the cellblock with the cell block key needed to open the cell. Errum then ran back out of the cellblock to the employee office, unlocked the office door, unlocked his locker's padlock, retrieved his own personal pocketknife, returned to the holding cell, and then handed the knife to Chuck Barry who cut down Lumar. (Exhibit A, Depo. J. Errum, 83:12-24; 84:1-10; 85:13-24, 86:1-24, 87:1-14, 88:8-21). Mr. Errum

testified CPD policy considered a pocketknife a weapon; that CPD policy prevented him from carrying a pocketknife on his person; that CPD never issued him any rescue utility to cut down inmates; that the only tool provided by CPD and available in in the lockup was a standard scissors used to "cut up stuff;" and that the only training he received related to responding to inmates who hang themselves "was to call up front, notify them, and try to get something to bring them down with." *Id.* at 85:12-24; 86:1-24; 87: 1-10). Notably, Defendants never objected to Plaintiff's counsel's questioning of Mr. Errum's 'post-hanging' actions and observations.

More than 2 months later, on November 27, 2019, Plaintiff deposed detention aide Chuck Barry. Mr. Barry testified that he used his own pocketknife which he carried on his person and not a CPD department issued tool to cut down Lumar. (Exhibit B, Depo. C. Barry, 82:19-23; 83: 23-24; 84:1-19; 85:1-24; 86:1-16). Apparently, contrary to Errum's testimony, Mr. Barry understood that CPD's policy allowed him to carry a pocketknife/weapon on his person. He testified that Sergeant Gartner arrived on scene around the time he cut Lumar down. *Id.* at 88:10-17. Next, Plaintiff deposed Sergeant Gartner on January 10, 2020. Based on Barry's testimony, Plaintiff anticipated Sergeant Gartner saw who cut Lumar down and with what tool. However, Sergeant Gartner testified that Lumar was lying on the ground by the time he arrived at the scene. (Exhibit C, Depo J. Gartner, 74: 22-24; 75:1-2.). Gartner provided no testimony as to what type of tool, if any, the detention aides used to cut down Lumar.

Separate from the deposition testimony, Plaintiff issued written discovery to the City on March 1, 2019, specifically requesting all CPD procedures and protocols pertaining to the prevention of, monitoring for, risk of, and *treatment of,* attempted suicide along with all training materials related to such. After multiple meet and confer conferences, F.R.C.P. 37 letters, and requested extensions, the City first began producing responsive materials in February of 2020,

almost a year after the initial request. The City finally completed its production on *August 10, 2020,* a few weeks before Plaintiff moved to amend the instant complaint. Notably, the City requested several such extensions due to the global pandemic, which affected all parties herein. Chief Judge Rebecca Pallmeyer continued discovery deadlines and stayed court proceedings and trials under 4 separate COVID-19 emergency orders during this period: March 13, 2020; March 30, 2020; April 24, 2020; and May 26, 2020.

Meanwhile, as Plaintiff reviewed the suicide piecemeal discovery as it came in, on July 31, 2020, *almost 2 months prior to the close of fact discovery,* Plaintiff issued a 30(b)(6) Notice of Deposition to the City, demanding they designate a person to testify on the topics of suicide prevention, screening, and training, including but not limited to rendering first aid to suicide attempts; along with testimony related to CPD's policy on cut down/rescue tools. (Exhibit D, 2020.07.31 NOD). Defendants then moved for a protective order to limit the scope of the witness' testimony. As noted by Defendants, in limiting the testimony, Judge Harjani determined that Plaintiff's SAC failed to meet the plausibility pleading requirements of *Twombly and Iqbal.* In short, Judge Harjani held that Plaintiff's complaint required additional facts be plead, which he described as 'post-hanging' facts, before allowing Plaintiff leave to depose a 30(b)(6) witness on such facts.

Now, after Plaintiff moved to amend, Defendants argue Plaintiff "unduly delayed" amending her complaint by "sitting on her hands for over a year." As explained above, contrary to such bold statements, however, Plaintiff *first* learned of the City's failure to provide cut down rescue tools at Errum's deposition. Defendants fail to explain who testified or what documents they produced which apprised Plaintiff of such fact prior to Errum's deposition. Markedly, none of the CPD officers deposed prior to Errum were even present at the time of Lumar's suicide.

