# EXHIBIT A

Errum

Page 81

1  A.  Yes.
2  Q.  Okay.
3  A.  A and B are for the females.
4  Q.  And you told me earlier that Spann was
5  the only male arrestee that was being housed at the
6  11th at the time when you got there?
7  A.  I believe so, yes.
8  Q.  Okay. Now, when you were walking
9  Lumar into E2 or down the cell block, was he still
10  ticked off, for lack of a better word, saying "this
11  is bullshit"?
12  A.  He stopped talking after he came --
13  like, when we started walking down the cell block,
14  he didn't say anything else to me.
15  Q.  So did you have any conversation at
16  all with Lumar at any time after calming him down
17  after he said "this is bullshit"?
18  A.  No.
19  Q.  And you said you got him into his cell
20  within five minutes?
21  A.  Yes.
22  Q.  Did he at any time ask to make a phone
23  call?
24  A.  I asked him. He said no.

Page 82

1  Q.  When did you have that conversation
2  that you asked -- or when did you ask him about the
3  phone call?
4  A.  Right when he came in. When he said
5  "this is bullshit," I said, "you're going to make a
6  phone call?" "No, man." "All right, come on, let's
7  go to your cell."
8  Q.  Anything else you recall him saying?
9  A.  No.
10  Q.  When you took Lumar into his cell, did
11  you have any conversation with Erik Spann or did
12  Erik Spann say anything or yell out anything?
13  A.  No.
14  Q.  When you're sitting at the 11th -- or
15  strike that.
16  When you're sitting at the desk in
17  lockup, would you be able to overhear conversations
18  between inmates that are in the cells?
19  MS. DAVENPORT: Objection, incomplete
20  hypothetical, calls for speculation.
21  BY MS. O'CONNOR:
22  Q.  You can answer.
23  A.  I mean, if they are talking loud,
24  yeah. If they are just having a normal, like,

Page 83

1  conversation like we are now, no.
2  Q.  Okay. The current video surveillance
3  system, is there audio on that?
4  A.  No.
5  Q.  And I think you told me this, but it's
6  the custom and practice that each arrestee gets its
7  own cell until you start to get too many?
8  A.  We don't have to give them their own
9  cell. That's just how we do it.
10  Q.  And that was how you did it in 2016?
11  A.  Correct.
12  Q.  All right. When was the next time you
13  had contact with Tyler Lumar?
14  A.  When I cut him down and started CPR on
15  him.
16  Q.  How were you alerted to the fact that
17  he was hanging?
18  A.  Chuck was doing 15-minute checks and
19  he yelled out my name and when I looked down the
20  cell block and said "what's up," he said, "this guy
21  is hanging," so I grabbed a key, went down there,
22  and, yeah, he was hanging.
23  Q.  When you say "key," what key?
24  A.  The cell block key. Or the cell door

Page 84

1  key.
2  Q.  Where is that typically kept?
3  A.  At the desk.
4  Q.  And specifically, what was Tyler Lumar
5  hanging from?
6  A.  His tank top or his shirt.
7  Q.  Was his shirt on his person, or had he
8  taken it off?
9  A.  He had taken it off, tied it to the
10  bars, and he had tied it around his neck.
11  Q.  Which bar did he tie it to?
12  A.  I don't know what you're asking.
13  Q.  Well, what did he tie the shirt to
14  specifically in the cell?
15  A.  The bars. I mean, I don't --
16  Q.  The bars that open and shut the cell?
17  A.  No. It's a stationary one, stationary
18  bar.
19  Q.  Okay. I think I'm going to have to
20  get a picture. I have to go print that out real
21  quick. But before I do, let me just keep going
22  through these questions.
23  A.  So, like, there's a gate that opens
24  and then there's the bars that are stationary. He

BUCHANAN REPORTING, INC.
312-670-0900

PLAINTIFF'S
EXHIBIT
A
tabbies

Page 85

1    hung it up on the stationary ones.
2        Q.   Okay.  So he would have been
3    shirtless, correct?
4        A.   I don't remember if he had, like, a
5    tank top on or used a shirt.  I know it was one of
6    the shirts, though.
7        Q.   Do you recall if he had his shoes on
8    or off?
9        A.   I believe they were on.
10       Q.   Did you observe any blood or vomit
11   when you first arrived at the scene?
12       A.   No.
13       Q.   Now, you said that you had actually
14   physically cut him down, correct?
15       A.   Correct.
16       Q.   What did you use to cut him down?
17       A.   A pocketknife.
18       Q.   Is that something you just typically
19   keep on your person?
20       A.   No.  I had to run to my locker and
21   grab it.
22       Q.   And where is your locker?
23       A.   It's in the lockup.  So, like, in our
24   lockup there's, like, a little back office thing

Page 86

1    that we keep locked, so it's right back there.  We
2    all -- each of us have our own little cabinet or
3    locker or drawer.
4        Q.   Are you allowed to carry a weapon?
5        A.   No.
6        Q.   So would that include knives?
7        A.   Right.  That's why I don't carry it
8    with me.
9        Q.   Is there some Chicago Police
10   Department-issued weapon or utility that you have at
11   the 11th District to cut down people that hang
12   themselves?
13       A.   Scissors.
14       Q.   Scissors?
15       A.   I mean, that's the only thing we have
16   in our lockup that we could have used besides a
17   pocketknife.
18       Q.   When you went through your training,
19   were you trained on that at all, what to do in the
20   case that you found an arrestee hanging from their
21   cell?
22       A.   Yeah.  I mean, they just told us we
23   had to call up front, notify them, and try to get
24   something to bring them down with.

Page 87

1        Q.   So the scissors that you're
2    referencing, is it just typical scissors or is it
3    some special scissors that's here in case, you know,
4    you find this --
5        A.   Oh.  The ones that they have back
6    there were just regular scissors for us to cut up
7    stuff with.
8        Q.   All right.  So you had to go back to
9    your locker to get your pocketknife.  Does your
10   locker have a physical lock on it?
11       A.   Yeah.  Well, it's -- yeah.
12       Q.   Like an old school --
13       A.   It's a Master lock, but it's not key
14   or combo, it's a directional so it's quicker.
15       Q.   Okay.  So approximately how long did
16   it take you to run from the cell to the locker?
17       A.   Oh, it was under a minute.
18       Q.   Do you recall physically what he did
19   with the shirt in terms of, like, how many knots
20   there were, whether he ripped it, anything like
21   that?
22       A.   No.  I wasn't worried about that.  I
23   was worried about trying to help him out.
24       Q.   Tell me about your observations of

Page 88

1    Lumar before you cut him down.  Like, when you first
2    arrived did he appear to be responsive in any way?
3        A.   No.
4        Q.   Were his eyes open or shut?
5        A.   They were shut.
6        Q.   Was he making any noises at all?
7        A.   No noises.
8        Q.   How long after you brought Lumar into
9    the lockup was it that Charles Barry yelled for you?
10       A.   I want to say it was almost like ten
11   minutes.
12       Q.   What happened after you cut him down?
13   Did you hold him when you were cutting him?  Did he
14   fall to the floor?
15       A.   Well, I ended up picking up his body
16   while Chuck used the knife to cut it, the shirt.
17       Q.   Okay.  So you handed the knife to
18   Chuck and he physically cut it?
19       A.   Uh-huh.
20       Q.   Is that a yes?
21       A.   Yes.
22       Q.   Okay.  At this point when you are
23   holding up or picking up his body or at any time up
24   until the point that he was transported to the

# EXHIBIT B

**Page 81**

1    desk sergeant.
2        Q.   Okay.  Did you search Tyler Lumar when
3    he returned from Cook County Jail?
4        A.   No.
5        Q.   Do you know if anyone did?
6        A.   I don't know.
7        Q.   What did you do after you delivered
8    the paperwork to the desk sergeant?
9        A.   Came back to the lockup.
10       Q.   What did you do after you came back to
11   the lockup?
12       A.   I don't remember.
13       Q.   When was the next time -- strike that.
14           By the time you came back to the
15   lockup, was Lumar already in the cell?
16       A.   Yes.
17       Q.   When was the next time you saw Lumar?
18       A.   On my checks.
19       Q.   When you say "on my checks," what do
20   you mean?
21       A.   The times that I sign the book.
22       Q.   And referring back to Exhibit 49.
23       A.   Right.
24       Q.   You had performed the checks,

**Page 82**

1    according to page 2, from 9:45 up until 11:15 on
2    August 19th; is that correct?
3        A.   Yes.
4        Q.   And there's an entry, sir, where it
5    says, "At 11:15, unconscious."  Do you see where I'm
6    reading?
7        A.   That's an additional comment?
8        Q.   Right here, sir.
9        A.   Oh, yeah.  And that's the CB number,
10   so that's who it is.
11       Q.   That number, 19358301, is Tyler
12   Lumar's CB number?
13       A.   Correct.
14       Q.   Okay.  Now, did you write that word,
15   "unconscious," and then his CB number?
16       A.   Yes.
17       Q.   Why did you write that?
18       A.   Because he was unconscious.
19       Q.   Okay.  So this entry that you have the
20   word "unconscious," that pertains to the point at
21   which you discovered Lumar unconscious in his cell;
22   is that correct?
23       A.   Yes.
24       Q.   Prior to observing Lumar unconscious

**Page 83**

1    in the cell, did you observe him at any other time
2    after you came back into the lockup after you
3    delivered the paperwork to the desk sergeant?
4        A.   On my checks.
5        Q.   Okay.  So you had seen Lumar during
6    your checks before he was found unconscious?
7        A.   Correct.
8        Q.   Do you know how many checks you had
9    performed of Lumar before you found him unconscious?
10       A.   I don't remember.
11       Q.   Okay.  Can you tell me what -- strike
12   that.
13           In the checks that you performed
14   before you found him unconscious, do you recall
15   anything about your observations of Lumar?
16       A.   No.
17       Q.   Can you tell me what you do recall
18   specifically when you found him, quote, unconscious?
19       A.   I don't understand the question.
20       Q.   Sure.  Well, I'm just trying to direct
21   your attention to this entry.
22       A.   Right.
23       Q.   Tell me what you recall when you
24   performed your check and you found Tyler Lumar, as

**Page 84**

1    you documented it, unconscious.  But how did you
2    find him initially?  Was he hanging?
3        A.   At that time.
4        Q.   Okay.  So that's what I want to know,
5    sir.  I want to know about the cell check that you
6    were performing when you first discovered that there
7    was a problem with Lumar.  What did you see when you
8    first came to the cell?
9        A.   I seen him hanging.
10       Q.   Okay.  Specifically where was he
11   hanging?
12       A.   Meaning?
13       Q.   Can you describe where he was hanging
14   at?  If you had to tell me as if I had never been
15   there.
16       A.   I don't remember.
17       Q.   Was he hanging from the cell, the
18   bars?
19       A.   Yes.
20       Q.   Do you recall what he was wearing?
21       A.   No.
22       Q.   Was there anyone else in the cell with
23   him?
24       A.   No.



PLAINTIFF'S
EXHIBIT
B

## Page 85

1    Q. Do you recall how he was hanging from
2    the cell, with what instrumentality or what -- how
3    did he --
4    A. I don't remember.
5    Q. Okay. Do you recall what you did
6    after you found him hanging?
7    A. I called for my two coworkers.
8    Q. When you say call, was that, like, you
9    screened or over a radio?
10   A. Verbally to bring a key because they
11   have to unlock the cell.
12   Q. Okay. As the detention aide, did you
13   have keys on you that could unlock the cell?
14   A. We have keys at the desk.
15   Q. Like, one main set?
16   A. Yeah.
17   Q. And who -- the two coworkers, who
18   were they that were working with you that day?
19   A. John Granat and then the other John.
20   What was his name?
21   Q. John Errum?
22   A. Errum.
23   Q. All right. And did you -- when you
24   first came upon Lumar, did you touch him in any way?

## Page 86

1    A. No. I cut whatever he was hanging
2    with.
3    Q. Did you have something on your person
4    that you were able to cut him down?
5    A. Yes.
6    Q. What was that?
7    A. A knife.
8    Q. Like a pocketknife?
9    A. Yes.
10   Q. And who came with the keys?
11   A. I don't remember which one. It was --
12   I work with two other people. Somebody had the
13   keys. Someone held him while I cut him down.
14   Q. All right. So someone held up his
15   body while you cut him down?
16   A. Yes.
17   Q. What did you do after you cut him
18   down?
19   A. I let the desk sergeant know what was
20   going on.
21   Q. Do you recall who that was?
22   A. No, I don't.
23   Q. Did you -- were you involved in
24   performing any CPR on Lumar?

## Page 87

1    A. No. A female named Brigid. She was
2    working on the female side, and she performed mouth
3    to mouth on him until the paramedics got there.
4    Q. Were you still at the scene when the
5    paramedics arrived?
6    A. Yes.
7    Q. Did you have any discussions with the
8    paramedics?
9    A. No.
10   Q. Do you recall how many checks you
11   performed on Lumar before you found him hanging?
12   A. I don't remember.
13   Q. Was Sergeant Dan McCall present?
14   A. He was in the garage.
15   Q. Did you go and get him?
16   A. I don't remember, but he was the first
17   sergeant on the scene.
18   Q. When you say "on the scene," you mean
19   by the cell where you found Lumar?
20   A. Right.
21   Q. Was Brigid already at the cell by the
22   time you cut Lumar down?
23   A. No.
24   Q. On August 19th of 2016, did you know

## Page 88

1    how to perform CPR?
2    A. Yes.
3    Q. Is there any reason why you didn't do
4    it?
5         MS. DAVENPORT: Object to the form of
6    the question.
7    BY THE WITNESS:
8    A. No. I don't know.
9    BY MS. O'CONNOR:
10   Q. When you cut him down, it sounds like
11   you don't remember specifically what other detention
12   aide was with you, but there was --
13   A. I had two coworkers.
14   Q. They were both there at that point?
15   A. Right. Well, Gartner, he's CPD.
16   Q. Meaning he's a police officer?
17   A. Right.
18   Q. When you first saw Lumar hanging, did
19   you hear him make any noises?
20   A. I don't recall.
21   Q. Did you see any vomit in the cell?
22   A. I don't recall. I was just trying to
23   get him down.
24   Q. Do you recall seeing any blood in the

# EXHIBIT C

Page 73

```
 1    had other officers to deal with. And at some point,
 2    I believe it was Sergeant McCall came up to the desk
 3    and said, we need you in the lockup now, bring the
 4    AED. Then I knew something was a little more
 5    serious.
 6         Q.   So when you recalled Barry calling the
 7    desk, was that from a phone?
 8         A.   From the phone, yes.
 9              MS. RYAN: Objection, foundation.
10    BY MS. O'CONNOR:
11         Q.   And, like, the lockup phone?
12         A.   Just a phone that is in the lockup,
13    call the desk.
14         Q.   So you were actually sitting in the
15    main desk at this point?
16         A.   I was sitting in the front of the
17    station nowhere near the lockup.
18         Q.   Got it. All right. So the first call
19    that you received from Detention Aide Barry simply
20    said, we need you in the lockup, but he didn't
21    indicate why?
22         A.   No.
23         Q.   Is that correct?
24         A.   That's correct.
```

Page 74

```
 1         Q.   Okay. Then you continued to process
 2    the inventory and do the other things that --
 3         A.   Doing my desk duties, yes.
 4         Q.   And then approximately how long later
 5    was it that Sergeant McCall called?
 6         A.   Sergeant McCall physically came up and
 7    got me about a minute later.
 8         Q.   Did you grab the AED?
 9         A.   It's right behind the desk, right
10    behind my desk.
11         Q.   So did you grab it?
12         A.   Yes, I did.
13         Q.   Why don't you tell me what you did
14    after Sergeant McCall physically came to get you at
15    the desk.
16         A.   Grabbed the AED, we went in the
17    lockup, we saw Mr. Lumar, we put the electrodes from
18    the AED on there, followed the instructions, said do
19    not shock, we did not, we waited for the CFD
20    ambulance to show up, and they did whatever they
21    did.
22         Q.   Okay. At the point that you got to
23    the scene or got to the cell with Sergeant McCall,
24    was Lumar still hanging, or was he on the ground at
```

Page 75

```
 1    this point?
 2         A.   He was on the ground.
 3         Q.   And who, if anyone else, was within,
 4    you know, feet of Lumar when you first arrived at
 5    him?
 6              MS. RYAN: Objection, form.
 7    BY THE WITNESS:
 8         A.   Barry, McCall, myself. I don't know
 9    who else. Whoever else was working in the lockup
10    was probably there.
11    BY MS. O'CONNOR:
12         Q.   Do you recall hearing any noises by
13    Lumar at any time when you got to his cell up until
14    the point that he left with the EMS?
15              MS. RYAN: Objection, form.
16    BY THE WITNESS:
17         A.   No.
18    BY MS. O'CONNOR:
19         Q.   Did you at any time administer CPR?
20         A.   No.
21         Q.   Did you observe anyone administer CPR?
22         A.   No. Unless the fire department did.
23         Q.   Do you know who called the fire
24    department?
```

Page 76

```
 1         A.   I believe it was Sergeant McCall.
 2         Q.   And do you know how he called them,
 3    meaning through dispatch --
 4         A.   On the radio.
 5         Q.   Okay. And when you say "on the
 6    radio," that's through dispatch?
 7         A.   Police radio, through dispatch,
 8    dispatch and ambulance to the lockup.
 9         Q.   Does that go through OEMC?
10         A.   Yes.
11         Q.   Did you see any blood at the scene?
12              MS. RYAN: Objection to form.
13    BY THE WITNESS:
14         A.   I don't recall if there was or not.
15    BY MS. O'CONNOR:
16         Q.   Do you recall if there was any vomit?
17         A.   I don't recall.
18         Q.   Approximately how long were you at the
19    scene until EMS arrived?
20         A.   They were there within a minute or
21    two.
22         Q.   And after EMS arrived, what did you
23    do?
24         A.   Secured the lockup, went back up to
```

19 (Pages 73 to 76)



PLAINTIFF'S
EXHIBIT
C

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **LISA ALCORN, as Independent Administrator of the Estate of TYLER LUMAR,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **No. 17 C 5859** |
| **v.** | ) ) | **Honorable Judge Virginia M. Kendall** |
| **THE CITY OF CHICAGO, et. al,** | ) ) | |
| **Defendants.** | ) | |

### <u>NOTICE OF DEPOSITION PURSUANT TO FRCP 30(b)(6)</u>

YOU ARE HEREBY NOTIFIED that, pursuant to Rule 30(b)(6) of the F.R.Civ.P., the Plaintiff, LISA ALCORN as Independent Administrator of the Estate of TYLER LUMAR, shall take the deposition upon oral examination of the Defendant, CITY OF CHICAGO, through one or more officers, directors, agents or other representatives who shall be designated to testify on the City of Chicago's behalf regarding all information known or reasonably available to the City of Chicago with respect to the following subject matters:

1) The procedure and/or policy of the Chicago Police Department as to how Police Officers and Detention Aides should respond when an arrestee/prisoner is found to have attempted suicide in a lockup or detention facility including, but not limited to, hanging by a ligature around their neck.