After deposing Errum, Plaintiff then engaged in further and extensive discovery before determining whether such facts supported her previously plead constitutional deprivation *Monell* claims. Per F.R.C.P 8(a)(2), a complaint must "describe the claim in sufficient detail to give the defendant 'fair notice of what the … claim is and the grounds upon which it rests." *F.R.C.P. 8(a)(2); EEOC v. Concentra Health Servs., Inc.* 496 F. 3d 773, 776 (7th Cir. 2007). "The plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of elements of a cause of action will not do. *Bell Atl. Corp v. Twombly,* 550 U.S. 544, 555 (2007). The complaint "must plausibly suggest the plaintiff has a right to relief [by providing allegations that raise a right to relief] above a 'speculative level'. *EEOC v. Concentra,* 496 F. 3d at 776. "If the allegations do not suggest a right to relief, the plaintiff pleads itself out of court." *Id.* Assuming arguendo that Plaintiff amended her complaint on September 19, 2019, the day after Errum's deposition as Defendants argue, Defendants would likely have moved to dismiss immediately, arguing Plaintiff's complaint lacked the necessary specific allegations required by *Twombly* to meet the plausibility requirement for her *Monell* claim.

Practically, Plaintiff needed to review Defendants' production of the requested suicide related discovery; specifically, its suicide policies, procedures, and training, before determining whether such 'post-hanging' facts supported its *Monell* claim, i.e. whether the City in fact instituted a policy which knowingly failed to provide its detention aides with industry standard cut down tools and/or whether the City failed to properly train its aides in providing rescue/medical aide to suicide attempts such as Lumar. Prior to review of such materials, any allegation of such policy and/or deficient training, simply because Errum testified he used a personal pocketknife to cut down Lumar, may have arguably have been insufficient to plead such facts to support a *Monell* claim under *Twombly and Iqbal.* To no surprise, Plaintiff intended to elicit such facts necessary

8

to allege CPD's policy and deficient training through the requested 30(b)(6) witness. And plaintiff's intent became self-evident at the time it issued the 30(b)(6) notice, almost 2 months *prior* to the close of fact discovery.

Importantly, Plaintiff first noticed Mr. Errum's deposition for April 26, 2019 (Exhibit E, NOD); yet, due to delays in the City's production of Errum's employee personnel file, the parties continued the deposition first to June and then to September, to allow the City time to produce the discoverable documents. (The City produced Errum's personnel file on 7/8/19; the first date Errum's counsel offered for his deposition thereafter was 9/10/19). And, as explained above, the City just recently completed its production of the City's suicide policies, procedures, and training materials on August 10, 2020. It is quite disingenuous to argue Plaintiff unduly delayed amending her complaint when Defendants significantly delayed in producing the discovery necessary to make such amendment in good faith.

Next, without any real explanation, counsel for Errum conclusively states that allowing Plaintiff to amend Count VII of her TAC with the additional facts establishes "undue prejudice" because such amendment would require that she conduct "meaningful discovery specifically tailored to post-hanging actions." The other defendant, the City, fails to articulate any explanation whatsoever, conclusory, or otherwise, to support her claim of "undue prejudice" in her motion. As to the individual Chicago Police Departments Defendants, counsel's argument is limited to Detention Aide Errum. The additional facts simply allege that Errum failed to equip himself with a rescue tool which delayed the time it took to cut down Lumar, which contributed to his injuries. It is uncontested that the *only* other witness present from the time Errum placed Lumar in the cell to the time Barry cut Lumar down was Chuck Barry. Counsel extensively questioned both witnesses as to their personal observations and actions during this one ½ hour subject time period.

9

Notably, defendants never objected to such line of questioning during deposition. Now, without any real explanation, counsel for Errum claims she needs to redepose them along with Chief Jones, Sgt. Daniel McCall, Officer Menoni and the paramedics. Why? None of these individuals were present at any time during the relevant time. Officer Menoni and the paramedics arrived on scene after Barry cut down Lumar. (Exhibit B, Depo. Barry 89:21-23. Neither Chief Jones nor Officer McCall even saw Lumar on August 19th. And Errum and Barry? Counsel represents these individuals; she may speak ad nauseum ex parte with them, under privilege, outside of a deposition.

Errum's counsel correctly points out that *Plaintiff's counsel* deposed more than 30 Chicago Police Department and Cook County employees. To no surprise, neither Errum's counsel nor counsel for the City ever sought to depose any Chicago Police or Chicago Fire Department witness, even though they listed all of them as Rule 26(a) witnesses. Exhibit F. Throughout this litigation, counsel for the City and counsel for the CPD officers unified in their defense; without the need to depose a single CPD officer. Notwithstanding, conveniently now, to persuade this Court that "undue prejudice" exists here, she argues not only must she depose several irrelevant witnesses, but also that she redepose her own clients.