2) The Chicago Police Department's training of Police Officers and Detention Aides as to:

   a) Suicide Prevention.

   b) Screening of arrestee/prisoners for suicide risk.

   c) Identification of arrestee/prisoner who pose a suicide risk.

   d) Rendering first aid to injured arrestee/prisoners including, but not limited to, individuals who attempted suicide by hanging by a ligature around their neck.


PLAINTIFF'S EXHIBIT
D

3) The Chicago Police Department's provision of "cut-down" tools also known as "911 rescue knives," or any other devices or implements facilitate the rescue of arrestee/prisoners, to Chicago Police Officers and Detention Aides assigned to guard arrestee/prisoners in Chicago Police Department lockups and detention facilities.

4) The City of Chicago's compliance with the Illinois Administrative Code, Municipal Jail and Lockup Standards, Ill. Admin. Code tit. 20, § 720 et. seq.

Plaintiff requests that the City of Chicago provide written notice at least five (5) business days before the deposition of the name(s) and employment position(s) of the individual(s) designated to testify on the City of Chicago's behalf.

This deposition shall commence on August 17, 2020 at 19 S. LaSalle St. Suite 1200, Chicago, IL 60622, or at a date available for all parties and shall be taken before a duly certified court reporter and notary public or other person authorized by law to administer oaths. The deposition will be recorded by stenographic means.

Dated: July 31, 2020

Respectfully Submitted,

By:   /s/ Eileen M. O'Connor
Eileen M. O'Connor, # 06290372
O'CONNOR LAW GROUP LLC
19 S. LaSalle, Suite 1900
Chicago, IL  60603
(312) 236-1814
eoc@oconnorlawgrp.com

## CERTIFICATE OF SERVICE

Under penalties as provided by law, the undersigned certifies that copies of the above were served on the above parties via electronic mail to all attorneys of record prior to 5:00 p.m. on July 31, 2020

s/Eileen M. O'Connor

2

# EXHIBIT E

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LISA ALCORN, as Plenary Guardian of the Estate and Person of TYLER LUMAR | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | No. 17 CV 5859 |
| | ) | |
| THE CITY OF CHICAGO, a Municipal Corporation, et al., | ) ) ) | |
| Defendants. | ) ) | |

### NOTICE OF DEPOSITIONS

TO:    Attorneys of Record - See Attached Service List

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure Rule 30, we will take the depositions of the following individuals, on the following dates:

| Deponent | Date |
|---|---|
| Daniel Warren | April 25, 2019@10:00 a.m. |
| Carolos Vega | April 25, 2019@1:00 p.m. |
| Corina Esteban | April 25, 2019@3:30 p.m. |
| Kevin Geyer | April 26, 2019@10:00 a.m. |
| Jonathan Errum | April 26, 2019@1:00 p.m. |

The depositions shall take place at the O'Connor Law Group LLC, 140 S. Dearborn Street, Suite 320, Chicago, Illinois, 60603. The depositions shall be recorded stenographically.

Dated: March 19, 2019

Respectfully Submitted,

By:    /s/ Eileen M. O'Connor
       Eileen M. O'Connor, # 06290372
       O'CONNOR LAW GROUP LLC
       140 S. Dearborn, Suite 320
       Chicago, IL 60603
       (312) 236-1814
       eoc@oconnorlawgrp.com



## CERTIFICATE OF SERVICE

Under penalties as provided by law, the undersigned certifies that copies of the above were served on the above parties via electronic mail to all attorneys of record prior to 5:00 p.m. on <u>March 19, 2019.</u>

RE:    Alcorn v. City of Chicago
         Court No. 17 CV 5859

## SERVICE LIST

### ATTORNEY FOR CITY OF CHICAGO
Terrence M. Burns
Elizabeth Ekl
Paul Michalik
Daniel M. Noland
Katherine C. Morrison
Daniel J. Burns
Reiter Burns LLP
311 S. Wacker Drive, Suite 5200
Chicago, IL 60606
312-982-0090
tburns@reiterburns.com
eekl@reiterburns.com
pmichalik@reiterburns.com
dnoland@reiterburns.com
kmorrison@reiterburns.com
dburns@reiterburns.com

### ATTORNEY FOR DANIEL WARREN, CARLOS VEGA, JAMES JONES, ALAN LASCH, CORRINA ESTEBAN, KEVIN GEYER, WESLENE O'DONNELL AND JONATHAN ERRUM
Elaine C. Davenport
Sanchez Daniels & Hoffman, LLP
333 W. Wacker Drive, Suite 500
Chicago, IL 60606
312-641-1555
312-641-3004 (fax)
EDavenport@SanchezDH.com

### ATTORNEY FOR DART, COOK COUNTY, WLODARSKI, CRAWFORD, GARMON, LEON, LATHAM, LEWIS and JONES-TAPIA
John Power
Jenna Ann McMahon
Cook County State's Attorney's Office
50 W. Washington Street
Chicago, IL 60602
312-603-4370 – John Power
312-603-4327 – Jenna McMahon
John.Power@cookcountyil.gov
Jenna.McMahon@cookcountyil.gov

# EXHIBIT F



**City of Chicago**
Rahm Emanuel, Mayor

**Department of Law**
Edward Siskel
Corporation Counsel

JASON MARX
Assistant Corporation Counsel
Federal Civil Rights Litigation
30 North LaSalle, Suite 900
Chicago, Illinois 60602
(312) 744-1975
jason.marx@cityofchicago.org

November 17, 2017

Eileen M. O'Connor
O'Connor Law Group LLC
140 S. Dearborn, Suite 320
Chicago, IL 60603

Kevin Kocim
Assistant State's Attorney
Civil Rights Section
Cook County State's Attorney's Office
500 Daley Center
Chicago, Illinois 60602

Devlin Schoop, Senior Counsel
Shawn Barnett, Assistant Corporation Counsel
Allison Romelfanger, Assistant Corporation Counsel
City of Chicago, Department of Law
30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602

Re: *Lisa Alcorn v. City of Chicago, et al., 17 C 5859*

   Counsel,

   Enclosed please find Defendants' Responses to Mandatory Initial Discovery with a CD
containing bate stamped documents FCRL 1-2664. Thank you.

Sincerely,

/s/   *Jason Marx*
Jason Marx
Assistant Corporation Counsel

Enclosures as above

1



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Lisa Alcorn, as Plenary Guardian of the Estate of Tyler Lumar | ) ) | |
| | ) | Case No. 17 C 5859 |
| Plaintiff, | ) | |
| v. | ) | Judge Kendall |
| | ) | |
| The City of Chicago, et al. | ) | Magistrate Judge Finnegan |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' WARREN, VEGA, ESTEBAN, CONNER, MASTERS, JONES, ALEXANDER, VINSON, LASCH, GEYER, O'DONNELL, GARTNER, BARRY, AND PEALS RESPONSE TO MANDATORY INITIAL DISCOVERY**

Defendants Daniel Warren, Carlos Vega, Corrina Esteban, Justin Conner, Dany Helwink-Masters, James Jones, Dietrice Alexander, Peter Vinson, Alan Lasch, Kevin Geyer, Weselene O'Donnell, John Gartner, Charles Barry, and Kimoni Peals, (collectively herein "Defendants") by and through their attorneys, Caroline Fronczak, senior Counsel, Jason Marx, Assistant Corporation Counsel, and Jessica Gomez-Feie Assistant Corporation Counsel, for their Response to Mandatory Initial Discovery pursuant to the standing order regarding the Mandatory Initial Discovery Pilot Project, state as follows:

1.      State the names and, if known, the addresses and telephone numbers of all persons who you believe are likely to have discoverable information relevant to any party's claims or defenses, and provide a fair description of the nature of the information each such person is believed to possess.

**RESPONSE:**

1) Defendant Daniel Warren, Star No. 17444. 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through defense counsel only. Defendant Warren may have knowledge

1

of his training and the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

2) Defendant Carlos Vega, Star No. 17477, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through defense counsel only. Defendant Walsh may have knowledge of his training and the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

3) Defendant Corrina Esteban, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through defense counsel only. Defendant Esteban may have knowledge of her training and the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

4) Defendant Justin Conner, Star No. 18863, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through defense counsel only. Defendant Conner may have knowledge his training and the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

5) Defendant Dany Helwink Masters, Star No. 261, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through defense counsel only. Defendant Masters may have knowledge of her training and the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

6) Defendant James Jones, Star No. 73, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through defense counsel only. Defendant Jones may have knowledge of his training and the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

7) Defendant Dietrice Alexander Star No. 7662, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through defense counsel only. Defendant Alexander may have knowledge of her training and the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

8) Defendant Peter Vinson Star No. 17066, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through defense counsel only. Defendant Vinson may have knowledge of his training and the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

9) Defendant Alan Lasch, Star No. 1434, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through defense counsel only. Defendant Lasch may have knowledge of his training and the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

10) Defendant Kevin Geyer, Star No. 1679, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through defense counsel only. Defendant Geyer may have knowledge of his training and the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

11) Defendant Weslene O'Donnell, Star No. 2167, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through defense counsel only. Defendant O'Donnell may have knowledge of her training and the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

12) Defendant Sgt. John Gartner, Star No. 2523, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through defense counsel only. Defendant Gartner may have knowledge

of his training and the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

13) Defendant Charles Barry, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through defense counsel only. Defendant Barry may have knowledge of his training and the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

14) Defendant Kimoni Peals, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through defense counsel only. Defendant Peals may have knowledge of his training and the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

15) Plaintiff Lisa Alcorn, may have knowledge regarding the allegations contained in the Complaint, any alleged damages she claims that Tyler Lumar suffered in connection with the events that are the subject of this lawsuit, as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants, including Lumar's criminal history and convictions, if any.

16) Defendant T. Wlodarski, Cook County Sheriff's Office, this individual may be contacted through his attorney only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

17) Cook County Sheriff's Department Lieutenant A. Lewis, this individual may be contacted through the legal department for the Cook County Sheriff's Department. This individual may have knowledge regarding LUMAR's alleged possession of narcotics during the processing in the bullpen area at or near the location of the criminal courthouse.

4

18) Chicago Police Detective Marc Leavitt, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

19) Chicago Police Detective William Fiedler, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

20) Chicago Police Officer Daniel McCall, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

21) Chicago Police Officer Greg Roszkowski, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

22) Chicago Police Department employee Jonathan Errum, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

23) Chicago Police Officer Brigid Menoni, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events

that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

24) Chicago Police Officer John Granat, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

25) Chicago Police Officer R. Zasiebida (Star 417), this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of LUMAR's prior arrest and all other subject matter set out in related documents produced in discovery by Plaintiff and Defendants.

26) Chicago Police Officer M. Scott (Star 342), this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of LUMAR's prior arrest and all other subject matter set out in related documents produced in discovery by Plaintiff and Defendants.

27) Chicago Police Officer Thomas Gannon (Star 9694), this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of LUMAR's arrest for narcotics possession on August 19, 2016 and all other subject matter set out in related documents produced in discovery by Plaintiff and Defendants.

28) Chicago Police Evidence Technician Angelo Marconi, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding recovery of evidence following LUMAR's suicide attempt.

29) Chicago Police Evidence Technician Elizabeth Vera, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding recovery of evidence following LUMAR's suicide attempt.

30) Chicago Police Sergeant Thomas Mitchell, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding the scene of LUMAR's suicide attempt and investigation into the suicide attempt.

31) Chicago Police Sergeant Erik Madsen, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding the scene of LUMAR's suicide attempt and investigation into the suicide attempt.

32) Chicago Police Officer Michael Bertini, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding the scene of LUMAR's suicide attempt and investigation into the suicide attempt.

33) Chicago Police Officer Patrick Cradick, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding the scene of LUMAR's suicide attempt and investigation into the suicide attempt.

34) Chicago Police Officer Roger Bay, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding the scene of LUMAR's suicide attempt and investigation into the suicide attempt.

35) Chicago Police Officer Walter Delgado, this individual may be contacted through counsel Defendant City of Chicago only. This individual may have knowledge regarding

7

LUMAR's physical and mental condition prior to LUMAR's suicide attempt on August 19, 2016.

36) Chicago Police Officer Kevin Wortham, this individual may be contacted through counsel Defendant City of Chicago only. This individual may have knowledge regarding LUMAR's physical and mental condition prior to LUMAR's suicide attempt on August 19, 2016.

37) Chicago Police Department employee A. McGuire, this individual may be contacted through counsel Defendant City of Chicago only. This individual may have knowledge regarding LUMAR's physical and mental condition prior to LUMAR's suicide attempt on August 19, 2016.

38) Chicago Police Department employee R. Kincaid, this individual may be contacted through counsel Defendant City of Chicago only. This individual may have knowledge regarding LUMAR's physical and mental condition prior to LUMAR's suicide attempt on August 19, 2016.

39) Chicago Fire Department paramedic Luis Velez, to be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding medical treatment provided to LUMAR in the District 11 lockup.

40) Chicago Fire Department paramedic Tristan Lopez, to be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding medical treatment provided to LUMAR in the District 11 lockup.

41) Chicago Fire Department Lieutenant Marlon Woods, to be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding medical treatment provided to LUMAR in the District 11 lockup.

42) Chicago Fire Department firefighter Wade, to be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding medical treatment provided to LUMAR in the District 11 lockup.

43) Chicago Fire Department firefighter Orroyo, to be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding medical treatment provided to LUMAR in the District 11 lockup.

44) Chicago Fire Department firefighter Unknown name, employee number 21216, to be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding medical treatment provided to LUMAR in the District 11 lockup.

45) Casey Tencate, current contact information unknown, this individual may have knowledge relating to LUMAR's prior arrest.

46) Lauren Barrett, current contact information unknown, this individual may have knowledge relating to LUMAR's prior arrest.

47) Amritpal Jawanda, MD, c/o Madison Family Health Center, 388 W. Madison, Chicago, Illinois. This individual may have knowledge regarding LUMAR's conduct prior to his arrest on August 18, 2016.

9

48) Sukhveer Wahi, MD, c/o Madison Family Health Center, 388 W. Madison, Chicago, Illinois. This individual may have knowledge regarding LUMAR's conduct prior to his arrest on August 18, 2016.

49) Dexter Reed, security, c/o Madison Family Health Center, 388 W. Madison, Chicago, Illinois. This individual may have knowledge regarding LUMAR's conduct prior to his arrest on August 18, 2016.

50) Katie Simmons, c/o Madison Family Health Center, 388 W. Madison, Chicago, Illinois. This individual may have knowledge regarding LUMAR's conduct prior to his arrest on August 18, 2016.

51) Maria Vega, c/o Madison Family Health Center, 388 W. Madison, Chicago, Illinois. This individual may have knowledge regarding LUMAR's conduct prior to his arrest on August 18, 2016.

52) Monique Zkson, c/o Madison Family Health Center, 388 W. Madison, Chicago, Illinois. This individual may have knowledge regarding LUMAR's conduct prior to his arrest on August 18, 2016.

53) Erica Cook, c/o Madison Family Health Center, 388 W. Madison, Chicago, Illinois. This individual may have knowledge regarding LUMAR's conduct prior to his arrest on August 18, 2016.

54) Erik Spann, last known address 426 North Harding Avenue in Chicago, Illinois. This individual may have knowledge regarding LUMAR's suicide attempt, statements, and actions taken immediately after LUMAR's suicide attempt.

55) Civilian Office of Police Accountability ("COPA") Investigator Bruce Dean, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

56) COPA Investigator Chantelle Hill, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

57) COPA Investigator William Abbruzzese, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

58) COPA Investigator Joshua Hunt this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

59) COPA Investigator Catherina Oliveri, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

60) COPA Investigator Kelvin Lett, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that

are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

61) COPA Investigator Linda Franco, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

62) COPA Investigator Adam Pfeifer, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

63) COPA Investigator Daniel Kobel, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

64) COPA Investigator S. Carter, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

65) Chicago Police Chief Wayne M. Gulliford, to be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding the Chicago Police Department policy as to holding arrestees detained on arrest warrants issued outside of Cook County.

66) Amar Singh, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

67) Laila Robateau, RN, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

68) Amir Vafa, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

69) Jonathan Hwee, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

70) Alan Matson, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

71) Ivica Vucic, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

72) Amar Shah, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

73) Jeffrey Yu, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

74) Adarsh Shukla, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

75) Christine Eden, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

76) Anthony Castelli, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

77) Laura Kozak, RN, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

78) Sandeep Khosla, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

79) Mir Yadullahi, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

80) Andrew Bokarius, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

81) Mark Chottiner, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

82) Valeria Cooper, PA, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

83) Stavros Maltezos, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

84) Keenan Wanamaker, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

85) Alin Cheran MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

86) Nancy Sibigtroth, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

87) Kukoyi Omobolawa, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

88) William Brigode, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

89) Sarah Baeje Wiig, PA, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

90) Albert Leung, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

91) Taral Doshi, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

92) Gary Merlott, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

93) Michael Rechitsky, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

94) Ryan Sullivan, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

95) Steven Flynn, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

96) Alan Hecht, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

97) David DeBruin, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

98) Richard Kim, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

99) Kevin Frame, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

100)     Sarah Rowe, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

101)     Anthony Thomas, MD, c/o Quest Diagnostics Wood Dale, 1355 Mittel Boulevard, Wooddale, IL. This individual may be contacted through Quest Diagnostics.

This individual may have knowledge regarding medical testing performed on LUMAR following LUMAR's suicide attempt.

102)    Erika Ferguson, MD c/o Mt. Sinai Hospital in Chicago, Illinois, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment prior to LUMAR's suicide attempt.

103)    Chief Judge Timothy C. Evans, Circuit Court of Cook County, to be contacted through legal department of the Circuit Court of Cook County. Judge Evans may have knowledge regarding his order stating that all individuals arrested by the Chicago Police Department on an arrest warrant issued by an Illinois state court outside of Cook County shall be required to appear in bond court prior to release.

104)    Representative from Circuit Court of Lee County, to be contacted through legal department of Circuit Court of Lee County. This individual may have knowledge regarding the issuance of LUMAR's Lee County arrest warrant and would be expected to testify that on August 18, 2016, LUMAR's Lee County arrest warrant was valid.

105)    Representative from the Office of Emergency Management and Communication ("OEMC"), this individual may be contacted through counsel for Defendant City of Chicago only. This individual would have knowledge regarding OEMC documents and recordings and would lay foundation for OEMC documents and/or OEMC recordings.

106)    Personnel from the Chicago Police Department, to lay foundation for and/or to testify all Chicago Police Department records produced in this case, including, but not limited to, police reports, photographs, relevant individuals' criminal backgrounds, rap sheets, to be contacted through defense counsel.

107)     Representative(s) from the City of Chicago Police Department, to be formally designated at a later time and to be contacted through counsel for Defendant City of Chicago only. This individual or individuals would be presented as a corporate designate(s) to testify as to official Chicago Police Department policy on specific subjects, including but not limited to General Orders and Special Orders of the Chicago Police Department.