The only real discovery needed per Plaintiff's TAC is the 30(b)(6) witness Plaintiff timely requested to depose in July of 2020. Errum's counsel herself avers that none of the other CPD fact witnesses possess the requisite foundation to testify to CPD policy and procedure; self-evident from her continued objections during depositions: *See e.g.,* Exhibit G, Depo. Geyer, 16:1-10

| | |
|---|---|
| Question: | In the occasions in which you have been involved or had an experience where an arrestee or an inmate had made some sort of statement that they were suicidal, what is the *CPD policy* in terms of what you are required to do? |
| Ms. Davenport: | I'm just going to object inasmuch as you are asking him what the city of Chicago's policy is. *He is not a 30(b)(6) witness.* |

| | |
|---|---|
| Question: | In the occasion in which you have been involved or had an experience where an arrestee or an inmate had made some sort of statement that they were suicidal, what is the *CPD policy* in terms of what you are required to do? |
| Ms. Davenport: | I'm just going to object inasmuch as you are asking him what the City of Chicago's policy is. *He is not a 30(b)(6). Id.* at 18:4-14. |

*See also* Exhibit I, Depo. Lasch 34:14-23:

| | |
|---|---|
| Question: | … If there is an officer, a beat officer or field officer, that arrests someone on the issuance of a warrant, what is the *procedure* in terms of how they verify the warrant? |
| Ms. Davenport: | I'm going to object to the form of the question. *This is not a 30(b)(6) witness* to testify as to what the City of Chicago's policies are. |

*See also* Exhibit H Depo. Jones 20:24 – 21:1-6; 79:22-24 – 78:1-3).

As such, according to counsel for Errum, the personal practice of any other CPD officer/employee; including whether they equipped themselves with a cut down tool, bears no relevance to defining the department's "policies." As such, deposing those CPD and CFD employees who lack any personal knowledge as to what occurred during the few minutes Lumar hung from his jail cell on August 19, 2016 and who also lack any foundation to testify on CPD policy, serves no purpose here.

Defendants next assert "undue prejudice;" however, this argument fails as well. As stated in *In Re Ameritech Corp.*, 188 F.R.D. 280, cited by Defendants, "every amendment results in some degree of prejudice to an opposing party." "Undue prejudice," however, occurs only when the amendment brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint or when additional discovery is expensive and time-consuming." *Id.* To determine the question of undue prejudice, the court balances the respective interests of the parties, which entails an inquiry into the hardship to the

11

moving party in denying leave, the reason for the moving party's failure to include the material in the original pleading, and the injustice resulting to the opposing party if granting the motion. *Id.*

Plaintiff's complaint neither pleads an "entirely new and separate claim" nor does it add new parties. It does not require additional expensive or time-consuming discovery. Defendants knew as of July 31, 2020 that Plaintiff intended to discover testimony to support the 'post hanging' additional bases for its *Monell* claim. Instead of producing such witness, however, they moved to strike his testimony, arguing that Plaintiff's complaint failed to put them on notice. Now, after Plaintiff amends her pleading to conform the proofs elicited through discovery, Defendants assert "unfair prejudice/surprise" while nevertheless failing to explain how producing a previously requested 30(b)(6) witness surprises and/or prejudices them.

Assuming they can produce such witness within the next 30 days, more than reasonable considering Plaintiff served the 30(b)(6) 4 months ago, the additional discovery will not delay the current agreed expert discovery schedule. This Court previously stayed the deadline to file dispositive motions upon defendants' request. No trial date has been set. Courts rarely deny substantive motions to amend unless they are sought shortly before or during trial. *See Feldman v. Allegheny Int'l,* 850 F.2d 1217, 1225-26 (7th Cir. 1988).

The caselaw cited by Defendants support affirming leave to amend here. In *In re Ameritech Corp.,* the court issued an order denying the defendant's motion to amend its pleading to add a counter suit for class action, particularly distinguishing the hardship such amendment forced on the plaintiff because it involved a class action: "a class action suit is substantially different from the pending action because class discovery issues are complex and time consuming;" noting that Defendant was free to initiate a new class action lawsuit. 188 F.R.D. 280, 283. In *Flomo v. Bridgestone Americas Holding, Inc.,* 2010 WL 2607221, the court denied Plaintiff's leave to

amend its complaint only because it was filed on the same day that Defendants filed their motion for summary judgment. In *Fort Howard Paper Co., v. Continental Casualty Co.*, the 7th Circuit affirmed the trial court's decision to deny the defendant leave to amend its affirmative defenses on motion made *after* the trial. 901 F.2d 1373 (7th Cir. 1990). In *Jackson v. Rockford Housing Authority,* the 7th Circuit granted the defendant leave to amend its answer to include a new affirmative defense, raising the statute of limitations, even after motions for summary judgment were filed. 213 F. 3d 389 at 390. Defendants cite no case analogous to the facts here, i.e. where a court found undue prejudice simply because some limited additional discovery was necessary.