108)     Representative(s) from the City of Chicago Police Department, to be formally designated at a later time and to be contacted through counsel for Defendant City of Chicago only. This individual or individuals would be presented as a corporate designate(s) to testify as to training provided to City of Chicago employees.

109)     Representative(s) from the City of Chicago Police Department, to be formally designated at a later time and to be contacted through counsel for Defendant City of Chicago only. This individual or individuals would be presented as a corporate designate(s) to testify as to investigations into in-custody deaths of arrestees.

110)     Representative(s) from the City of Chicago, to be formally designated at a later time and to be contacted through counsel for Defendant City of Chicago only. This individual or individuals would be presented as a corporate designate(s) to testify as to investigations into allegations involving misconduct on the part of City of Chicago Police Department employees.

Investigation continues and this response is not intended to be a final list of possible witnesses in this matter. Defendants reserve the right to supplement this response as the investigation continues and pursuant to the Northern District Court of Illinois' Standing Order Regarding Mandatory Initial Discovery Pilot Project. Defendants also reserve the right to call any witnesses disclosed by Plaintiff at trial in this matter.

2.      State the names and, if known, the addresses and telephone numbers of all persons who you believe have given written or recorded statements relevant to any party's claims or defenses. Unless you assert a privilege or work product protection against disclosure under applicable law, attach a copy of each such statement if it is in your possession, custody, or control. If not in your possession, custody, or control, state the name and, if known, the address and telephone number of each person who you believe has custody of a copy.

**RESPONSE:**

At this time, numerous witnesses have given statements relevant to any party's claims or defenses. Copies of the statements are being provided to Plaintiff and are contained within the Log File.

Investigation continues and this response is not intended to be a final list of people who have given written or recorded statements relevant to any party's claims or defenses. Defendants reserve the right to supplement this response as the investigation continues and pursuant to the Northern District Court of Illinois' Standing Order Regarding Mandatory Initial Discovery Pilot Project. Defendants also reserve the right to call any witnesses disclosed by Plaintiff at trial in this matter.

3.      List the documents, electronically stored information ("ESI"), tangible things, land, or other property known by you to exist, whether or not in your possession, custody or control, that you believe may be relevant to any party's claims or defenses. To the extent the volume of any such materials makes listing them individually impracticable, you may group similar documents or ESI into categories and describe the specific categories with particularity. Include in your response the names and, if known, the addresses and telephone numbers of the custodians of the documents, ESI, or tangible things, land, or other property that are not in your possession, custody, or control. For documents and tangible things in your possession, custody, or control, you may produce them with your response, or make them available for inspection on the date of the response, instead of listing them. Production of ESI will occur in accordance with paragraph C.2 below.

**RESPONSE:**

Defendants refer to the following documents identified herein, which are being produced November 17, 2017:

| File Name | Production Begin | Production End |
|---|---|---|
| 00.pdf | FCRL 000001 | FCRL 000004 |
| 1.pdf | FCRL 000005 | FCRL 000006 |
| 10.pdf | FCRL 000007 | FCRL 000008 |
| 11.pdf | FCRL 000009 | FCRL 000018 |
| 12.pdf | FCRL 000019 | FCRL 000020 |
| 13.mp3 | FCRL 000021 | FCRL 000021 |
| 13750299 ChainOC.pdf | FCRL 000022 | FCRL 000022 |
| 14.mp3 | FCRL 000023 | FCRL 000023 |
| 15 min Inspection log (2016, 09-07) Preservation _ Lumar.pdf | FCRL 000024 | FCRL 000030 |
| 15.mp3 | FCRL 000031 | FCRL 000031 |
| 16.mp3 | FCRL 000032 | FCRL 000032 |
| 17.pdf | FCRL 000033 | FCRL 000033 |
| 18.pdf | FCRL 000034 | FCRL 000034 |
| 19.pdf | FCRL 000035 | FCRL 000035 |
| 2.pdf | FCRL 000036 | FCRL 000036 |
| 20.pdf | FCRL 000037 | FCRL 000038 |
| 21.pdf | FCRL 000039 | FCRL 000044 |
| 22.pdf | FCRL 000045 | FCRL 000045 |
| 23.pdf | FCRL 000046 | FCRL 000048 |
| 24.pdf | FCRL 000049 | FCRL 000066 |
| 25.pdf | FCRL 000067 | FCRL 000067 |
| 26.pdf | FCRL 000068 | FCRL 000071 |
| 27.pdf | FCRL 000072 | FCRL 000072 |
| 28.pdf | FCRL 000073 | FCRL 000076 |
| 29.pdf | FCRL 000077 | FCRL 000079 |
| 3.pdf | FCRL 000080 | FCRL 000080 |
| 30.pdf | FCRL 000081 | FCRL 000082 |
| 31.pdf | FCRL 000083 | FCRL 000405 |
| 32.pdf | FCRL 000406 | FCRL 000409 |
| 33.pdf | FCRL 000410 | FCRL 000410 |
| 34.pdf | FCRL 000411 | FCRL 000411 |
| 35.wav | FCRL 000412 | FCRL 000412 |
| 36.pdf | FCRL 000413 | FCRL 000413 |

| | | |
|---|---|---|
| 37.pdf | FCRL 000414 | FCRL 000415 |
| 38.pdf | FCRL 000416 | FCRL 000416 |
| 39.pdf | FCRL 000417 | FCRL 000417 |
| 4.pdf | FCRL 000418 | FCRL 000422 |
| 40.pdf | FCRL 000423 | FCRL 000423 |
| 5.pdf | FCRL 000424 | FCRL 000426 |
| 6.pdf | FCRL 000427 | FCRL 000428 |
| 602 Reports (2016, 09-07) Fire _ Preservation _ Lumar.pdf | FCRL 000429 | FCRL 000431 |
| 7.pdf | FCRL 000432 | FCRL 000433 |
| 8.pdf | FCRL 000434 | FCRL 000434 |
| 9.pdf | FCRL 000435 | FCRL 000437 |
| 90930001.jpg | FCRL 000438 | FCRL 000438 |
| 90930002.jpg | FCRL 000439 | FCRL 000439 |
| 90930003.jpg | FCRL 000440 | FCRL 000440 |
| 90930004.jpg | FCRL 000441 | FCRL 000441 |
| 90930005.jpg | FCRL 000442 | FCRL 000442 |
| 90930006.jpg | FCRL 000443 | FCRL 000443 |
| 90930007.jpg | FCRL 000444 | FCRL 000444 |
| 90930008.jpg | FCRL 000445 | FCRL 000445 |
| 90930009.jpg | FCRL 000446 | FCRL 000446 |
| 90930010.jpg | FCRL 000447 | FCRL 000447 |
| 90930011.jpg | FCRL 000448 | FCRL 000448 |
| 90930012.jpg | FCRL 000449 | FCRL 000449 |
| 90930013.jpg | FCRL 000450 | FCRL 000450 |
| 90930014.jpg | FCRL 000451 | FCRL 000451 |
| 90930015.jpg | FCRL 000452 | FCRL 000452 |
| 90930016.jpg | FCRL 000453 | FCRL 000453 |
| 90930017.jpg | FCRL 000454 | FCRL 000454 |
| 90930018.jpg | FCRL 000455 | FCRL 000455 |
| 90930019.jpg | FCRL 000456 | FCRL 000456 |
| 90930020.jpg | FCRL 000457 | FCRL 000457 |
| 90930021.jpg | FCRL 000458 | FCRL 000458 |
| 90930022.jpg | FCRL 000459 | FCRL 000459 |
| 90930023.jpg | FCRL 000460 | FCRL 000460 |
| 90930024.jpg | FCRL 000461 | FCRL 000461 |
| 90930025.jpg | FCRL 000462 | FCRL 000462 |
| 90930026.jpg | FCRL 000463 | FCRL 000463 |
| 90930027.jpg | FCRL 000464 | FCRL 000464 |
| 90930028.jpg | FCRL 000465 | FCRL 000465 |
| 90930029.jpg | FCRL 000466 | FCRL 000466 |

| | | |
|---|---|---|
| 90930030.jpg | FCRL 000467 | FCRL 000467 |
| 90930031.jpg | FCRL 000468 | FCRL 000468 |
| 90930032.jpg | FCRL 000469 | FCRL 000469 |
| 90930033.jpg | FCRL 000470 | FCRL 000470 |
| 90930034.jpg | FCRL 000471 | FCRL 000471 |
| 90930035.jpg | FCRL 000472 | FCRL 000472 |
| 90930036.jpg | FCRL 000473 | FCRL 000473 |
| 90930037.jpg | FCRL 000474 | FCRL 000474 |
| 90930038.jpg | FCRL 000475 | FCRL 000475 |
| 90930039.jpg | FCRL 000476 | FCRL 000476 |
| 90930040.jpg | FCRL 000477 | FCRL 000477 |
| 90930041.jpg | FCRL 000478 | FCRL 000478 |
| 90930042.jpg | FCRL 000479 | FCRL 000479 |
| 90930043.jpg | FCRL 000480 | FCRL 000480 |
| 90930044.jpg | FCRL 000481 | FCRL 000481 |
| 90930045.jpg | FCRL 000482 | FCRL 000482 |
| 90930046.jpg | FCRL 000483 | FCRL 000483 |
| 90930047.jpg | FCRL 000484 | FCRL 000484 |
| 90930048.jpg | FCRL 000485 | FCRL 000485 |
| 90930049.jpg | FCRL 000486 | FCRL 000486 |
| 90930050.jpg | FCRL 000487 | FCRL 000487 |
| 90930051.jpg | FCRL 000488 | FCRL 000488 |
| 90930052.jpg | FCRL 000489 | FCRL 000489 |
| A&A sheet identifing P.O. from Arrestee Transport Manifest.pdf | FCRL 000490 | FCRL 000490 |
| A&A Sheets (2016, 09-14) 2016, 08-18_Preservation_Lumar.pdf | FCRL 000491 | FCRL 000521 |
| A&A Sheets (2016, 09-14) 2016, 08-19_Preservation_Lumar.pdf | FCRL 000522 | FCRL 000552 |
| Ambulance Report - LUMAR.TYLER (2016, 08-29).pdf | FCRL 000553 | FCRL 000558 |
| Area File (2016 10-25) RD# HZ398499.pdf | FCRL 000559 | FCRL 000570 |
| Arrest Report (2016, 08-22) Preservation_2016, 08-19.pdf | FCRL 000571 | FCRL 000575 |
| Arrest Report (2016, 10-25) Spann Alcorn.pdf | FCRL 000576 | FCRL 000580 |
| arrest report previous-08302016.pdf | FCRL 000581 | FCRL 000585 |
| arrest report searchpreservation-08302016.pdf | FCRL 000586 | FCRL 000589 |
| Arrestee Property Log (2016, 10-28) Alcorn.pdf | FCRL 000590 | FCRL 000590 |

| | | |
|---|---|---|
| Audio Research log (2016, 09-07) Fire Preservation Lumar.pdf | FCRL 000591 | FCRL 000591 |
| Audio Research Log ADDITIONAL.pdf | FCRL 000592 | FCRL 000592 |
| Audio Research Log ADDITIONAL.pdf | FCRL 000593 | FCRL 000593 |
| Audio Research Log.pdf | FCRL 000594 | FCRL 000594 |
| Audio Research Log.pdf | FCRL 000595 | FCRL 000595 |
| Audio Research Logs (2016, 12-13) 2016, 08-18_Alcorn.pdf | FCRL 000596 | FCRL 000597 |
| Audio Research Logs (2016, 12-13) 2016, 08-19_Alcorn.pdf | FCRL 000598 | FCRL 000599 |
| BEAT 1113A.pdf | FCRL 000600 | FCRL 000604 |
| BEAT-1101.pdf | FCRL 000605 | FCRL 000609 |
| BEAT-1112A.pdf | FCRL 000610 | FCRL 000613 |
| BEAT-1123.pdf | FCRL 000614 | FCRL 000631 |
| BEAT-1124.pdf | FCRL 000632 | FCRL 000643 |
| BEAT-1130.pdf | FCRL 000644 | FCRL 000647 |
| BEAT-1134.pdf | FCRL 000648 | FCRL 000668 |
| BEAT-5832.pdf | FCRL 000669 | FCRL 000673 |
| Booking photo (2016, 08-29).pdf | FCRL 000674 | FCRL 000675 |
| Booking Photos (2016, 08-29) Previous Arrest.pdf | FCRL 000676 | FCRL 000677 |
| Case Report (2016, 10-19) RD H2 398804_Alcorn.pdf | FCRL 000678 | FCRL 000679 |
| Chain of Custody Report (2016-09-26).pdf | FCRL 000680 | FCRL 000690 |
| Criminal History (2016, 08-22) Preservation_2016, 08-19.pdf | FCRL 000691 | FCRL 000695 |
| Criminal History (2016, 10-25) Span_Alcorn.pdf | FCRL 000696 | FCRL 000698 |
| cw1 radio 1508 hrs.mp3 | FCRL 000699 | FCRL 000699 |
| cw1 radio 1508 hrs.txt | FCRL 000700 | FCRL 000700 |
| cw2 phone position pdt103 1300 to 1736 hrs.mp3 | FCRL 000701 | FCRL 000701 |
| cw2 phone position pdt103 1300 to 1736 hrs.txt | FCRL 000702 | FCRL 000703 |
| cw2 radio 1300 to 1356 hrs.mp3 | FCRL 000704 | FCRL 000704 |
| cw2 radio 1300 to 1356 hrs.txt | FCRL 000705 | FCRL 000744 |
| cw2 radio 1356 to 1500 hrs.txt | FCRL 000745 | FCRL 000764 |
| cw2 radio 1356 to 1500hrs.mp3 | FCRL 000765 | FCRL 000765 |
| cw2 radio 1459 to 1553 hrs.mp3 | FCRL 000766 | FCRL 000766 |
| cw2 radio 1459 to 1553 hrs.txt | FCRL 000767 | FCRL 000787 |
| cw2 radio 1508 hrs.txt | FCRL 000788 | FCRL 000788 |
| cw2 radio 1553 to 1736 hrs.mp3 | FCRL 000789 | FCRL 000789 |

| | | |
|---|---|---|
| cw2 radio 1553 to 1736 hrs.txt | FCRL 000790 | FCRL 000841 |
| cw4 radio 1508 hrs.txt | FCRL 000842 | FCRL 000842 |
| EMS North Radio 1110hrs to 1259hrs.mp3 | FCRL 000843 | FCRL 000843 |
| EMS North Radio 1110hrs to 1259hrs.txt | FCRL 000844 | FCRL 000882 |
| ev 05380-111658 to 121701hrs.txt | FCRL 000883 | FCRL 001008 |
| ev 05380-121656 to 131532hrs.mp3 | FCRL 001009 | FCRL 001009 |
| ev 05380-121656 to 131532hrs.txt | FCRL 001010 | FCRL 001113 |
| ev 05380-131530 to 151659hrs.mp3 | FCRL 001114 | FCRL 001114 |
| ev 09530.txt | FCRL 001115 | FCRL 001115 |
| ev 09534.txt | FCRL 001116 | FCRL 001116 |
| Event Queries (2016, 12-13) 2016, 08-18_Alcorn.pdf | FCRL 001117 | FCRL 001119 |
| Event Queries (2016, 12-13) 2016, 08-19_Alcorn.pdf | FCRL 001120 | FCRL 001126 |
| Event Query (2016, 09-07) Fire _ Preservation _ Lumar.pdf | FCRL 001127 | FCRL 001129 |
| EventQuery -1623205380.pdf | FCRL 001130 | FCRL 001134 |
| EventQuery-1623206198.pdf | FCRL 001135 | FCRL 001136 |
| EventQuery-1623207170.pdf | FCRL 001137 | FCRL 001139 |
| Fingerprints (2016, 09-29).pdf | FCRL 001140 | FCRL 001143 |
| FIRE North Radio 1110hrs to 1204hrs.mp3 | FCRL 001144 | FCRL 001144 |
| FIRE North Radio 1110hrs to 1204hrs.txt | FCRL 001145 | FCRL 001172 |
| Forensics (2016, 10-03).pdf | FCRL 001173 | FCRL 001176 |
| GPS-BEAT 1123-3151 W. HARRISON.xls | FCRL 001177 | FCRL 001186 |
| GPS-BEAT 1124-3151 W. HARRISON.xls | FCRL 001187 | FCRL 001192 |
| GPS-BEAT 1124-3959 W. MADISON.xls | FCRL 001193 | FCRL 001196 |
| GPS-BEAT 1130-3151 W. HARRISON.xls | FCRL 001197 | FCRL 001202 |
| GPS-BEAT 1134-3151 W. HARRISON.xls | FCRL 001203 | FCRL 001214 |
| GPS-BEAT 5832-3151 W. HARRISON.xls | FCRL 001215 | FCRL 001218 |
| In car video (2016, 09-06)preservation.pdf | FCRL 001219 | FCRL 001220 |
| Inventory 13750250 (2016, 10-31) Alcorn.pdf | FCRL 001221 | FCRL 001222 |
| Inventory Search (2016, 08-30) RD HZ397430 Preservation.pdf | FCRL 001223 | FCRL 001223 |

| | | |
|---|---|---|
| LUMAR Arrestee Property Transport Manifest (2016, 10-27).pdf | FCRL 001224 | FCRL 001225 |
| Male Lockup.pdf | FCRL 001226 | FCRL 001227 |
| MAP-BEAT 1123 - 3151 W. HARRISON.pdf | FCRL 001228 | FCRL 001230 |
| MAP-BEAT 1124 - 3151 W. HARRISON.pdf | FCRL 001231 | FCRL 001232 |
| MAP-BEAT 1124-3959 W. MADISON.pdf | FCRL 001233 | FCRL 001235 |
| MAP-BEAT 1130 - 3151 W. HARRISON.pdf | FCRL 001236 | FCRL 001238 |
| MAP-BEAT 1134 - 3151 W. HARRISON.pdf | FCRL 001239 | FCRL 001241 |
| MAP-BEAT 5832 - 3151 W. HARRISON.pdf | FCRL 001242 | FCRL 001243 |
| mdt_messages_LH16721_A33-1357.pdf | FCRL 001244 | FCRL 001244 |
| mdt_messages_LH16721_E107-1298.pdf | FCRL 001245 | FCRL 001246 |
| Memo regarding Arrest Warrants.pdf | FCRL 001247 | FCRL 001247 |
| Motion for Preservation-Emergency (2016-08-26).pdf | FCRL 001248 | FCRL 001251 |
| notifications 1215 to 1300 hrs.mp3 | FCRL 001252 | FCRL 001252 |
| notifications 1215 to 1300 hrs.txt | FCRL 001253 | FCRL 001254 |
| OCIR2-REDACTED.pdf | FCRL 001255 | FCRL 001256 |
| OCIR3-REDACTED.pdf | FCRL 001257 | FCRL 001258 |
| OCIR-REDACTED.pdf | FCRL 001259 | FCRL 001261 |
| OEMC CD's (2016, 12-13) Alcorn.pdf | FCRL 001262 | FCRL 001265 |
| PC Search Report (2016, 10-24).pdf | FCRL 001266 | FCRL 001270 |
| PC0AZ95@20160818150632.mpg | FCRL 001271 | FCRL 001271 |
| PDT & MDT (2016, 09-13).doc | FCRL 001272 | FCRL 001272 |
| PDT_Beat_ID_LH16721.PDF | FCRL 001273 | FCRL 001273 |
| PDT_Messages_LH16721_1123.PDF | FCRL 001274 | FCRL 001275 |
| pdt_messages_LH16721_1124-2726.pdf | FCRL 001276 | FCRL 001285 |
| pdt_messages_LH16721_1130-2754.pdf | FCRL 001286 | FCRL 001287 |
| pdt_messages_LH16721_1134-2775.pdf | FCRL 001288 | FCRL 001300 |
| Preservation Letter (2016, 09-07) EO_Tyler Lumar.pdf | FCRL 001301 | FCRL 001303 |
| Prisoner transportation Transmittal (2016, 10-20) Alcorn.pdf | FCRL 001304 | FCRL 001304 |
| Property Transmittal Report (2016, 10-28) Alcorn.pdf | FCRL 001305 | FCRL 001314 |