This Court must balance the interest of the parties. Pre-discovery, Plaintiff lacked any good faith basis to allege that the City instituted a policy failing to equip detention aides with rescue tools and/or failed to properly train them. After deposing Errum, Plaintiff learned that at least according to one CPD detention aide, Errum, the Department failed to provide him with such and/or train him in how to use one. Thereafter, Plaintiff deposed the only other detention aide, Barry, who confirmed he too never received such tool or training. Thereafter, beginning in February 2020 and throughout August 2020, the City produced CPD's policies, procedures, and documents related to department training on suicide prevention, monitoring, and treatment; documents initially requested in March of 2019. After review of such materials, Plaintiff then issued a 30(b)(6) NOD to elicit testimony to garner evidence to support her anticipated amended *Monell* claim. Admittedly, Plaintiff did not expect that Judge Harjani would strike the subject testimony as nondiscoverable; mainly because plaintiff's counsel questioned all other CPD fact witnesses about their 'post-hanging' acts and observations without objection. Otherwise, Plaintiff would have moved to amend her complaint in July and then issued such NOD.

Throughout this litigation, Plaintiff made every good faith effort to timely complete discovery; she deposed almost 50 witnesses, reviewed hundreds of thousands of pages of records; consulted with countless correctional experts, etc. Plaintiff accommodated every one of Defendants requests for extension; some at play here. And, at least since July, Defendants knew that 'post hanging' facts were relevant to Plaintiff's *Monell* claim. There is simply no unfair surprise or prejudice in allowing Plaintiff leave to amend her complaint to add such additional facts obtained through discovery, which support her original 4th amendment causes of action for Defendants' failure to provide medical care/conditions of confinement. For such reasons, Plaintiff respectfully requests that this Court affirm its prior order, freely granting leave as justice so requires. *See. F.R.C.P. 15.*

### Count I, Count V, and Count VI,

Regarding Counts I, V, and VI, Defendants argue that such Counts should be stricken because they serve as placeholder accounts. In support, Defendants rely on *Smith v. Nat'l Health Care Serv. Of Peoria,* 934 F.2d 95 and an unpublished order entered by Judge Aspen in a currently pending matter, *Mendez v. City of Chicago et al,* 18cv6313, *Dkt. 107.* In *Smith,* the court dismissed several claims *with* prejudice, finding as a matter of law that that the statute of limitations barred them. Plaintiff continued to replead such claims to preserve review. The 7th Circuit held that repleading claims previously dismissed with prejudice improper. The *Mendez* dismissal order is silent as to whether it made the dismissal with or without prejudice; regardless, it serves no precedential value here. *See Torain v. Am. Advanced Data Servs. of Ill., Inc.,* 319 Fed. Apprx. 433, 434 (7th Cir. 2009) (a dismissal is final and "on the merits" unless the judge's opinion specifies that the dismissal is without prejudice).

14

Dismissals without prejudice typically are nonfinal orders and therefore not appealable; specifically, including dismissals that the judge expects will be corrected by the filing of an amended complaint. "The judge thus has not finished with the case, and appeal would therefore be premature." *Schering-Plough Healthcare Prods. v. Schwarx Pharma, Inc., Inc.,* 586 F.3d 500, 506 (7th Cir. 2009). When the cases ends in district court, the dismissal is ripe for appeal. *Id.*

Because this Court dismissed Counts I, V, and VI without prejudice such orders are not yet appealable; as such, Plaintiff interprets 7th Circuit precedent as requiring her to replead such counts in subsequently amended complaints in order to preserve such dismissals for appeal. Notably, Plaintiff similarly replead such counts in her SAC, which Defendants accordingly answered. As such, Plaintiff respectfully requests that this Court deny Defendants' Motion to strike Counts I, Count V, and Count VI.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants respective motions for the reasons stated herein.

Respectfully submitted,

/s/ Eileen M. O'Connor
Eileen M. O'Connor
One of the Attorneys for Plaintiff

ARDC No.6290372
Eileen M. O'Connor
O'CONNOR LAW GROUP
19 S. LaSalle St. Suite 1200
Chicago, IL 60603
(312) 236-1814
eoc@oconnorlawgrp.com