| | | |
|---|---|---|
| Ref. CFD16-0481 Audio Log.pdf | FCRL 001315 | FCRL 001315 |
| Special Order (2017, 11-01) S06-01-02.pdf | FCRL 001316 | FCRL 001321 |
| Station Video (2017, 09-01) Dist 011.pdf | FCRL 001322 | FCRL 001322 |
| Supervisor Management Log (2017, 09-01).pdf | FCRL 001323 | FCRL 001346 |
| tempD.xml | FCRL 001347 | FCRL 001348 |
| tempV.xml | FCRL 001349 | FCRL 001355 |
| Unit Queries (2016, 12-13) 2016, 08-18_Alcorn.pdf | FCRL 001356 | FCRL 001366 |
| Watch Incident Log (2017, 09-01).pdf | FCRL 001367 | FCRL 001372 |
| z10 phone position pd119 1016 to 2155 hrs.mp3 | FCRL 001373 | FCRL 001373 |
| z10 phone position pd119 1016 to 2155 hrs.txt | FCRL 001374 | FCRL 001381 |
| z10 phone position pd119 1405 to 2007 hrs.mp3 | FCRL 001382 | FCRL 001382 |
| z10 phone position pd119 1405 to 2007 hrs.txt | FCRL 001383 | FCRL 001383 |
| z10 phone position pd120 1016 to 2155 hrs.mp3 | FCRL 001384 | FCRL 001384 |
| z10 phone position pd120 1016 to 2155 hrs.txt | FCRL 001385 | FCRL 001386 |
| z10 phone position pd120 1405 to 2007 hrs.mp3 | FCRL 001387 | FCRL 001387 |
| z10 phone position pd120 1405 to 2007 hrs.txt | FCRL 001388 | FCRL 001390 |
| z10 radio 1016 to 1117 hrs.mp3 | FCRL 001391 | FCRL 001391 |
| z10 radio 1016 to 1117 hrs.txt | FCRL 001392 | FCRL 001479 |
| z10 radio 1405 to 1508 hrs.mp3 | FCRL 001480 | FCRL 001480 |
| z10 radio 1405 to 1508 hrs.txt | FCRL 001481 | FCRL 001541 |
| z10 radio 1516 to 1616 hrs.mp3 | FCRL 001542 | FCRL 001542 |
| z10 radio 1516 to 1616 hrs.txt | FCRL 001543 | FCRL 001631 |
| z10 radio 1607 to 1705 hrs.mp3 | FCRL 001632 | FCRL 001632 |
| z10 radio 1607 to 1705 hrs.txt | FCRL 001633 | FCRL 001712 |
| z10 radio 1616 to 1717 hrs.mp3 | FCRL 001713 | FCRL 001713 |
| z10 radio 1616 to 1717 hrs.txt | FCRL 001714 | FCRL 001819 |
| z10 radio 1705 to 1807 hrs.mp3 | FCRL 001820 | FCRL 001820 |
| z10 radio 1705 to 1807 hrs.txt | FCRL 001821 | FCRL 001901 |
| z10 radio 1716 to 1816 hrs.mp3 | FCRL 001902 | FCRL 001902 |
| z10 radio 1716 to 1816 hrs.txt | FCRL 001903 | FCRL 001999 |
| z10 radio 1806 to 1907 hrs.mp3 | FCRL 002000 | FCRL 002000 |
| z10 radio 1806 to 1907 hrs.txt | FCRL 002001 | FCRL 002072 |

| z10 radio 1816 to 1916 hrs.mp3 | FCRL 002073 | FCRL 002073 |
| z10 radio 1816 to 1916 hrs.txt | FCRL 002074 | FCRL 002158 |
| z10 radio 1906 to 2007 hrs.mp3 | FCRL 002159 | FCRL 002159 |
| z10 radio 1906 to 2007 hrs.txt | FCRL 002160 | FCRL 002264 |
| z10 radio 1916 to 2055 hrs.mp3 | FCRL 002265 | FCRL 002265 |
| z10 radio 1916 to 2055 hrs.txt | FCRL 002266 | FCRL 002456 |
| z10 radio 2054 to 2154 hrs.mp3 | FCRL 002457 | FCRL 002457 |
| z10 radio 2054 to 2154 hrs.txt | FCRL 002458 | FCRL 002577 |
| zone 10-150822 to 160757hrs.txt | FCRL 002578 | FCRL 002664 |

This disclosure is not intended to be a final list of possible documents to be used in this matter. Defendants reserves the right to supplement this disclosure as the investigation continues and pursuant to the Northern District Court of Illinois' Standing Order Regarding Mandatory Initial Discovery Pilot Project.

4.    For each of your claims or defenses, state the facts relevant to it and the legal theories upon which it is based.

**RESPONSE:**

I.    Plaintiff has failed to state a claim upon which relief may be granted against Defendant City under Federal Rule of Civil Procedure 12(b)(6). The factual basis and legal theory are included within the City's pending motion to dismiss, *docket no. 41*, and are incorporated herein.

II.    The Chicago Police Department is a non-suable entity. The factual basis and legal theory are included within the City's pending motion to dismiss, *docket no. 41*, and are incorporated herein.

III.    The City of Chicago is immune from the imposition of punitive damages under both state and federal law. Moreover, under Illinois law, the City cannot be required to indemnify an employee for punitive damages, nor may it pay a judgment for punitive damages. 745 ILCS 10/2-102 (2014); *City of Newport v. Facts Concerts*, 453 U.S. 247, 271 (1981).

28

IV.   The City of Chicago cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. The factual basis and legal theory are included within the City's pending motion to dismiss, *docket no. 41*, and are incorporated herein.

V.    The City of Chicago is immune from liability for alleged constitutional deprivations caused unless Plaintiff can show that an individual defendant employed by the City of Chicago caused Plaintiff to suffer a constitutional injury. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding no *Monell* liability where no individual defendant is liable for underlying substantive claim); *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) (same). The factual basis for this defense is that Tyler Lumar attempted to commit suicide without any City of Chicago employee being put on actual notice that Tyler Lumar was at risk of suicide or self-harm. Absent this notice, no City of Chicago employee can be liable under 42 U.S.C. § 1983. *See, e.g. Saucedo v. City of Chicago*, No. 11 C 5868, 2015 WL 3643417 (N.D.Ill. June 11, 2015) (Zagel, J.). The factual basis and legal theory are also included within the City's pending motion to dismiss, *docket no. 41*, and are incorporated herein.

VI.   To the extent that Tyler Lumar failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Tyler Lumar had a duty to mitigate, commensurate with the degree of failure to mitigate attributed to Tyler Lumar by the jury in this case. The factual basis for this defense is that Tyler Lumar failed to mitigate his potential damages relating to the arrest on an outstanding warrant by, according to the Cook County Sheriff's Department, being in possession of illegal narcotics, which thereby extended the time he was in custody.

VII.  To the extent any injuries or damages claimed by Plaintiff as proximately caused, in whole or in part, by the negligent, willful and wanton and/or other wrongful conduct on the part of the Tyler Lumar, any verdict or judgment obtained by Plaintiff must be reduced by application of the principles of comparative fault, by an amount commensurate with the degree of fault attributed to Tyler Lumar by the jury in this cause. The factual basis for this defense is that Tyler Lumar voluntarily attempted to commit suicide, an act which directly and entirely caused his physical damages.

VIII.     At all times relevant to Plaintiff's Complaint, Defendants were government officials, namely police officers, who were performing discretionary functions. At all times material to the events alleged in Plaintiff's Complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted said Defendants could have believed his or her actions to be lawful, in light of clearly established law and the information that Defendants possessed. Defendants, therefore, are entitled to qualified immunity as a matter of law.

IX.     The Defendants cannot be held liable for Plaintiff's 42 U.S.C. § 1983 claims unless each individually caused or participated in the alleged constitutional deprivation because individual liability for damages under 42 U.S.C. § 1983 is predicated upon personal responsibility. See Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983).

X.     Any award of damages against the individual Defendants shall be reduced in proportion to the comparative fault of Plaintiff's own acts or omissions, including but not limited to his own willful and wanton conduct which proximately caused the claimed injuries and damages. In addition, at the time of the actions alleged in Plaintiff's Complaint, 735 ILCS 5/2-1116 (2015) was in effect. This statute reduces a plaintiff's recovery according to his contributory negligence and bars his recovery entirely when a plaintiff is more than fifty percent (50%) of the proximate cause of the injury or damage for which recovery is sought.

5.     Provide a computation of each category of damages claimed by you, and a description of the documents or other evidentiary material on which it is based, including materials bearing on the nature and extent of the injuries suffered. You may produce the documents or other evidentiary materials with your response instead of describing them.

**RESPONSE:**

    Not applicable to Defendants.

6.     Specifically identify and describe any insurance or other agreement under which an insurance business or other person or entity may be liable to satisfy all or part of a possible

judgment in the action or to indemnify or reimburse a party for payments made by the party to satisfy the judgment. You may produce a copy of the agreement with your response instead of describing it.

**RESPONSE:**

On August 19, 2016 date, the City of Chicago was self-insured for settlements and judgments up to and including $20 million per occurrence. For settlements or judgments covered by the City's excess liability policy in excess of $20 million, the City has the following coverage up to $55 million:

Argo Re Limited
$5,000,000 per occurrence/aggregate, where applicable

Allied World Assurance Company, Ltd.
$5,000,000 per occurrence/$10,000,000 aggregate

Argo Re Limited
$10,000,000 per occurrence/aggregate

Westchester Surplus Lines Insurance Company
$15,000,000 per occurrence/aggregate, where applicable

Argo Re Limited and Allied World Assurance Company, Ltd (quote share)
$15,000,000 per occurrence/$15,000,000 aggregate

First Specialty Insurance Corporation
$5,000,000 per occurrence/aggregate, where applicable

Dated: November 17, 2017.                    Respectfully submitted,

                                             /s/  *Jason Marx*                    .
                                             Jason Marx
                                             Assistant Corporation Counsel

Caroline Fronczak
Jessica Gomez-Feie
Attorneys for Defendants
City of Chicago, Department of Law
30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a true and correct copy of **DEFENDANTS'
RESPONSE TO MANDATORY INITIAL DISCOVERY**, to be delivered via email and via
U.S. mail to the parties named below at the addresses shown this 17th day of November 2017.

Eileen M. O'Connor
O'Connor Law Group LLC
140 S. Dearborn, Suite 320
Chicago, IL 60603

Kevin Kocim
Assistant State's Attorney
Civil Rights Section
Cook County State's Attorney's Office
500 Daley Center
Chicago, Illinois 60602

Devlin Schoop, Senior Counsel
Shawn Barnett, Assistant Corporation Counsel
Allison Romelfanger, Assistant Corporation Counsel
City of Chicago, Department of Law
30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602

/s/   *Jason Marx*
JASON MARX

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA ALCORN, et al.,            )
                                )       CASE NO. 17 C 5859
            Plaintiff,          )
                                )       JUDGE KENDALL
                                )
CITY OF CHICAGO, et al.         )
                                )
            Defendants.         )

## CERTIFICATION OF DEFENDANTS' RESPONSES
## TO MANDATORY INITIAL DISCOVERY

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, I, Daniel Warren, certify that the foregoing Defendants' Responses to Mandatory Initial Discovery are based on knowledge, information, and belief formed after reasonable inquiry into documents and information which have been assembled by authorized employees and counsel of the City of Chicago; and that I am informed and believe that the statements set forth in the foregoing are complete and correct as of November 14, 2017.

Signature: _____

                      DANIEL WARREN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LISA ALCORN, et al., | ) | |
| | ) | CASE NO. 17 C 5859 |
| Plaintiff, | ) | |
| | ) | JUDGE KENDALL |
| | ) | |
| CITY OF CHICAGO, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATION OF DEFENDANTS' RESPONSES
## TO MANDATORY INITIAL DISCOVERY

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, I, Charles Barry,

certify that the foregoing Defendants' Responses to Mandatory Initial Discovery are based on

knowledge, information, and belief formed after reasonable inquiry into documents and

information which have been assembled by authorized employees and counsel of the City of

Chicago; and that I am informed and believe that the statements set forth in the foregoing are

complete and correct as of November ⟋⟍⟍, 2017.

Signature: _Chas. Barry_

CHARLES BARRY

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Lisa Alcorn, as Plenary Guardian )
of the Estate of Tyler Lumar )
                 )    Case No. 17 C 5859
           Plaintiff )
v. )   Judge Kendall
                 )
The City of Chicago, et al. )   Magistrate Judge Finnegan
                 )
          Defendants. )

## CERTIFICATION OF DEFENDANTS' RESPONSES
## TO MANDATORY INITIAL DISCOVERY

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, I, Kevin Geyer, certify

that the foregoing Defendants' Responses to Mandatory Initial Discovery are based on

knowledge, information, and belief formed after reasonable inquiry into documents and

information which have been assembled by authorized employees and counsel of the City of

Chicago; and that I am informed and believe that the statements set forth in the foregoing are

complete and correct as of _15 November_ 2017.

Signature: _____ #1679

KEVIN GEYER

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Lisa Alcorn, as Plenary Guardian )
of the Estate of Tyler Lumar )
                                )     Case No. 17 C 5859
           Plaintiff          )
                                  )     Judge Kendall
v.                                     )
                                  )     Magistrate Judge Finnegan
The City of Chicago, et al.        )
                                  )
           Defendants.       )

## CERTIFICATION OF DEFENDANTS' RESPONSES
## TO MANDATORY INITIAL DISCOVERY

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, I, James Jones, certify

that the foregoing Defendants' Responses to Mandatory Initial Discovery are based on

knowledge, information, and belief formed after reasonable inquiry into documents and

information which have been assembled by authorized employees and counsel of the City of

Chicago; and that I am informed and believe that the statements set forth in the foregoing are

complete and correct as of ___14 Nov___ 2017.

Signature:          D/C _____

                         JAMES JONES

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Lisa Alcorn, as Plenary Guardian )
of the Estate of Tyler Lumar )
)
)                                    Case No. 17 C 5859
                Plaintiff )
)
v.                                   )                Judge Kendall
)
)
The City of Chicago, et al.          )                Magistrate Judge Finnegan
)
)
                Defendants.          )

## CERTIFICATION OF DEFENDANTS' RESPONSES
## TO MANDATORY INITIAL DISCOVERY

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, I, Alan Lasch, certify that the foregoing Defendants' Responses to Mandatory Initial Discovery are based on knowledge, information, and belief formed after reasonable inquiry into documents and information which have been assembled by authorized employees and counsel of the City of Chicago; and that I am informed and believe that the statements set forth in the foregoing are complete and correct as of _10 NOVEMBER_ 2017.


Signature: _Alan Lasch_

ALAN LASCH

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA ALCORN, et al.,                    )
                                        )       CASE NO. 17 C 5859
            Plaintiff,                  )
                                        )       JUDGE KENDALL
                                        )
CITY OF CHICAGO, et al.                 )
                                        )
            Defendants.                 )

## CERTIFICATION OF DEFENDANTS' RESPONSES
## TO MANDATORY INITIAL DISCOVERY

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, I, Corrina Esteban,

certify that the foregoing Defendants' Responses to Mandatory Initial Discovery are based on

knowledge, information, and belief formed after reasonable inquiry into documents and

information which have been assembled by authorized employees and counsel of the City of

Chicago; and that I am informed and believe that the statements set forth in the foregoing are

complete and correct as of November 17 , 2017.

Signature:    _Corrina Esteban_ by Jessica Somg Foie with consent
              CORRINA ESTEBAN

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Lisa Alcorn, as Plenary Guardian )
of the Estate of Tyler Lumar )
)
)       Case No. 17 C 5859
Plaintiff )
)
v. )       Judge Kendall
)
The City of Chicago, et al. )
)       Magistrate Judge Finnegan
)
Defendants. )

### CERTIFICATION OF DEFENDANTS' RESPONSES
### TO MANDATORY INITIAL DISCOVERY

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, I, John Gartner, certify

that the foregoing Defendants' Responses to Mandatory Initial Discovery are based on

knowledge, information, and belief formed after reasonable inquiry into documents and

information which have been assembled by authorized employees and counsel of the City of

Chicago; and that I am informed and believe that the statements set forth in the foregoing are

complete and correct as of _10 NOV_ 2017.

Signature: _____

JOHN GARTNER

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Lisa Alcorn, as Plenary Guardian )
of the Estate of Tyler Lumar )
                         )    Case No. 17 C 5859
          Plaintiff )
v.                          )    Judge Kendall
                           )
The City of Chicago, et al. )   Magistrate Judge Finnegan
                           )
         Defendants. )

## CERTIFICATION OF DEFENDANTS' RESPONSES
## TO MANDATORY INITIAL DISCOVERY

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, I, Dany Helwink

Masters, certify that the foregoing Defendants' Responses to Mandatory Initial Discovery are

based on knowledge, information, and belief formed after reasonable inquiry into documents and

information which have been assembled by authorized employees and counsel of the City of

Chicago; and that I am informed and believe that the statements set forth in the foregoing are

complete and correct as of _NOV 12_ 2017.

Signature: _____

DANY HELWINK MASTERS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LISA ALCORN, et al.,                    )
                                        )       CASE NO. 17 C 5859
       Plaintiff,                       )
                                        )       JUDGE KENDALL
                                        )
CITY OF CHICAGO, et al.                 )
                                        )
       Defendants.                      )

**CERTIFICATION OF DEFENDANTS' RESPONSES**
**TO MANDATORY INITIAL DISCOVERY**

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, I, Peter Vinson, certify

that the foregoing Defendants' Responses to Mandatory Initial Discovery are based on

knowledge, information, and belief formed after reasonable inquiry into documents and

information which have been assembled by authorized employees and counsel of the City of

Chicago; and that I am informed and believe that the statements set forth in the foregoing are

complete and correct as of November _17_, 2017.



Signature: _____

               PETER VINSON

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA ALCORN, et al.,                    )
                                        )    CASE NO. 17 C 5859
                Plaintiff,              )
                                        )    JUDGE KENDALL
                                        )
CITY OF CHICAGO, et al.                 )
                                        )
                Defendants.             )

## CERTIFICATION OF DEFENDANTS' RESPONSES
## TO MANDATORY INITIAL DISCOVERY

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, I, Dietrice Alexander,

certify that the foregoing Defendants' Responses to Mandatory Initial Discovery are based on

knowledge, information, and belief formed after reasonable inquiry into documents and

information which have been assembled by authorized employees and counsel of the City of

Chicago; and that I am informed and believe that the statements set forth in the foregoing are

complete and correct as of November 17, 2017.


Signature:    _Dietrice Alexander_____
              DIETRICE ALEXANDER

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA ALCORN,                           )
                                       )     CASE NO. 17 C 5859
                 Plaintiff,            )
                                       )     JUDGE KENDALL
                                       )
CITY OF CHICAGO, et al.                )
                                       )
                 Defendants.           )

## CERTIFICATION OF DEFENDANTS' RESPONSES
## TO MANDATORY INITIAL DISCOVERY

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, I, Kimoni Peals, certify

that the foregoing Defendants' Responses to Mandatory Initial Discovery are based on

knowledge, information, and belief formed after reasonable inquiry into documents and

information which have been assembled by authorized employees and counsel of the City of

Chicago; and that I am informed and believe that the statements set forth in the foregoing are

complete and correct as of November 17, 2017.


Signature: _____ with consent
                KIMONI PEALS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA ALCORN, et al.,                )
                                     )      CASE NO. 17 C 5859
            Plaintiff,               )
                                     )      JUDGE KENDALL
                                     )
CITY OF CHICAGO, et al.              )
                                     )
            Defendants.              )

## CERTIFICATION OF DEFENDANTS' RESPONSES
## TO MANDATORY INITIAL DISCOVERY

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, 1, Carlos Vega, certify that the foregoing Defendants' Responses to Mandatory Initial Discovery are based on knowledge, information, and belief formed after reasonable inquiry into documents and information which have been assembled by authorized employees and counsel of the City of Chicago; and that I am informed and believe that the statements set forth in the foregoing are complete and correct as of November _17_, 2017.

Signature: _____   17 NOV 2017

CARLOS VEGA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA ALCORN, et al.,                      )
                                          )     CASE NO. 17 C 5859
                    Plaintiff,            )
                                          )     JUDGE KENDALL
                                          )
CITY OF CHICAGO, et al.                   )
                                          )
                    Defendants.           )

### CERTIFICATION OF DEFENDANTS' RESPONSES
### TO MANDATORY INITIAL DISCOVERY

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, I, Justin Conner,

certify that the foregoing Defendants' Responses to Mandatory Initial Discovery are based on

knowledge, information, and belief formed after reasonable inquiry into documents and

information which have been assembled by authorized employees and counsel of the City of

Chicago; and that I am informed and believe that the statements set forth in the foregoing are

complete and correct as of November 17, 2017.

Signature: _Justin Conner_ by Jessica Gomez-Frie
                JUSTIN CONNER     with consent

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Lisa Alcorn, as Plenary Guardian )
of the Estate of Tyler Lumar )
                                )       Case No. 17 C 5859
           Plaintiff )
                                )
v.                                )       Judge Kendall
                                )
The City of Chicago, et al. )       Magistrate Judge Finnegan
                                )
           Defendants. )

## CERTIFICATION OF DEFENDANTS' RESPONSES
## TO MANDATORY INITIAL DISCOVERY

Under penalties as provided by law pursuant to 28 U.S.C. § 1746; I, Weslene O'Donnell, certify that the foregoing Defendants' Responses to Mandatory Initial Discovery are based on knowledge, information, and belief formed after reasonable inquiry into documents and information which have been assembled by authorized employees and counsel of the City of Chicago; and that I am informed and believe that the statements set forth in the foregoing are complete and correct as of _11 NOV_ 2017.

Signature: _____
WESLENE O'DONNELL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Lisa Alcorn, as Plenary Guardian of the Estate of Tyler Lumar | ) ) ) | Case No. 17 C 5859 |
| Plaintiff | ) ) | |
| v. | ) ) | Judge Kendall |
| The City of Chicago, et al. | ) ) | Magistrate Judge Finnegan |
| Defendants. | ) ) | |

**Notice of Service**

**To:** All counsel of record

Pursuant to the Mandatory Initial Discovery Pilot Program standing order, Defendant City of Chicago is filing this Notice of Service using the Court's electronic filing system to document that Defendant City of Chicago's Responses to Mandatory Initial Discovery has been served upon all counsel of record in this matter on the date of this filing.

Dated: November 17, 2017

Respectfully submitted,

/s/ Shawn W. Barnett
Attorney No. 6312312

Devlin Schoop, Senior Counsel
Shawn W. Barnett, Assistant Corporation Counsel
Allison Romelfanger, Assistant Corporation Counsel
City of Chicago Department of Law
30 N. LaSalle, Suite 900
Chicago, IL 60602
(312) 744-0742

**Certificate of Service**

I, the undersigned attorney, certify that I filed this document using the Court's electronic filing system. As a result, electronic copies of the filed document were served upon all counsel of record. Additionally, a copy of the filed document may have been provided to the Court depending upon the Court's standing order.

/s/ Shawn W. Barnett

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Lisa Alcorn, as Plenary Guardian          )
of the Estate of Tyler Lumar              )
                                          )      Case No. 17 C 5859
                    Plaintiff             )
                                          )
v.                                        )      Judge Kendall
                                          )
The City of Chicago, et al.               )      Magistrate Judge Finnegan
                                          )
                    Defendants.           )

DEFENDANT CITY OF CHICAGO'S
RESPONSES TO MANDATORY INITIAL DISCOVERY

Defendant, City of Chicago ("City"), through its counsel, Edward N. Siskel, Corporation Counsel for the City of Chicago, for its responses to Mandatory Initial Discovery Requests pursuant to the Standing Order Regarding Mandatory Initial Discovery Pilot Project, states as follows:

1.     State the names and, if known, the addresses and telephone numbers of all persons who you believe are likely to have discoverable information relevant to any party's claims or defenses, and provide a fair description of the nature of the information each such person is believed to possess.

RESPONSE:

1) Defendant Daniel Warren, Star No. 17444, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through his counsel only. This individual may have knowledge or information regarding the incident that is the subject of this lawsuit, including, but not limited to, the arrest of Tyler Lumar ("LUMAR"), the arrest warrant issued by Lee County, their observations and contact with LUMAR, any reports they authored or assisted with authoring, their understanding and memory of the training provided by the City of Chicago, their experience as an employee of

1

the City of Chicago, and, possibly, financial information relevant to damages should such information become relevant for their defense.

2) Defendant Carlos Vega, Star No. 17477, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through his counsel only. This individual may have knowledge or information regarding the incident that is the subject of this lawsuit, including but not limited to the arrest of LUMAR, the arrest warrant issued by Lee County, their observations and contact with LUMAR, any reports they authored or assisted with authoring, their understanding and memory of the training provided by the City of Chicago, their experience as an employee of the City of Chicago, and, possibly, financial information relevant to damages should such information become relevant for their defense.

3) Defendant Corrina Esteban, Star No. 17617, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through her counsel only. This individual may have knowledge or information regarding the incident that is the subject of this lawsuit, including but not limited to the arrest of LUMAR, the arrest warrant issued by Lee County, their observations and contact with LUMAR, any reports they authored or assisted with authoring, their understanding and memory of the training provided by the City of Chicago, their experience as an employee of the City of Chicago, and, possibly, financial information relevant to damages should such information become relevant for their defense.

4) Defendant Justin Conner, Star No. 18863, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through his counsel only. This individual may have knowledge or information regarding the incident that is the subject of this lawsuit, including but not limited to the arrest of LUMAR, the arrest warrant issued by Lee County, their observations and contact with LUMAR, any reports they authored or assisted with authoring, their understanding and memory of the training provided by the City of Chicago, their experience as an employee of the City of Chicago, and, possibly, financial information relevant to damages should such information become relevant for their defense.

2

5) Defendant Danny Helwink-Masters, Star No. 261, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through her counsel only. This individual may have knowledge or information regarding the incident that is the subject of this lawsuit, including but not limited to the arrest of LUMAR, the arrest warrant issued by Lee County, their observations and contact with LUMAR, any reports they authored or assisted with authoring, their understanding and memory of the training provided by the City of Chicago, their experience as an employee of the City of Chicago, and, possibly, financial information relevant to damages should such information become relevant for their defense.

6) Defendant James Jones, Star No. 73, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through his counsel only. This individual may have knowledge or information regarding the incident that is the subject of this lawsuit, including but not limited to the arrest of LUMAR, the arrest warrant issued by Lee County, their observations and contact with LUMAR, any reports they authored or assisted with authoring, their understanding and memory of the training provided by the City of Chicago, their experience as an employee of the City of Chicago, and, possibly, financial information relevant to damages should such information become relevant for their defense.

7) Defendant Alexander Star No. 7662, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through her counsel only. This individual may have knowledge or information regarding the incident that is the subject of this lawsuit, including but not limited to the arrest of LUMAR, the arrest warrant issued by Lee County, their observations and contact with LUMAR, any reports they authored or assisted with authoring, their understanding and memory of the training provided by the City of Chicago, their experience as an employee of the City of Chicago, and, possibly, financial information relevant to damages should such information become relevant for their defense.

8) Defendant Vinson Star No. 17066, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through his counsel only. This individual may have knowledge or information regarding the incident that is the subject of this lawsuit, including but not limited to the arrest of

LUMAR, the arrest warrant issued by Lee County, their observations and contact with LUMAR, any reports they authored or assisted with authoring, their understanding and memory of the training provided by the City of Chicago, their experience as an employee of the City of Chicago, and, possibly, financial information relevant to damages should such information become relevant for their defense.

9) Defendant Alan Lasch, Star No. 1434, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through his counsel only. This individual may have knowledge or information regarding the incident that is the subject of this lawsuit, including but not limited to the arrest of LUMAR, the arrest warrant issued by Lee County, their observations and contact with LUMAR, any reports they authored or assisted with authoring, their understanding and memory of the training provided by the City of Chicago, their experience as an employee of the City of Chicago, and, possibly, financial information relevant to damages should such information become relevant for their defense.

10) Defendant Kevin Geyer, Star No. 1679, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through her counsel only. This individual may have knowledge or information regarding the incident that is the subject of this lawsuit, including but not limited to the arrest of LUMAR, the arrest warrant issued by Lee County, their observations and contact with LUMAR, any reports they authored or assisted with authoring, their understanding and memory of the training provided by the City of Chicago, their experience as an employee of the City of Chicago, and, possibly, financial information relevant to damages should such information become relevant for their defense.

11) Defendant Weselene O'Donnell, Star No. 2167, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through her counsel only. This individual may have knowledge or information regarding the incident that is the subject of this lawsuit, including but not limited to the arrest of LUMAR, the arrest warrant issued by Lee County, their observations and contact with LUMAR, any reports they authored or assisted with authoring, their understanding and memory of the training provided by the City of Chicago, their experience as an employee of the

4

City of Chicago, and, possibly, financial information relevant to damages should such information become relevant for their defense.

12) Defendant Sgt. John Gartner, Star No. 2523, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through his counsel only. This individual may have knowledge or information regarding the incident that is the subject of this lawsuit, including but not limited to the arrest of LUMAR, the arrest warrant issued by Lee County, their observations and contact with LUMAR, any reports they authored or assisted with authoring, their understanding and memory of the training provided by the City of Chicago, their experience as an employee of the City of Chicago, and, possibly, financial information relevant to damages should such information become relevant for their defense.

13) Defendant Charles Barry, Star No. 49970, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through his counsel only. This individual may have knowledge or information regarding the incident that is the subject of this lawsuit, including but not limited to the arrest of LUMAR, the arrest warrant issued by Lee County, their observations and contact with LUMAR, any reports they authored or assisted with authoring, their understanding and memory of the training provided by the City of Chicago, their experience as an employee of the City of Chicago, and, possibly, financial information relevant to damages should such information become relevant for their defense.

14) Defendant Kimoni Peals, 3510 S. Michigan Ave., Chicago, Illinois, may be contacted through his counsel only. This individual may have knowledge or information regarding the incident that is the subject of this lawsuit, including but not limited to the arrest of LUMAR, the arrest warrant issued by Lee County, their observations and contact with LUMAR, any reports they authored or assisted with authoring, their understanding and memory of the training provided by the City of Chicago, their experience as an employee of the City of Chicago, and, possibly, financial information relevant to damages should such information become relevant for their defense.

5

15) Plaintiff Lisa Alcorn, who shall be contacted through her counsel of record. This individual may have knowledge regarding the allegations contained in the Complaint, any alleged damages she claims that Tyler Lumar suffered in connection with the events that are the subject of this lawsuit, as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants, including LUMAR's criminal history and convictions, if any.

16) Defendant T. Wlodarski, Cook County Sheriff's Office. This individual may be contacted through his counsel only. This individual may have knowledge of the events that are the subject of this lawsuit as well as all other subject matter set out in documents produced in discovery by Plaintiff and Defendants.

17) Cook County Sheriff's Department Lieutenant A. Lewis, this individual may be contacted through the legal department for the Cook County Sheriff's Department. This individual may have knowledge regarding LUMAR's alleged possession of narcotics during the processing in the bullpen area at or near the location of the criminal courthouse.

18) Chicago Police Detective Marc Leavitt, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge or information regarding the investigation following LUMAR's suicide attempt, including any findings, observations, statements made, evidence recovered, and relevant reports or other documents created following LUMAR's suicide attempt.

19) Chicago Police Detective William Fiedler, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge or information regarding the investigation following LUMAR's suicide attempt, including any findings, observations, statements made, evidence recovered, and relevant reports or other documents created following LUMAR's suicide attempt.

6

20) Chicago Police Officer Daniel McCall, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge or information regarding the investigation following LUMAR's suicide attempt, including any findings, observations, statements made, evidence recovered, and relevant reports or other documents created following LUMAR's suicide attempt.

21) Chicago Police Officer Greg Roszkowski, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge or information regarding the investigation following LUMAR's suicide attempt, including any findings, observations, statements made, evidence recovered, and relevant reports or other documents created following LUMAR's suicide attempt.

22) Chicago Police Department employee Jonathan Errum, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge or information regarding LUMAR's suicide attempt, including but not limited to their actions and observations following LUMAR's suicide attempt and statements made at that time.

23) Chicago Police Officer Brigid Menoni, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge or information regarding LUMAR's suicide attempt, including but not limited to their actions and observations following LUMAR's suicide attempt and statements made at that time.

24) Chicago Police Officer John Granat, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge or information regarding LUMAR's time in custody of the Chicago Police Department, LUMAR's suicide attempt, including but not limited to their actions and observations following LUMAR's suicide attempt and statements made at that time.

25) Oak Park Police Officer R. Zasiebida, Star 417, this individual may be contacted through the legal department of the Oak Park Police Department. This individual may have knowledge of LUMAR's prior arrest and all other subject matter set out in related documents produced in discovery by Plaintiff and Defendants.

26) Oak Park Officer M. Scott, Star 342, this individual may be contacted through the legal department of the Oak Park Police Department. This individual may have knowledge of LUMAR's prior arrest and all other subject matter set out in related documents produced in discovery by Plaintiff and Defendants.

27) Chicago Police Officer Thomas Gannon, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge of LUMAR's arrest for narcotics possession on August 19, 2016 and all other subject matter set out in related documents produced in discovery by Plaintiff and Defendants.

28) Chicago Police Evidence Technician Angelo Marconi, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding recovery of evidence following LUMAR's suicide attempt and relevant documents of the evidence recovery and scene processing.

29) Chicago Police Evidence Technician Elizabeth Vera, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding recovery of evidence following LUMAR's suicide attempt and relevant documents of the evidence recovery and scene processing.

30) Chicago Police Sergeant Thomas Mitchell, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding the scene of LUMAR's suicide attempt and investigation into the suicide attempt.

31) Chicago Police Sergeant Erik Madsen, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding the scene of LUMAR's suicide attempt and investigation into the suicide attempt.

32) Chicago Police Officer Michael Bertini, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding the scene of LUMAR's suicide attempt and investigation into the suicide attempt.

33) Chicago Police Officer Patrick Cradick, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding the scene of LUMAR's suicide attempt and investigation into the suicide attempt.

34) Chicago Police Officer Roger Bay, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding the scene of LUMAR's suicide attempt and investigation into the suicide attempt.

35) Chicago Police Officer Walter Delgado, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding LUMAR's physical and mental condition prior to LUMAR's suicide attempt on August 19, 2016.

36) Chicago Police Officer Kevin Wortham, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding LUMAR's physical and mental condition prior to LUMAR's suicide attempt on August 19, 2016.

37) Chicago Police Department employee A. McGuire, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge

regarding LUMAR's physical and mental condition prior to LUMAR's suicide attempt on August 19, 2016.

38) Chicago Police Department employee R. Kincaid, this individual may be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding LUMAR's physical and mental condition prior to LUMAR's suicide attempt on August 19, 2016.

39) Chicago Fire Department paramedic Luis Velez, to be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding medical treatment provided to LUMAR in the District 11 lockup.

40) Chicago Fire Department paramedic Tristan Lopez, to be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding medical treatment provided to LUMAR in the District 11 lockup.

41) Chicago Fire Department Lieutenant Marlon Woods, to be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding medical treatment provided to LUMAR in the District 11 lockup.

42) Chicago Fire Department firefighter Wade, to be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding medical treatment provided to LUMAR in the District 11 lockup.

43) Chicago Fire Department firefighter Orroyo, to be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding medical treatment provided to LUMAR in the District 11 lockup.

44) Chicago Fire Department firefighter unknown name, employee number 21216, to be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding medical treatment provided to LUMAR in the District 11 lockup.

45) Casey Tencate, address currently unknown, this individual may have knowledge relating to LUMAR's prior arrest.

46) Lauren Barrett, address currently unknown, this individual may have knowledge relating to LUMAR's prior arrest.

47) Amritpal Jawanda, MD, c/o Madison Family Health Center, 388 W. Madison, Chicago, Illinois. This individual may have knowledge regarding LUMAR's conduct prior to his arrest on August 18, 2016.

48) Sukhveer Wahi, MD, c/o Madison Family Health Center, 388 W. Madison, Chicago, Illinois. This individual may have knowledge regarding LUMAR's conduct prior to his arrest on August 18, 2016.

49) Dexter Reed, security, c/o Madison Family Health Center, 388 W. Madison, Chicago, Illinois. This individual may have knowledge regarding LUMAR's conduct prior to his arrest on August 18, 2016.

50) Katie Simmons, c/o Madison Family Health Center, 388 W. Madison, Chicago, Illinois. This individual may have knowledge regarding LUMAR's conduct prior to his arrest on August 18, 2016.

51) Maria Vega, c/o Madison Family Health Center, 388 W. Madison, Chicago, Illinois. This individual may have knowledge regarding LUMAR's conduct prior to his arrest on August 18, 2016.

52) Monique Zkson, c/o Madison Family Health Center, 388 W. Madison, Chicago, Illinois. This individual may have knowledge regarding LUMAR's conduct prior to his arrest on August 18, 2016.

53) Erica Cook, c/o Madison Family Health Center, 388 W. Madison, Chicago, Illinois. This individual may have knowledge regarding LUMAR's conduct prior to his arrest on August 18, 2016.

54) Erik Spann, last known address 426 North Harding Avenue, Chicago, Illinois. This individual may have knowledge regarding LUMAR's suicide attempt, statements, and actions taken immediately after LUMAR's suicide attempt.

55) Civilian Office of Police Accountability ("COPA") Investigator Bruce Dean, c/o COPA 1615 W. Chicago Ave., 4th Floor, Chicago, IL 60622 (312) 746-3609. During litigation of this matter, this individual would be represented at depositions and/or trial by a City of Chicago Department of Law representative. This individual may have knowledge or information regarding the investigation following LUMAR's suicide attempt, including but not limited to their observations and actions, reported created by IPRA/COPA, reports and documents obtained by IPRA/COPA, witness statements, and any findings, conclusions, observations, and/or evaluations made during the IPRA/COPA investigation.

56) COPA Investigator Chantelle Hill, c/o COPA 1615 W. Chicago Ave., 4th Floor, Chicago, IL 60622 (312) 746-3609. During litigation of this matter, this individual would be represented at depositions and/or trial by a City of Chicago Department of Law representative. This individual

may have knowledge or information regarding the investigation following LUMAR's suicide attempt, including but not limited to their observations and actions, reported created by IPRA/COPA, reports and documents obtained by IPRA/COPA, witness statements, and any findings, conclusions, observations, and/or evaluations made during the IPRA/COPA investigation.

57) COPA Investigator William Abbruzzese, c/o COPA 1615 W. Chicago Ave., 4th Floor, Chicago, IL 60622 (312) 746-3609. During litigation of this matter, this individual would be represented at depositions and/or trial by a City of Chicago Department of Law representative. This individual may have knowledge or information regarding the investigation following LUMAR's suicide attempt, including but not limited to their observations and actions, reported created by IPRA/COPA, reports and documents obtained by IPRA/COPA, witness statements, and any findings, conclusions, observations, and/or evaluations made during the IPRA/COPA investigation.

58) COPA Investigator Joshua Hunt, c/o COPA 1615 W. Chicago Ave., 4th Floor, Chicago, IL 60622 (312) 746-3609. During litigation of this matter, this individual would be represented at depositions and/or trial by a City of Chicago Department of Law representative. This individual may have knowledge or information regarding the investigation following LUMAR's suicide attempt, including but not limited to their observations and actions, reported created by IPRA/COPA, reports and documents obtained by IPRA/COPA, witness statements, and any findings, conclusions, observations, and/or evaluations made during the IPRA/COPA investigation.

59) COPA Investigator Catherina Oliveri, c/o COPA 1615 W. Chicago Ave., 4th Floor, Chicago, IL 60622 (312) 746-3609. During litigation of this matter, this individual would be represented at depositions and/or trial by a City of Chicago Department of Law representative. This individual may have knowledge or information regarding the investigation following LUMAR's suicide attempt, including but not limited to their observations and actions, reported

13

created by IPRA/COPA, reports and documents obtained by IPRA/COPA, witness statements, and any findings, conclusions, observations, and/or evaluations made during the IPRA/COPA investigation.

60) COPA Investigator Kelvin Lett, c/o COPA 1615 W. Chicago Ave., 4th Floor, Chicago, IL 60622 (312) 746-3609. During litigation of this matter, this individual would be represented at depositions and/or trial by a City of Chicago Department of Law representative. This individual may have knowledge or information regarding the investigation following LUMAR's suicide attempt, including but not limited to their observations and actions, reported created by IPRA/COPA, reports and documents obtained by IPRA/COPA, witness statements, and any findings, conclusions, observations, and/or evaluations made during the IPRA/COPA investigation.

61) COPA Investigator Linda Franco, c/o COPA 1615 W. Chicago Ave., 4th Floor, Chicago, IL 60622 (312) 746-3609. During litigation of this matter, this individual would be represented at depositions and/or trial by a City of Chicago Department of Law representative. This individual may have knowledge or information regarding the investigation following LUMAR's suicide attempt, including but not limited to their observations and actions, reported created by IPRA/COPA, reports and documents obtained by IPRA/COPA, witness statements, and any findings, conclusions, observations, and/or evaluations made during the IPRA/COPA investigation.

62) COPA Investigator Adam Pfeifer, c/o COPA 1615 W. Chicago Ave., 4th Floor, Chicago, IL 60622 (312) 746-3609. During litigation of this matter, this individual would be represented at depositions and/or trial by a City of Chicago Department of Law representative. This individual may have knowledge or information regarding the investigation following LUMAR's suicide attempt, including but not limited to their observations and actions, reported created by IPRA/COPA, reports and documents obtained by IPRA/COPA, witness statements, and any findings, conclusions, observations, and/or evaluations made during the IPRA/COPA investigation.

63) COPA Investigator Daniel Kobel, c/o COPA 1615 W. Chicago Ave., 4th Floor, Chicago, IL 60622 (312) 746-3609. During litigation of this matter, this individual would be represented at depositions and/or trial by a City of Chicago Department of Law representative. This individual may have knowledge or information regarding the investigation following LUMAR's suicide attempt, including but not limited to their observations and actions, reported created by IPRA/COPA, reports and documents obtained by IPRA/COPA, witness statements, and any findings, conclusions, observations, and/or evaluations made during the IPRA/COPA investigation.

64) COPA Investigator S. Carter, c/o COPA 1615 W. Chicago Ave., 4th Floor, Chicago, IL 60622 (312) 746-3609. During litigation of this matter, this individual would be represented at depositions and/or trial by a City of Chicago Department of Law representative. This individual may have knowledge or information regarding the investigation following LUMAR's suicide attempt, including but not limited to their observations and actions, reported created by IPRA/COPA, reports and documents obtained by IPRA/COPA, witness statements, and any findings, conclusions, observations, and/or evaluations made during the IPRA/COPA investigation.

65) Chicago Police Chief Wayne M. Gulliford, to be contacted through counsel for Defendant City of Chicago only. This individual may have knowledge regarding the Chicago Police Department policy as to holding arrestees detained on arrest warrants issued outside of Cook County.

66) Amar Singh, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

67) Laila Robateau, RN, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

68) Amir Vafa, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt..

69) Jonathan Hwee, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

70) Alan Matson, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

71) Ivica Vucic, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

72) Amar Shah, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

73) Jeffrey Yu, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

74) Adarsh Shukla, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

75) Christine Eden, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

76) Anthony Castelli, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

77) Laura Kozak, RN, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

78) Sandeep Khosla, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

79) Mir Yadullahi, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

80) Andrew Bokarius, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

81) Mark Chottiner, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

82) Valeria Cooper, PA, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

83) Stavros Maltezos, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

84) Keenan Wanamaker, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

85) Alin Cheran MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

86) Nancy Sibigtroth, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

87) Kukoyi Omobolawa, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

88) William Brigode, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

89) Sarah Bacje Wiig, PA, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

90) Albert Leung, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

91) Taral Doshi, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

92) Gary Merlott, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

93) Michael Rechitsky, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

94) Ryan Sullivan, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

95) Steven Flynn, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

96) Alan Hecht, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

97) David DeBruin, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

98) Richard Kim, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt..

99) Kevin Frame, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

100)    Sarah Rowe, MD, c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment following LUMAR's suicide attempt.

101)    Anthony Thomas, MD, c/o Quest Diagnostics Wood Dale, 1355 Mittel Boulevard, Wooddale, IL. This individual may be contacted through Quest Diagnostics. This individual may have knowledge regarding medical testing performed on LUMAR following LUMAR's suicide attempt.

102)    Erika Ferguson, MD c/o Mt. Sinai Hospital in Chicago, Illinois, California and 15th Street, Chicago, IL 60608, this individual may be contacted through the Mt. Sinai legal department. This individual may have knowledge regarding LUMAR's medical treatment prior to LUMAR's suicide attempt.

21

103) Chief Judge Timothy C. Evans, Circuit Court of Cook County, to be contacted through legal department of the Circuit Court of Cook County. Judge Evans may have knowledge regarding his order stating that all individuals arrested by the Chicago Police Department on an arrest warrant issued by an Illinois state court outside of Cook County shall be required to appear in bond court prior to release.

104) Representative from Circuit Court of Lee County, to be contacted through legal department of Circuit Court of Lee County. This individual may have knowledge regarding the issuance of LUMAR's Lee County arrest warrant and would be expected to testify that on August 18, 2016, LUMAR's Lee County arrest warrant was valid.

105) Representative from the Office of Emergency Management and Communication ("OEMC"), to be contacted through counsel for Defendant City of Chicago only. This individual would have knowledge regarding OEMC documents and recordings and would lay foundation for OEMC documents and/or OEMC recordings.

106) Personnel from the Chicago Police Department, to be contacted through counsel for Defendant City of Chicago only. This individual(s) would be called to lay foundation for and/or to testify all Chicago Police Department records produced in this case, including, but not limited to, police reports, photographs, relevant individuals' criminal backgrounds, rap sheets,.

107) Representative(s) from the City of Chicago Police Department, to be formally designated at a later time and to be contacted through counsel for Defendant City of Chicago only. This individual or individuals would be presented as a corporate designate(s) to testify as to official Chicago Police Department policy on specific subjects, including, but not limited to, General Orders and Special Orders of the Chicago Police Department such as processing arrestees, transportation of arrestees to different facilities, and general lockup procedures.

108)     Representative(s) from the City of Chicago Police Department, to be formally designated at a later time and to be contacted through counsel for Defendant City of Chicago only. This individual or individuals would be presented as a corporate designate(s) to testify as to relevant training provided to City of Chicago employees.

109)     Representative(s) from the City of Chicago Police Department, to be formally designated at a later time and to be contacted through counsel for Defendant City of Chicago only. This individual or individuals would be presented as a corporate designate(s) to testify as to investigations into in-custody deaths of arrestees.

110)     Representative(s) from the City of Chicago, to be formally designated at a later time and to be contacted through counsel for Defendant City of Chicago only. This individual or individuals would be presented as a corporate designate(s) to testify as to investigations into allegations involving misconduct on the part of City of Chicago Police Department employees.

Investigation continues and this response is not intended to be a final list of possible witnesses in this matter. Defendants reserve the right to supplement this response as the investigation continues and pursuant to the Northern District Court of Illinois' Standing Order Regarding Mandatory Initial Discovery Pilot Project. Defendants also reserve the right to call any witnesses disclosed by Plaintiff at trial in this matter.

2.     State the names and, if known, the addresses and telephone numbers of all persons who you believe have given written or recorded statements relevant to any party's claims or defenses. Unless you assert a privilege or work product protection against disclosure under applicable law, attach a copy of each such statement if it is in your possession, custody, or control. If not in your possession, custody, or control, state the name and, if known, the address and telephone number of each person who you believe has custody of a copy.

RESPONSE:

At this time, numerous witnesses have given statements relevant to any party's claims or defenses. Copies of the statements are being provided to Plaintiff and are contained within the documents produced as bates FCRL 1-21, 31-428, 432-437, 559-570, 571-575, 1271.

Investigation continues and this response is not intended to be a final list of people who have given written or recorded statements relevant to any party's claims or defenses. Defendants reserve the right to supplement this response as the investigation continues and pursuant to the Northern District Court of Illinois' Standing Order Regarding Mandatory Initial Discovery Pilot Project. Defendants also reserve the right to call any witnesses disclosed by Plaintiff at trial in this matter.

3.     List the documents, electronically stored information ("ESI"), tangible things, land, or other property known by you to exist, whether or not in your possession, custody or control, that you believe may be relevant to any party's claims or defenses. To the extent the volume of any such materials makes listing them individually impracticable, you may group similar documents or ESI into categories and describe the specific categories with particularity. Include in your response the names and, if known, the addresses and telephone numbers of the custodians of the documents, ESI, or tangible things, land, or other property that are not in your possession, custody, or control. For documents and tangible things in your possession, custody, or control, you may produce them with your response, or make them available for inspection on the date of the response, instead of listing them. Production of ESI will occur in accordance with paragraph C.2 below.

RESPONSE:

Defendants refer to the following documents, which are being produced on November 17, 2017:

| File Name | Production Begin | Production End |
|-----------|-----------------|----------------|
| 00.pdf | FCRL 000001 | FCRL 000004 |
| 1.pdf | FCRL 000005 | FCRL 000006 |
| 10.pdf | FCRL 000007 | FCRL 000008 |
| 11.pdf | FCRL 000009 | FCRL 000018 |

| | | |
|---|---|---|
| 12.pdf | FCRL 000019 | FCRL 000020 |
| 13.mp3 | FCRL 000021 | FCRL 000021 |
| 13750299 ChainOC.pdf | FCRL 000022 | FCRL 000022 |
| 14.mp3 | FCRL 000023 | FCRL 000023 |
| 15 min Inspection log (2016, 09-07) Preservation _ Lumar.pdf | FCRL 000024 | FCRL 000030 |
| 15.mp3 | FCRL 000031 | FCRL 000031 |
| 16.mp3 | FCRL 000032 | FCRL 000032 |
| 17.pdf | FCRL 000033 | FCRL 000033 |
| 18.pdf | FCRL 000034 | FCRL 000034 |
| 19.pdf | FCRL 000035 | FCRL 000035 |
| 2.pdf | FCRL 000036 | FCRL 000036 |
| 20.pdf | FCRL 000037 | FCRL 000038 |
| 21.pdf | FCRL 000039 | FCRL 000044 |
| 22.pdf | FCRL 000045 | FCRL 000045 |
| 23.pdf | FCRL 000046 | FCRL 000048 |
| 24.pdf | FCRL 000049 | FCRL 000066 |
| 25.pdf | FCRL 000067 | FCRL 000067 |
| 26.pdf | FCRL 000068 | FCRL 000071 |
| 27.pdf | FCRL 000072 | FCRL 000072 |
| 28.pdf | FCRL 000073 | FCRL 000076 |
| 29.pdf | FCRL 000077 | FCRL 000079 |
| 3.pdf | FCRL 000080 | FCRL 000080 |
| 30.pdf | FCRL 000081 | FCRL 000082 |
| 31.pdf | FCRL 000083 | FCRL 000405 |
| 32.pdf | FCRL 000406 | FCRL 000409 |
| 33.pdf | FCRL 000410 | FCRL 000410 |
| 34.pdf | FCRL 000411 | FCRL 000411 |
| 35.wav | FCRL 000412 | FCRL 000412 |
| 36.pdf | FCRL 000413 | FCRL 000413 |
| 37.pdf | FCRL 000414 | FCRL 000415 |
| 38.pdf | FCRL 000416 | FCRL 000416 |
| 39.pdf | FCRL 000417 | FCRL 000417 |
| 4.pdf | FCRL 000418 | FCRL 000422 |
| 40.pdf | FCRL 000423 | FCRL 000423 |
| 5.pdf | FCRL 000424 | FCRL 000426 |
| 6.pdf | FCRL 000427 | FCRL 000428 |
| 602 Reports (2016, 09-07) Fire _ Preservation _ Lumar.pdf | FCRL 000429 | FCRL 000431 |
| 7.pdf | FCRL 000432 | FCRL 000433 |
| 8.pdf | FCRL 000434 | FCRL 000434 |

| 9.pdf | FCRL 000435 | FCRL 000437 |
|---|---|---|
| 90930001.jpg | FCRL 000438 | FCRL 000438 |
| 90930002.jpg | FCRL 000439 | FCRL 000439 |
| 90930003.jpg | FCRL 000440 | FCRL 000440 |
| 90930004.jpg | FCRL 000441 | FCRL 000441 |
| 90930005.jpg | FCRL 000442 | FCRL 000442 |
| 90930006.jpg | FCRL 000443 | FCRL 000443 |
| 90930007.jpg | FCRL 000444 | FCRL 000444 |
| 90930008.jpg | FCRL 000445 | FCRL 000445 |
| 90930009.jpg | FCRL 000446 | FCRL 000446 |
| 90930010.jpg | FCRL 000447 | FCRL 000447 |
| 90930011.jpg | FCRL 000448 | FCRL 000448 |
| 90930012.jpg | FCRL 000449 | FCRL 000449 |
| 90930013.jpg | FCRL 000450 | FCRL 000450 |
| 90930014.jpg | FCRL 000451 | FCRL 000451 |
| 90930015.jpg | FCRL 000452 | FCRL 000452 |
| 90930016.jpg | FCRL 000453 | FCRL 000453 |
| 90930017.jpg | FCRL 000454 | FCRL 000454 |
| 90930018.jpg | FCRL 000455 | FCRL 000455 |
| 90930019.jpg | FCRL 000456 | FCRL 000456 |
| 90930020.jpg | FCRL 000457 | FCRL 000457 |
| 90930021.jpg | FCRL 000458 | FCRL 000458 |
| 90930022.jpg | FCRL 000459 | FCRL 000459 |
| 90930023.jpg | FCRL 000460 | FCRL 000460 |
| 90930024.jpg | FCRL 000461 | FCRL 000461 |
| 90930025.jpg | FCRL 000462 | FCRL 000462 |
| 90930026.jpg | FCRL 000463 | FCRL 000463 |
| 90930027.jpg | FCRL 000464 | FCRL 000464 |
| 90930028.jpg | FCRL 000465 | FCRL 000465 |
| 90930029.jpg | FCRL 000466 | FCRL 000466 |
| 90930030.jpg | FCRL 000467 | FCRL 000467 |
| 90930031.jpg | FCRL 000468 | FCRL 000468 |
| 90930032.jpg | FCRL 000469 | FCRL 000469 |
| 90930033.jpg | FCRL 000470 | FCRL 000470 |
| 90930034.jpg | FCRL 000471 | FCRL 000471 |
| 90930035.jpg | FCRL 000472 | FCRL 000472 |
| 90930036.jpg | FCRL 000473 | FCRL 000473 |
| 90930037.jpg | FCRL 000474 | FCRL 000474 |
| 90930038.jpg | FCRL 000475 | FCRL 000475 |
| 90930039.jpg | FCRL 000476 | FCRL 000476 |

| | | |
|---|---|---|
| 90930040.jpg | FCRL 000477 | FCRL 000477 |
| 90930041.jpg | FCRL 000478 | FCRL 000478 |
| 90930042.jpg | FCRL 000479 | FCRL 000479 |
| 90930043.jpg | FCRL 000480 | FCRL 000480 |
| 90930044.jpg | FCRL 000481 | FCRL 000481 |
| 90930045.jpg | FCRL 000482 | FCRL 000482 |
| 90930046.jpg | FCRL 000483 | FCRL 000483 |
| 90930047.jpg | FCRL 000484 | FCRL 000484 |
| 90930048.jpg | FCRL 000485 | FCRL 000485 |
| 90930049.jpg | FCRL 000486 | FCRL 000486 |
| 90930050.jpg | FCRL 000487 | FCRL 000487 |
| 90930051.jpg | FCRL 000488 | FCRL 000488 |
| 90930052.jpg | FCRL 000489 | FCRL 000489 |
| A&A sheet identifing P.O. from Arrestee Transport Manifest.pdf | FCRL 000490 | FCRL 000490 |
| A&A Sheets (2016, 09-14) 2016, 08-18_Preservation_Lumar.pdf | FCRL 000491 | FCRL 000521 |
| A&A Sheets (2016, 09-14) 2016, 08-19_Preservation_Lumar.pdf | FCRL 000522 | FCRL 000552 |
| Ambulance Report - LUMAR TYLER (2016, 08-29).pdf | FCRL 000553 | FCRL 000558 |
| Area File (2016 10-25) RD# HZ398499.pdf | FCRL 000559 | FCRL 000570 |
| Arrest Report (2016, 08-22) Preservation_2016, 08-19.pdf | FCRL 000571 | FCRL 000575 |
| Arrest Report (2016, 10-25) Spann Alcorn.pdf | FCRL 000576 | FCRL 000580 |
| arrest report previous-08302016.pdf | FCRL 000581 | FCRL 000585 |
| arrest report searchpreservation-08302016.pdf | FCRL 000586 | FCRL 000589 |
| Arrestee Property Log (2016, 10-28) Alcorn.pdf | FCRL 000590 | FCRL 000590 |
| Audio Research log (2016, 09-07) Fire _Preservation Lumar.pdf | FCRL 000591 | FCRL 000591 |
| Audio Research Log ADDITIONAL.pdf | FCRL 000592 | FCRL 000592 |
| Audio Research Log ADDITIONAL.pdf | FCRL 000593 | FCRL 000593 |
| Audio Research Log.pdf | FCRL 000594 | FCRL 000594 |
| Audio Research Log.pdf | FCRL 000595 | FCRL 000595 |
| Audio Research Logs (2016, 12-13) 2016, 08-18_Alcorn.pdf | FCRL 000596 | FCRL 000597 |
| Audio Research Logs (2016, 12-13) 2016, 08-19_Alcorn.pdf | FCRL 000598 | FCRL 000599 |
| BEAT 1113A.pdf | FCRL 000600 | FCRL 000604 |
| BEAT-1101.pdf | FCRL 000605 | FCRL 000609 |

| | | |
|---|---|---|
| BEAT-1112A.pdf | FCRL 000610 | FCRL 000613 |
| BEAT-1123.pdf | FCRL 000614 | FCRL 000631 |
| BEAT-1124.pdf | FCRL 000632 | FCRL 000643 |
| BEAT-1130.pdf | FCRL 000644 | FCRL 000647 |
| BEAT-1134.pdf | FCRL 000648 | FCRL 000668 |
| BEAT-5832.pdf | FCRL 000669 | FCRL 000673 |
| Booking photo (2016, 08-29).pdf | FCRL 000674 | FCRL 000675 |
| Booking Photos (2016, 08-29) Previous Arrest.pdf | FCRL 000676 | FCRL 000677 |
| Case Report (2016, 10-19) RD H2 398804_Alcorn.pdf | FCRL 000678 | FCRL 000679 |
| Chain of Custody Report (2016-09-26).pdf | FCRL 000680 | FCRL 000690 |
| Criminal History (2016, 08-22) Preservation_2016, 08-19.pdf | FCRL 000691 | FCRL 000695 |
| Criminal History (2016, 10-25) Span_Alcorn.pdf | FCRL 000696 | FCRL 000698 |
| cw1 radio 1508 hrs.mp3 | FCRL 000699 | FCRL 000699 |
| cw1 radio 1508 hrs.txt | FCRL 000700 | FCRL 000700 |
| cw2 phone position pdt103 1300 to 1736 hrs.mp3 | FCRL 000701 | FCRL 000701 |
| cw2 phone position pdt103 1300 to 1736 hrs.txt | FCRL 000702 | FCRL 000703 |
| cw2 radio 1300 to 1356 hrs.mp3 | FCRL 000704 | FCRL 000704 |
| cw2 radio 1300 to 1356 hrs.txt | FCRL 000705 | FCRL 000744 |
| cw2 radio 1356 to 1500 hrs.txt | FCRL 000745 | FCRL 000764 |
| cw2 radio 1356 to 1500hrs.mp3 | FCRL 000765 | FCRL 000765 |
| cw2 radio 1459 to 1553 hrs.mp3 | FCRL 000766 | FCRL 000766 |
| cw2 radio 1459 to 1553 hrs.txt | FCRL 000767 | FCRL 000787 |
| cw2 radio 1508 hrs.txt | FCRL 000788 | FCRL 000788 |
| cw2 radio 1553 to 1736 hrs.mp3 | FCRL 000789 | FCRL 000789 |
| cw2 radio 1553 to 1736 hrs.txt | FCRL 000790 | FCRL 000841 |
| cw4 radio 1508 hrs.txt | FCRL 000842 | FCRL 000842 |
| EMS North Radio 1110hrs to 1259hrs.mp3 | FCRL 000843 | FCRL 000843 |
| EMS North Radio 1110hrs to 1259hrs.txt | FCRL 000844 | FCRL 000882 |
| ev 05380-111658 to 121701hrs.txt | FCRL 000883 | FCRL 001008 |
| ev 05380-121656 to 131532hrs.mp3 | FCRL 001009 | FCRL 001009 |
| ev 05380-121656 to 131532hrs.txt | FCRL 001010 | FCRL 001113 |
| ev 05380-131530 to 151659hrs.mp3 | FCRL 001114 | FCRL 001114 |
| ev 09530.txt | FCRL 001115 | FCRL 001115 |
| ev 09534.txt | FCRL 001116 | FCRL 001116 |

| | | |
|---|---|---|
| Event Queries (2016, 12-13) 2016, 08-18_Alcorn.pdf | FCRL 001117 | FCRL 001119 |
| Event Queries (2016, 12-13) 2016, 08-19_Alcorn.pdf | FCRL 001120 | FCRL 001126 |
| Event Query (2016, 09-07) Fire _ Preservation _ Lumar.pdf | FCRL 001127 | FCRL 001129 |
| EventQuery -1623205380.pdf | FCRL 001130 | FCRL 001134 |
| EventQuery-1623206198.pdf | FCRL 001135 | FCRL 001136 |
| EventQuery-1623207170.pdf | FCRL 001137 | FCRL 001139 |
| Fingerprints (2016, 09-29).pdf | FCRL 001140 | FCRL 001143 |
| FIRE North Radio 1110hrs to 1204hrs.mp3 | FCRL 001144 | FCRL 001144 |
| FIRE North Radio 1110hrs to 1204hrs.txt | FCRL 001145 | FCRL 001172 |
| Forensics (2016, 10-03).pdf | FCRL 001173 | FCRL 001176 |
| GPS-BEAT 1123-3151 W. HARRISON.xls | FCRL 001177 | FCRL 001186 |
| GPS-BEAT 1124-3151 W. HARRISON.xls | FCRL 001187 | FCRL 001192 |
| GPS-BEAT 1124-3959 W. MADISON.xls | FCRL 001193 | FCRL 001196 |
| GPS-BEAT 1130-3151 W. HARRISON.xls | FCRL 001197 | FCRL 001202 |
| GPS-BEAT 1134-3151 W. HARRISON.xls | FCRL 001203 | FCRL 001214 |
| GPS-BEAT 5832-3151 W. HARRISON.xls | FCRL 001215 | FCRL 001218 |
| In car video (2016, 09-06)preservation.pdf | FCRL 001219 | FCRL 001220 |
| Inventory 13750250 (2016, 10-31) Alcorn.pdf | FCRL 001221 | FCRL 001222 |
| Inventory Search (2016, 08-30) RD HZ397430 Preservation.pdf | FCRL 001223 | FCRL 001223 |
| LUMAR Arrestee Property Transport Manifest (2016, 10-27).pdf | FCRL 001224 | FCRL 001225 |
| Male Lockup.pdf | FCRL 001226 | FCRL 001227 |
| MAP-BEAT 1123 - 3151 W. HARRISON.pdf | FCRL 001228 | FCRL 001230 |
| MAP-BEAT 1124 - 3151 W. HARRISON.pdf | FCRL 001231 | FCRL 001232 |
| MAP-BEAT 1124-3959 W. MADISON.pdf | FCRL 001233 | FCRL 001235 |
| MAP-BEAT 1130 - 3151 W. HARRISON.pdf | FCRL 001236 | FCRL 001238 |
| MAP-BEAT 1134 - 3151 W. HARRISON.pdf | FCRL 001239 | FCRL 001241 |

| | | |
|---|---|---|
| MAP-BEAT 5832 - 3151 W. HARRISON.pdf | FCRL 001242 | FCRL 001243 |
| mdt_messages_LH16721_A33-1357.pdf | FCRL 001244 | FCRL 001244 |
| mdt_messages_LH16721_E107-1298.pdf | FCRL 001245 | FCRL 001246 |
| Memo regarding Arrest Warrants.pdf | FCRL 001247 | FCRL 001247 |
| Motion for Preservation-Emergency (2016-08-26).pdf | FCRL 001248 | FCRL 001251 |
| notifications 1215 to 1300 hrs.mp3 | FCRL 001252 | FCRL 001252 |
| notifications 1215 to 1300 hrs.txt | FCRL 001253 | FCRL 001254 |
| OCIR2-REDACTED.pdf | FCRL 001255 | FCRL 001256 |
| OCIR3-REDACTED.pdf | FCRL 001257 | FCRL 001258 |
| OCIR-REDACTED.pdf | FCRL 001259 | FCRL 001261 |
| OEMC CD's (2016, 12-13) Alcorn.pdf | FCRL 001262 | FCRL 001265 |
| PC Search Report (2016, 10-24).pdf | FCRL 001266 | FCRL 001270 |
| PC0AZ95@20160818150632.mpg | FCRL 001271 | FCRL 001271 |
| PDT & MDT (2016, 09-13).doc | FCRL 001272 | FCRL 001272 |
| PDT_Beat_ID_LH16721.PDF | FCRL 001273 | FCRL 001273 |
| PDT_Messages_LH16721_1123.PDF | FCRL 001274 | FCRL 001275 |
| pdt_messages_LH16721_1124-2726.pdf | FCRL 001276 | FCRL 001285 |
| pdt_messages_LH16721_1130-2754.pdf | FCRL 001286 | FCRL 001287 |
| pdt_messages_LH16721_1134-2775.pdf | FCRL 001288 | FCRL 001300 |
| Preservation Letter (2016, 09-07) EO_Tyler Lumar.pdf | FCRL 001301 | FCRL 001303 |
| Prisoner transportation Transmittal (2016, 10-20) Alcorn.pdf | FCRL 001304 | FCRL 001304 |
| Property Transmittal Report (2016, 10-28) Alcorn.pdf | FCRL 001305 | FCRL 001314 |
| Ref. CFD16-0481 Audio Log.pdf | FCRL 001315 | FCRL 001315 |
| Special Order (2017, 11-01) S06-01-02.pdf | FCRL 001316 | FCRL 001321 |
| Station Video (2017, 09-01) Dist 011.pdf | FCRL 001322 | FCRL 001322 |
| Supervisor Management Log (2017, 09-01).pdf | FCRL 001323 | FCRL 001346 |
| tempD.xml | FCRL 001347 | FCRL 001348 |
| tempV.xml | FCRL 001349 | FCRL 001355 |
| Unit Queries (2016, 12-13) 2016, 08-18_Alcorn.pdf | FCRL 001356 | FCRL 001366 |
| Watch Incident Log (2017, 09-01).pdf | FCRL 001367 | FCRL 001372 |

| | | |
|---|---|---|
| z10 phone position pd119 1016 to 2155 hrs.mp3 | FCRL 001373 | FCRL 001373 |
| z10 phone position pd119 1016 to 2155 hrs.txt | FCRL 001374 | FCRL 001381 |
| z10 phone position pd119 1405 to 2007 hrs.mp3 | FCRL 001382 | FCRL 001382 |
| z10 phone position pd119 1405 to 2007 hrs.txt | FCRL 001383 | FCRL 001383 |
| z10 phone position pd120 1016 to 2155 hrs.mp3 | FCRL 001384 | FCRL 001384 |
| z10 phone position pd120 1016 to 2155 hrs.txt | FCRL 001385 | FCRL 001386 |
| z10 phone position pd120 1405 to 2007 hrs.mp3 | FCRL 001387 | FCRL 001387 |
| z10 phone position pd120 1405 to 2007 hrs.txt | FCRL 001388 | FCRL 001390 |
| z10 radio 1016 to 1117 hrs.mp3 | FCRL 001391 | FCRL 001391 |
| z10 radio 1016 to 1117 hrs.txt | FCRL 001392 | FCRL 001479 |
| z10 radio 1405 to 1508 hrs.mp3 | FCRL 001480 | FCRL 001480 |
| z10 radio 1405 to 1508 hrs.txt | FCRL 001481 | FCRL 001541 |
| z10 radio 1516 to 1616 hrs.mp3 | FCRL 001542 | FCRL 001542 |
| z10 radio 1516 to 1616 hrs.txt | FCRL 001543 | FCRL 001631 |
| z10 radio 1607 to 1705 hrs.mp3 | FCRL 001632 | FCRL 001632 |
| z10 radio 1607 to 1705 hrs.txt | FCRL 001633 | FCRL 001712 |
| z10 radio 1616 to 1717 hrs.mp3 | FCRL 001713 | FCRL 001713 |
| z10 radio 1616 to 1717 hrs.txt | FCRL 001714 | FCRL 001819 |
| z10 radio 1705 to 1807 hrs.mp3 | FCRL 001820 | FCRL 001820 |
| z10 radio 1705 to 1807 hrs.txt | FCRL 001821 | FCRL 001901 |
| z10 radio 1716 to 1816 hrs.mp3 | FCRL 001902 | FCRL 001902 |
| z10 radio 1716 to 1816 hrs.txt | FCRL 001903 | FCRL 001999 |
| z10 radio 1806 to 1907 hrs.mp3 | FCRL 002000 | FCRL 002000 |
| z10 radio 1806 to 1907 hrs.txt | FCRL 002001 | FCRL 002072 |
| z10 radio 1816 to 1916 hrs.mp3 | FCRL 002073 | FCRL 002073 |
| z10 radio 1816 to 1916 hrs.txt | FCRL 002074 | FCRL 002158 |
| z10 radio 1906 to 2007 hrs.mp3 | FCRL 002159 | FCRL 002159 |
| z10 radio 1906 to 2007 hrs.txt | FCRL 002160 | FCRL 002264 |
| z10 radio 1916 to 2055 hrs.mp3 | FCRL 002265 | FCRL 002265 |
| z10 radio 1916 to 2055 hrs.txt | FCRL 002266 | FCRL 002456 |
| z10 radio 2054 to 2154 hrs.mp3 | FCRL 002457 | FCRL 002457 |
| z10 radio 2054 to 2154 hrs.txt | FCRL 002458 | FCRL 002577 |
| zone 10-150822 to 160757hrs.txt | FCRL 002578 | FCRL 002664 |

This disclosure is not intended to be a final list of possible documents to be used in this matter. Defendant reserves the right to supplement this disclosure as the investigation continues and pursuant to the Northern District Court of Illinois' Standing Order Regarding Mandatory Initial Discovery Pilot Project.

4.      For each of your claims or defenses, state the facts relevant to it and the legal theories upon which it is based.

RESPONSE:

I.   Plaintiff has failed to state a claim upon which relief may be granted against Defendant City under Federal Rule of Civil Procedure 12(b)(6). The factual basis and legal theory are included within the City's pending motion to dismiss, *docket no. 41*, and are incorporated herein.

II.  The Chicago Police Department is a non-suable entity. The factual basis and legal theory are included within the City's pending motion to dismiss, *docket no. 41*, and are incorporated herein.

III. The City of Chicago is immune from the imposition of punitive damages under both state and federal law. Moreover, under Illinois law, the City cannot be required to indemnify an employee for punitive damages, nor may it pay a judgment for punitive damages. 745 ILCS 10/2-102 (2014); *City of Newport v. Facts Concerts*, 453 U.S. 247, 271 (1981).

IV.  The City of Chicago cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. The factual basis and legal theory are included within the City's pending motion to dismiss, *docket no. 41*, and are incorporated herein.

V.   The City of Chicago is immune from liability for alleged constitutional deprivations caused unless Plaintiff can show that an individual defendant employed by the City of Chicago caused Plaintiff to suffer a constitutional injury. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding no *Monell* liability where no individual defendant is liable for underlying substantive claim); *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) (same). The factual basis for this defense is that Tyler Lumar attempted to commit suicide without any City of Chicago employee being put on actual notice that

32

Tyler Lumar was at risk of suicide or self-harm. Absent this notice, no City of Chicago employee can be liable under 42 U.S.C. § 1983. *See, e.g. Saucedo v. City of Chicago*, No. 11 C 5868, 2015 WL 3643417 (N.D.Ill. June 11, 2015) (Zagel, J.). The factual basis and legal theory are also included within the City's pending motion to dismiss, *docket no. 41*, and are incorporated herein.

VI.     To the extent that Tyler Lumar failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Tyler Lumar had a duty to mitigate, commensurate with the degree of failure to mitigate attributed to Tyler Lumar by the jury in this case. The factual basis for this defense is that Tyler Lumar failed to mitigate his potential damages relating to the arrest on an outstanding warrant by, according to the Cook County Sheriff's Department, being in possession of illegal narcotics, which thereby extended the time he was in custody.

VII.    To the extent any injuries or damages claimed by Plaintiff as proximately caused, in whole or in part, by the negligent, willful and wanton and/or other wrongful conduct on the part of the Tyler Lumar, any verdict or judgment obtained by Plaintiff must be reduced by application of the principles of comparative fault, by an amount commensurate with the degree of fault attributed to Tyler Lumar by the jury in this cause. The factual basis for this defense is that Tyler Lumar voluntarily attempted to commit suicide, an act which directly and entirely caused his physical damages.

5.      Provide a computation of each category of damages claimed by you, and a description of the documents or other evidentiary material on which it is based, including materials bearing on the nature and extent of the injuries suffered. You may produce the documents or other evidentiary materials with your response instead of describing them.

RESPONSE:

Not applicable to Defendant City of Chicago.

6.      Specifically identify and describe any insurance or other agreement under which an insurance business or other person or entity may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse a party for payments made by the party to satisfy the judgment. You may produce a copy of the agreement with your response instead of describing it.

RESPONSE:


On August 19, 2016, the City of Chicago was self-insured for settlements and judgments up to and including $20 million per occurrence. For settlements or judgments covered by the City's excess liability policy in excess of $20 million, the City has the following coverage up to $55 million:

Argo Re Limited
$5,000,000 per occurrence/aggregate, where applicable

Allied World Assurance Company, Ltd.
$5,000,000 per occurrence/$10,000,000 aggregate

Argo Re Limited
$10,000,000 per occurrence/aggregate

Westchester Surplus Lines Insurance Company
$15,000,000 per occurrence/aggregate, where applicable

Argo Re Limited and Allied World Assurance Company, Ltd (quote share)
$15,000,000 per occurrence/$15,000,000 aggregate

First Specialty Insurance Corporation
$5,000,000 per occurrence/aggregate, where applicable



November 17, 2017                                   Respectfully submitted,

                                                    */s/ Shawn W. Barnett*
                                                    Shawn W. Barnett
                                                    Attorney No. 6312312


34

Devlin Schoop, Senior Counsel
Shawn Barnett, Assistant Corporation Counsel
Allison Romelfanger, Assistant Corporation Counsel
Assistant Corporation Counsel
City of Chicago, Department of Law
30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602
(312) 744-0742
Counsel for Defendant City of Chicago

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Lisa Alcorn, as Plenary Guardian of the Estate of Tyler Lumar | ) ) ) | |
| Plaintiff | ) ) | Case No. 17 C 5859 |
| v. | ) ) | Judge Kendall |
| The City of Chicago, et al, | ) ) | Magistrate Judge Finnegan |
| Defendants. | ) ) | |

CERTIFICATION OF DEFENDANT CITY OF CHICAGO's
RESPONSES TO MANDATORY INITIAL DISCOVERY

Under penalties as provided by law pursuant to 28 U.S.C. §1746, I Sergeant Robert
Flores, assigned to the Office of Legal Affairs, Chicago Police Department, certify that the
foregoing Defendant City Of Chicago's Responses To Mandatory Initial Discovery are based on
knowledge, information, and belief formed after reasonable inquiry into documents and
information which have been assembled by authorized employees and counsel of the City of
Chicago; and that I am informed and believe that the statements set forth in the foregoing are
complete and correct as of November 17, 2017.

Signature: _Asl Rust Th_

Sergeant Robert Flores
Office of Legal Affairs
Chicago Police Department

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Lisa Alcorn, as Plenary Guardian of the Estate of Tyler Lumar | ) ) ) | |
| Plaintiff | ) ) | Case No. 17 C 5859 |
| v. | ) ) | Judge Kendall |
| The City of Chicago, et al. | ) ) | Magistrate Judge Finnegan |
| Defendants. | ) ) | |

CERTIFICATE OF SERVICE

I hereby certify that I have caused a true and correct copy of Defendant City Of Chicago's Responses To Mandatory Initial Discovery, to be delivered by email and U.S. Mail, postage prepaid, to the individuals named below at the address on November 17, 2017.

Eileen M. O'Connor
O'Connor Law Group LLC
140 S. Dearborn, Suite 320
Chicago, IL 60603
Counsel for Plaintiff

Kevin Kocim
Anthony Zecchin
Cook County State's Attorney's Office
500 Daley Center
50 West Washington
Chicago, IL 60602
Counsel for Defendants Dart and Wlodarski

Caroline Fronczak
Jason Marx
Jessica Gomez-Feie
City of Chicago Department of Law
30 N. LaSalle, Suite 900
Chicago, IL 60602
Counsel for Defendants Warren, Vega, Esteba, Conner, Peals, Helwink-Masters, Jones, Alexander, Vinson, Lasch, Geyer, O'Donnell, Gartner, Barry

*/s/ Shawn W. Barnett*
Shawn W. Barnett
Attorney No. 6312312

Devlin Schoop, Senior Counsel
Shawn Barnett, Assistant Corporation Counsel
Allison Romelfanger, Assistant Corporation Counsel
City of Chicago, Department of Law
30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602
(312) 744-0742
Counsel for Defendant City of Chicago

# EXHIBIT G

14

1 agency.
2     Q.    Outside agency is what type of
3 training?
4     A.    **Firearms.**
5     Q.    Have you ever been trained -- received
6 any training in suicide prevention?
7     A.    **Yes.**
8     Q.    And when?
9     A.    **The last week of my sergeant's**
10 **training.**
11     Q.    Where was that training held?
12     A.    **The academy.**
13     Q.    Was that, like, in some sort of office
14 space? Like, was it an office training?
15     A.    **In the academy.**
16     Q.    Okay. Was there any -- I guess what
17 I'm asking was there any sort of simulations or is
18 this all just sort of book training and lecture
19 training?
20     A.    **Well, it's crisis intervention**
21 **training. They do have some scenarios, if that is**
22 **what you're asking.**
23     Q.    And have you ever been involved or has
24 any arrestee or inmate attempted to commit suicide

15

1 on your watch?
2     MS. DAVENPORT: Object to the form of
3     the question, scope. You can answer.
4 BY THE WITNESS:
5     A.    **Attempted, no. Make statements to say**
6 **that they were, yes.**
7 BY MS. O'CONNOR:
8     Q.    Okay. Have there ever been any
9 completed suicides on your watch?
10     A.    **Negative. Well, on my watch or while**
11 **I'm working?**
12     Q.    Well, maybe you can clarify. On your
13 watch would be when you are working, or no?
14     A.    **No. When I refer to working is when**
15 **I'm actually inside or out on the street doing my**
16 **other -- my duties out on the street. You've got to**
17 **be a little more specific but that because I'm not**
18 **sure. Because on third watch I'm sure there's been**
19 **suicides, but not necessarily while I'm working.**
20     Q.    Okay. So when I said on your watch, I
21 meant on your watch while you are working that
22 watch. So that to be true, have there ever been any
23 successful completed suicides?
24     A.    **Not on my watch, no.**

16

1     Q.    In the occasions in which you have
2 been involved or had an experience where an arrestee
3 or an inmate had made some sort of statement that
4 they were suicidal, what is the Chicago Police
5 policy in terms of what you are required to do?
6     MS. DAVENPORT: I'm just going to
7     object inasmuch as you are asking him what
8     the City of Chicago's policy is. He is not a
9     30(b)(6). You can ask him what he did when
10     he received those complaints.
11     MR. POWER: Join.
12     MS. HARRIS: Join.
13 BY MS. O'CONNOR:
14     Q.    Let me back up and lay some
15 foundation. When you were initially sworn in as a
16 Chicago Police officer or sergeant, were you
17 provided with the Chicago Police Department's
18 general orders?
19     A.    **When I made sergeant, no.**
20     Q.    At any time in your career.
21     A.    **When I was first in patrol, when I**
22 **first got into the academy, when I first was hired,**
23 **they gave us general orders, yes.**
24     Q.    Okay. And as a Chicago Police officer

17

1 and then sergeant, were you required and are you
2 required to follow the Chicago Police Department's
3 general orders?
4     A.    **Yes.**
5     Q.    Okay. And because you're required to
6 follow them, you have some knowledge of what those
7 general orders are, true?
8     A.    **Yes.**
9     Q.    And you have an understanding of what
10 those general orders require you to do for a litany
11 of different scenarios, correct?
12     MS. DAVENPORT: Objection to the form
13     of that question, it's an incomplete
14     hypothetical and it's vague.
15 BY THE WITNESS:
16     A.    **I mean, there are -- I mean, it's what**
17 **the policy is for certain things. Not everything is**
18 **cut and dry but, yes, they're provided guidelines,**
19 **yes.**
20 BY MS. O'CONNOR:
21     Q.    Okay. And you just told me a moment
22 ago that you're required to follow them. So when
23 I'm asking you questions about under certain
24 scenarios what does the Chicago Police Department

PLAINTIFF'S EXHIBIT
G

(312) 670-0900

# EXHIBIT H

Page 17

1  BY THE WITNESS:
2      A.  I don't recall if I looked at any
3  documents or not.
4  BY MS. O'CONNOR:
5      Q.  How about in preparation for your
6  deposition?
7      A.  I think I looked at a couple of
8  documents.
9      Q.  Do you recall what those documents
10 were?
11     A.  One regarding an order from
12 Chief Gulliford who was the chief of police --
13     Q.  Okay.
14     A.  -- in the patrol division.
15     Q.  Anything else that you recall
16 reviewing for a deposition?
17     A.  Not offhand.
18     Q.  Okay.  You told me that you had been
19 transferred to headquarters days before this
20 incident had occurred.  Do you recall what you would
21 have been doing at headquarters specifically on
22 August 18th of 2016?
23     A.  I believe if you had a calendar I can
24 narrow it down a little bit, but the -- what day of

Page 18

1  the week did this happen?
2      Q.  I can tell you in a minute.  Let's
3  see, what day was it?  August 18th, Thursday.  So
4  August 18th was a Thursday.
5      A.  I would have still been in the 11th
6  District.
7      Q.  Okay.  All right.  Now, generally
8  speaking, as the commanding officer of the 11th
9  District did your job duty require you to stay at
10 the district or did you go to various other areas of
11 the city, other districts?  I'm just trying to get
12 an idea of what your job looked like.
13         MS. DAVENPORT:  Object to the form of
14     that question.
15 BY THE WITNESS:
16     A.  My focus would have been the 11th
17 District.
18 BY MS. O'CONNOR:
19     Q.  Okay.  And when you say the "focus
20 would have been the 11th District," what does that
21 mean?
22     A.  Based off your question, it's
23 foreseeable for me to go to the 10th District or
24 bordering districts to talk to the district

Page 19

1  commanders, tac lieutenants, so on and so forth.
2      Q.  Who at the 11th District in terms of
3  rank or position would you be the supervisor to?
4      A.  Everyone that's assigned to the 11th
5  District.
6      Q.  Okay.  So that would include the desk
7  sergeants?
8      A.  Correct.
9      Q.  Would that include the lockup
10 personnel?
11     A.  Correct.
12     Q.  Would that include the civilian
13 employees that work at the 11th District?
14     A.  Correct.
15     Q.  Would that include arresting officers
16 that brought arrestees to the 11th District?
17         MS. DAVENPORT:  Object to the form of
18     that question, incomplete hypothetical.
19 BY MS. O'CONNOR:
20     Q.  You can answer if you understood.
21     A.  No.
22     Q.  Who, if you know, would have been
23 Carlos Vega's direct supervisor on August 18th of
24 2016?

Page 20

1          MS. DAVENPORT:  Just object to the
2      form of the question.  If you know.
3  BY THE WITNESS:
4      A.  Was he assigned to the 11th District?
5  BY MS. O'CONNOR:
6      Q.  Well, if I direct your attention to
7  Exhibit 152.
8          MS. DAVENPORT:  This says 152A.
9          MS. O'CONNOR:  That will work.
10         MS. DAVENPORT:  Okay.
11         MS. O'CONNOR:  152A.
12         MS. DAVENPORT:  Are you done with 190?
13         MS. O'CONNOR:  Yes.
14 BY MS. O'CONNOR:
15     Q.  Directing your attention to the last
16 page, the first arresting officer is identified as a
17 D.E. Warren, second arresting officer is identified
18 as a C. Vega.  From review of 152, Deputy Chief, are
19 you able to tell me whether or not you would have
20 been the supervisor to those two arresting officers
21 on August 18th of 2016?
22     A.  His sergeant would have been his
23 immediate supervisor.
24     Q.  In any of your ranks or jobs with the

BUCHANAN REPORTING, INC.
312-670-0900



PLAINTIFF'S
EXHIBIT

Page 21

1    Chicago Police Department, sir, have you ever been
2    involved with creating policy, general orders,
3    special orders?
4         MS. DAVENPORT:  Object, scope,
5    incomplete hypothetical and irrelevant to
6    this defendant's role in this lawsuit.
7    BY THE WITNESS:
8         A.   No.
9    BY MS. O'CONNOR:
10        Q.   Okay.  We were talking a moment ago
11   that in your job as the commanding officer of the
12   11th District there were occasions in which that
13   would take you out of the 11th District.  But,
14   generally speaking, would you spend most of your
15   time at the 11th District?
16        A.   Within the 11th District, yes.
17        Q.   Okay.  And when you say "within the
18   11th District," does that mean both inside the
19   actual 11th District station and also within the
20   11th District meaning within its boundaries?
21        A.   Correct.
22        Q.   Okay.  And during the daytime hours
23   that you were working within the 11th District in
24   August of 2016, can you approximate for me how many

Page 22

1    of those hours you would be physically at the
2    station as opposed to being in the field?
3         A.   Probably would have been four,
4    five hours maybe, within the station.
5         Q.   Okay.  In August of 2016, do you
6    recall how many district station supervisors were
7    working at the 11th District?
8         A.   No.
9         Q.   Can you approximate how many?  Is it
10   five?  Is it ten?
11        MS. DAVENPORT:  Objection, asked and
12   answered.  You can answer again.
13   BY THE WITNESS:
14        A.   Rephrase your question.
15   BY MS. O'CONNOR:
16        Q.   Sure.  Do you know who Sergeant Geyer
17   is?
18        A.   I heard the name before.
19        Q.   Okay.  If I direct your attention back
20   to 152A, on the last page it says "approving
21   supervisor KS Geyer."  Do you see where I'm reading,
22   sir?
23        A.   Yes.
24        Q.   Okay.  Based upon your review of this

Page 23

1    arrest report, he would have been the approving
2    supervisor for the arrest of Tyler Lumar on
3    August 18th of 2016; is that correct?
4         A.   Correct.
5         Q.   Okay.  And after reviewing the report
6    and from what you told me already, you would have
7    been considered to be Sergeant Geyer's supervisor on
8    that day; is that correct?
9         A.   His lieutenant would have been his
10   immediate supervisor.
11        Q.   Can you tell by looking at the report
12   who the lieutenant was on that day?
13        A.   No.
14        Q.   Now, back to my earlier question about
15   the sergeants, specifically Sergeant Geyer.  I was
16   asking you before about whether you could tell me
17   approximately how many other district station
18   supervisors were assigned to the 11th District back
19   in August of 2016.  Other than Sergeant Geyer, can
20   you tell me who those sergeants may have been?
21        MS. DAVENPORT:  Just object to the
22   form of your question, it also
23   mischaracterizes.
24

Page 24

1    BY THE WITNESS:
2         A.   There's multiple desk sergeants.  Each
3    watch has a desk sergeant so, at a minimum, three
4    per day.
5    BY MS. O'CONNOR:
6         Q.   Okay.  And then in terms of
7    lieutenants per watch, on average, how many
8    lieutenants would be assigned to the 11th District
9    for each watch?
10        A.   It could be from one to three.
11        Q.   If I wanted to find out who the
12   lieutenant was at the 11th District on August 18th,
13   2016, where would I find that information?
14        MS. DAVENPORT:  Object to the form of
15   that question.
16   BY THE WITNESS:
17        A.   You would subpoena the records.
18   BY MS. O'CONNOR:
19        Q.   What type of records?
20        A.   The A&As.
21        Q.   The A&A sheets?
22        A.   Uh-huh.
23        Q.   Is that a yes?
24        A.   Yes.

6  (Pages 21 to 24)

Page 77

1     Q.  They went to bond court? I'm sorry.

2     A.  Yeah, they went to bond court.

3     Q.  Okay. After BOP was issued,

4 Exhibit 173, did the desk sergeants or the police

5 officers have some discretion as to whether they

6 could still bond certain arrestees that were

7 arrested on out-of-county warrants out at the

8 station? Did they have some discretion to do that

9 depending upon the type of offense?

10     A.  No.

11     Q.  Okay. All right. I just have a few

12 follow-up questions on a few things.

13     Oh, switching gears. Are you

14 aware that Tyler Lumar was refused by Cook County

15 Jail on August 19th of 2016 after he was alleged to

16 have brought in some form of contraband?

17     A.  Yes.

18     Q.  Okay. Was it a common occurrence that

19 arrestees that were transported to bond court would

20 be refused by Cook County Jail and sent back to CPD?

21     MS. DAVENPORT: Can you read back that

22 question?

23     (Record read as

24     requested.)

Page 78

1     MS. DAVENPORT: I'm going to object as

2 to form, foundation as to what's, quote,

3 common in CPD.

4     MR. POWER: Join.

5 BY MS. O'CONNOR:

6     Q.  You can answer, sir.

7     A.  There's multiple reasons why Cook

8 County could reject an arrestee.

9     Q.  And when you were working at the 11th

10 District as the commanding officer, would you be

11 notified of those occasions?

12     A.  No.

13     Q.  Okay. Who in terms of rank would be?

14     A.  The desk sergeant. If we had a watch

15 operation lieutenant, he would have been made aware

16 of it.

17     Q.  Okay. I understand from meeting and

18 deposing some of the other officers that there are

19 several reasons in which sometimes Cook County will

20 refuse an inmate that's transferred there from CPD.

21 But limiting my questions to those that are refused

22 because they have been alleged to have brought in

23 contraband, how often does that happen?

24     MS. DAVENPORT: Form, foundation.

Page 79

1     MR. POWER: Join. Speculation.

2     MS. DAVENPORT: Are you asking him to

3 say as far as CPD, Cook County in its

4 entirety, how many different districts' worth

5 of arrestees they bounced?

6 BY THE WITNESS:

7     A.  Can you repeat the question?

8 BY MS. O'CONNOR:

9     Q.  Sure. So I deposed some of the Cook

10 County sheriffs, and they've testified in this case

11 that hundreds of times they refused to accept CPD —

12 they refused to accept arrestees that are

13 transported from CPD because those arrestees have

14 brought in contraband.

15     Are you aware of that?

16     MR. POWER: Objection, form,

17 foundation, misstates prior testimony.

18     MS. DAVENPORT: Join.

19 BY THE WITNESS:

20     A.  It does occur.

21 BY MS. O'CONNOR:

22     Q.  Okay. And when it does occur, what is

23 the procedure at the Chicago Police Department for

24 receiving that arrestee back into CPD custody and

Page 80

1 determining whether there should be additional

2 charges placed?

3     MS. DAVENPORT: Object to the form of

4 that question.

5 BY THE WITNESS:

6     A.  That individual would have been

7 brought back, and whatever contraband found upon him

8 or her would have been inventoried.

9 BY MS. O'CONNOR:

10     Q.  Okay. On the occasions in which you

11 recall this occurring, on any of those occasions was

12 that arrestee charged with another crime?

13     A.  Yes.

14     Q.  Okay. And when that has occurred,

15 what are the steps CPD takes to obtain the ability

16 to place additional charges?

17     A.  Based off the inventory, based off the

18 information gathered from the transporting officers

19 that Person A found this contraband on the arrestee,

20 that would have been listed in the arrest report.

21 The charges would have been changed or updated, and

22 then that person would have been sent to the proper

23 courts.

24     Q.  Okay. Are there occasions in which