UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA ALCORN, as Independent Administrator of the Estate of TYLER LUMAR, ) ) ) ) | |
| Plaintiff, ) ) | No. 17 C 5859 |
| v. ) ) | Honorable Judge Virginia M. Kendall |
| THE CITY OF CHICAGO, et. al, ) ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW COMES the Plaintiff LISA ALCORN, by her attorneys, O'CONNOR LAW GROUP, LLC, and THE KHOWAJA LAW FIRM, LLC, and pursuant to Rule 56 of the Federal Rules of Civil Procedure moves for Summary Judgment as to liability on Count III of her Third Amended Complaint, directed against Defendant Thomas Wlodarski, which alleges that a violation of Tyler Lumar's rights under the Fourth Amendment harmed Tyler Lumar.

The attached Local Rule 56.1(a) statement of material uncontested facts and memorandum of law in support of this motion set forth Plaintiff's position and are hereby incorporated into this motion.

Respectfully submitted,

/S/*Donald J. Pechous*
Donald J. Pechous

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA ALCORN, as Independent Administrator of the Estate of TYLER LUMAR, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF CHICAGO, et. al, <br><br> Defendants. | No. 17 C 5859 <br><br> Honorable Judge <br> Virginia M. Kendall |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER
MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW COMES the Plaintiff LISA ALCORN ("Plaintiff"), by her attorneys, O'CONNOR LAW GROUP, LLC, and THE KHOWAJA LAW FIRM, LLC, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves this Honorable Court for summary judgment as to liability on Count III of her Third Amended Complaint, directed against Defendant Deputy Thomas Wlodarski ("Wlodarski"), that alleges a violation of Tyler Lumar's rights under the Fourth Amendment, and in support states as follows:

**INTRODUCTION**

The record shows that Deputy Wlodarski fabricated evidence when he claimed that he recovered cocaine from Tyler Lumar during a search in a jail bullpen. Wlodarski now admits that he merely saw Lumar pick up, and quickly drop, a baggie from the floor of a bullpen crowded with detainees. Plaintiff respectfully submits that she is entitled to summary judgment as to liability against Wlodarski regarding the claim contained in Count III of her Third Amended Complaint. Wlodarski, the sole eyewitness, caused Tyler Lumar to be detained without probable cause because he provided a false and misleading account of his encounter with Tyler Lumar. Tyler Lumar, whose

Fourth Amendment rights were already being violated by an unconstitutional policy of the City of Chicago, as detailed in Count II of Plaintiff's Third Amended Complaint, would have been presented to a judge and admitted to bail absent the illegal conduct of Wlodarski. Instead, Wlodarski caused the continued wrongful detention of Tyler Lumar and caused Tyler Lumar to suffer physical and mental distress leading to his attempted suicide and subsequent death.

## FACTS

On August 18, 2006, at 3:58 pm, Tyler Lumar was placed under arrest by Chicago Police. 56.1(a) ¶ 2. The basis for the arrest was a warrant for Tyler Lumar. 56.1(a) ¶ 3. The arrest warrant, which arose from a traffic case, was issued in Lee County, Illinois for case number 2015TR01515, for the offense of "Failing to Appear on Pay or Appear/Contempt Non-Pay," and bail was set in the amount of $500 (10%). 56.1(a) ¶¶ 4,5. The amount of the bond on the warrant was $500, 10 percent, which would be $50. 56.1(a) ¶ 6.

Lumar acknowledged the warrant but claimed that he already made payments and had gone to court. 56.1(a) ¶ 7. Lumar asked the police about the process of bonding out. 56.1(a) ¶ 8. Officer Warren told Lumar that when a physical copy of the arrest warrant was received, Lumar may be able to receive a bond. 56.1(a) ¶ 9. At that time, Tyler Lumar had $130.00 in his possession. 56.1(a) ¶ 10. If Tyler Lumar was allowed to post the $50 bond, Lee County did not need the Chicago Police Department to hold him. 56.1(a) ¶ 11.

Tyler Lumar was transported from the 11th District to court at 26th Street. 56.1(a) ¶ 12. Lumar and other prisoners were placed in Bullpen 23. 56.1(a) ¶ 13 The bullpen was full with about 25 detainees in the bullpen. 56.1(a) ¶ 14. Wlodarski and other officers began a search procedure. 56.1(a) ¶ 15.

While at the 26th and California Jail complex, Tyler Lumar was accused of possessing cocaine, a controlled substance by Sheriff's Deputy Wlodarski. 56.1(a) ¶ 16. Discovery of contraband on a detainee requires the completion of an incident report by the person who discovered or recovered the contraband. 56.1(a) ¶ 17. Wlodarski wrote in the Statement of Facts box of his incident report that "[O]n the above date at 0905hrs., R/D Wlodarski, T. #15733 was conducting a search of new prisoners in bullpen 23 when R/D noticed prisoner Lumar, Tyler IR#2025878 reaching behind the bullpen bench. R/D took detainees hand from the back of bench and saw prisoner drop a plastic package. R/D recovered the package which contained 12 individually packaged small white rocks (suspect crack cocaine). Sgt. Latham, C #3170 notified, prisoner and contraband returned to CPD district 11 for charges" 56.1(a) ¶ 18. In the incident report, Wlodarski wrote in the Incident Categories box, "Contraband Confiscated (From Detainee)." 56.1(a) ¶ 19.

Wlodarski told Sgt. Latham that Tyler Lumar brought contraband into the jail and Sgt. Latham signed Wlodarski's incident report. 56.1(a) ¶¶ 20, 21. Wlodarski told Deputy Leon that he found drugs on Tyler Lumar. 56.1(a) ¶ 22. Wlodarski told Chicago Police Officer Vinson that he recovered narcotics. 56.1(a) ¶ 23.

Lt. Lewis wrote her Administrative Assessment based on a conversation with Officer Wlodarski and reviewing his Statement of Facts in the incident report. 56.1(a) ¶ 24. Lt. Lewis wrote in her Administrative Assessment of Wlodarski's incident report that she was, "notified by Ofc. Wlodarski, T. #15733 that he had recovered some contraband off prisoner Lumar, Tyler IR # 2025878 while processing new prisoner releases in division 5-female intake area. Prisoner was returned to the 11th District Chicago Police Dept. along with the contraband recovered which was 12 clear plastic bags containing powdery white substance suspected to be cocaine. 56.1(a) ¶ 25

Wlodarski reviewed video of bullpen 23 on the day of his deposition during preparation with

his attorney. 56.1(a) ¶ 26. Prior to July 18, 2019, the day of his sworn deposition testimony in this case, Wlodarski had not seen any video of Bullpen 23 or the general area. 56.1(a) ¶ 27. Wlodarski doesn't dispute the accuracy of the video of Bullpen 23 and testified at his deposition that his incident report is not accurate. 56.1(a) ¶¶ 29, 30. Wlodarski has watched surveillance video at the jail to determine who started a fight in the bullpen, how the fight happened and who was involved. 56.1(a) ¶ 28.

Wlodarski further testified at his deposition as follows: Wlodarski was looking at Tyler Lumar when he saw Lumar picking up something from the ground with his left hand and then drop it. 56.1(a) ¶ 31, 32. Wlodarski walked up and grabbed Tyler Lumar's hand, but Lumar had nothing in his hand. 56.1(a) ¶ 33. Wlodarski recovered the suspected cocaine from the ground next to Tyler Lumar and not Tyler Lumar's hand. 56.1(a) ¶ 34. From the time Wlodarski saw Tyler Lumar pick something up to the time Wlodarski picked up the contraband was "seconds," "less than half a minute." 56.1(a) ¶ 35.

After Wlodarski pulled Tyler Lumar out of the bullpen, Lumar looked agitated. 56.1(a) ¶ 36 Lumar was irate and yelling a lot of swear words. 56.1(a) ¶ 37. Tyler Lumar said, "that wasn't mine," was angry and claimed that the drugs were not his. 56.1(a) ¶ 38. Lumar was placed in handcuffs and Officer Vinson escorted Tyler Lumar out of the bullpen area back onto the truck. 56.1(a) ¶¶ 39, 40.

Tyler Lumar was taken back to the 11th District. 56.1(a) ¶ 41. If Lumar had not been returned to the Chicago Police Department, he would have proceeded to bond court with the rest of the detainees. 56.1(a) ¶ 42. It took approximately 15 to 20 minutes to drive from the Cook County Jail to the 11th District. 56.1(a) ¶ 43. Chicago Police Officer Alexander told Tyler Lumar that he would be returned to the Jail for bond court the next day. 56.1(a) ¶ 44. Lumar was acting upset while he was in

4

the van. 56.1(a) ¶ 45.

Upon his arrival back at the 11th District Police Station, Lumar was ranting and raving, kept saying "this is bullshit" and was agitated and upset. 56.1(a) ¶ 46. Lumar was told to "calm down" and was escorted to a cell. 56.1(a) ¶ 47. At 11:15 am on August 19, 2016, Lumar was found unconscious in his cell. 56.1(a) ¶ 48. Lumar was found hanging, was cut down and CPR was started. 56.1(a) ¶ 49. Lumar had taken off his shirt, tied it to the bars and tied it around his neck. 56.1(a) ¶ 50. Tyler Lumar was pronounced dead on April 18, 2018. 56.1(a) ¶ 52. Tyler Lumar's Cause of Death was Complications of Hanging, and the Manner of Death was Suicide. 56.1(a) ¶ 53.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Under *Rule 56(c)*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who will bear the burden of proof on a particular issue at trial may not rest on the pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact, which requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

A court applies these "ordinary standards for summary judgment" in the same way whether one or both parties move for summary judgment; when the parties file cross-motions, the court treats

each motion individually, "constru[ing] all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017); *see Reeder v. Carter*, 339 F. Supp. 3d 860, 869-70 (S.D. Ind. 2018).

## **ARGUMENT**

The record demonstrates that probable cause to believe Tyler Lumar knowingly possessed a controlled substance was decidedly absent and that Wlodarski fabricated evidence to create the illusion of probable cause. Wlodarski's deposition testimony materially contradicts both the incident report he authored on August 19, 2016, and what he reported to Deputy Leon, Chicago Police Officer Vinson, and his supervisors Sgt. Latham and Lt. Lewis on that day. Wlodarski authored an incident report that facially, but falsely, proclaimed probable cause to believe that Tyler Lumar unlawfully possessed a controlled substance. Wlodarski illegally caused Lumar's detention to be extended and resulted in a continued, unreasonable detention of Tyler Lumar because he lacked probable cause. Wlodarski, the sole eyewitness, violated Tyler Lumar's rights under the Fourth Amendment by wrongly claiming that probable cause existed when it plainly did not. In the absence of Wlodarski's illegal actions, Tyler Lumar would have bonded out of custody instead of continuing to be detained and transferred back to the 11th District Police Station.

Generally, whether there is probable cause is a jury question. *Neiman v. Keane*, 232 F.3d 577, 580 (7th Cir. 2000). "[I]f the question of probable cause arises in a damages suit, it is a proper issue for the jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them. *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993) citing *Llaguno v. Mingey*, 763 F.2d 1560, 1565 (7th Cir. 1985) (en banc) (plurality opinion); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1346-47 (7th Cir. 1985); *Lester v. City of Chicago*, 830 F.2d 706, 715 (7th Cir. 1987) (whether police had probable cause to arrest for disorderly conduct

is a jury question). Here however, as will be discussed below, summary judgment in favor of Plaintiff is appropriate because the alleged probable cause was based entirely on fabricated evidence.

An illegal arrest occurs if the officer lacks probable cause to arrest. *Lawson v. Veruchi*, 637 F.3d 699, 703 (7th Cir. 2011). The existence of probable cause is determined objectively based on the facts and circumstances known to the officer at the time. Those facts and circumstances must be "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Id*. Probable cause is a practical, common-sense determination. *Maxwell v. City of Indianapolis*, 998 F.2d at 434. "[T]he obvious assumption is that there will be a *truthful* showing" of probable cause. *Franks v. Delaware,* 438 U.S. 154, 164-65 (1978) (emphasis in original).

Probable cause justifying an arrest exists "when a reasonable officer with all the knowledge of the officers on the scene would have believed that the suspect committed an offense defined by state law." *Jones v. Clark*, 630 F.3d 677, 684 (7th Cir. 2011). Under Illinois law, "[I]t is unlawful for any person knowingly to possess a controlled or counterfeit substance or controlled substance analog." 720 ILCS 570/402.

"The Fourth Amendment… establishes 'the standards and procedures' not just for arrest but also for ensuing 'detention'." *Manuel v. City of Joliet*, 137 S. Ct. 911, 917, (2017), *citing Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). The Fourth Amendment protects not only against "an initial arrest without probable cause, but also any "continued detention in its absence." *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018) (*citing Manuel*, 137 S. Ct. at 918-19), overruled on other grounds by *Lewis v. City of Chi*., 914 F.3d 472, 475 (7th Cir. 2019). "A claim for false arrest or pretrial detention based on fabricated evidence sounds in the Fourth Amendment right to be free from seizure without

7

probable cause. *Patrick v. City of Chicago*, 974 F.3d 824, 834 (7th Cir. 2020) citing *Lewis*, 914 F.3d at 476–78.

Here, Wlodarski's sworn deposition testimony demonstrates that he never had probable cause to arrest or bring about the further detention of Tyler Lumar. Lumar was one of approximately 25 detainees in a full bullpen. Wlodarski unequivocally testified that he was looking at Lumar when he first saw Lumar pick something up from the floor of a crowded area-- *before Lumar even touched the baggie*. This critical, yet omitted, fact dooms probable cause, exposes the prior untruths of Wlodarski and makes summary judgment in favor of the plaintiff appropriate.

Wlodarski testified that after he saw Lumar pick something up, he grabbed Lumar's hand, but Lumar had nothing in his hand. From the time Wlodarski saw Lumar pick something up, to the time Wlodarski picked up the baggie containing the suspect cocaine, was "seconds," "less than half a minute."[1] In sum, Wlodarski testified that he saw Lumar pick up and quickly, within seconds, drop and abandon a baggie found on the floor of a room crowded with detainees. Looked at objectively, and even in the light most favorable to Wlodarski, probable cause never existed.

Considering Wlodarski's sworn deposition testimony, Wlodarski's incident report and the version of events he related to others on August 19, 2016, are now troubling. The incident report and Wlodarski's statements to others that day, differ materially from his sworn deposition testimony. Wlodarski never reported, whether in writing or verbally, that he saw the baggie on the floor before seeing Lumar pick it up and quickly drop it. Wlodarski related a different story in his report and to fellow law enforcement officers--a significantly different story.

---

1 Plaintiff assumes, for the purposes of this motion only, that the "something" Wlodarski saw Lumar pick up was the same baggie that Wlodarski recovered containing suspect cocaine. *See McIntosh v. Wexford Health Services*, 987 F.3d 662, 666 (7th Cir. 2021) (Plausible inferences must be resolved in favor of the party opposing summary judgment.).

8

Wlodarski originally reported that he took Lumar's hand and saw Lumar drop the baggie. If what Wlodarski originally proclaimed that day was true, it would be near impossible to argue that probable cause did not exist. *See, e.g.,* United States v. Williams, 333 Fed. App'x 127, 128 (7th Cir. 2009) ("once the officers saw the gun thrown, they had probable cause to make an arrest."). Wlodarski's omission of the fact that he saw the baggie on the floor before Lumar touched it and his false assertion that he only saw Lumar drop the baggie, without more, in effect "bullet proofed" Wlodarski's claimed, yet non-existent, probable cause.

In his incident report, Wlodarski wrote that he saw Lumar reaching behind the bench, took Lumar's hand and saw Lumar drop a plastic package. On that same report, in the Incident Categories Box, Wlodarski wrote, "Contraband Confiscated (From Detainee)." Wlodarski told Sgt. Lewis that Lumar brought contraband into the jail, and she signed off on his false incident report. Wlodarski reported a similar version to Lt. Lewis, another supervisor, whose Administrative Assessment concluded that Wlodarski "recovered some contraband *off* prisoner Lumar…" Lt. Lewis confirmed that she wrote that Administrative Assessment based on a conversation with Wlodarski and a review of his report. Wlodarski told Deputy Leon that he found drugs *on* Lumar. The report and the statements to fellow law enforcement officers were false. Wlodarski failed to tell anyone that he saw the baggie on the floor before Lumar picked it up and he further failed to tell anyone that Lumar dropped the bag within seconds.

Wlodarski's incident report, and statements to fellow law enforcement officers that day, altered or omitted critical, material details and was thus misleading and false. The sole eyewitness, Deputy Wlodarski, fabricated evidence. False statements and fabricated evidence cannot serve as the basis for probable cause. Alexander v. United States, 721 F.3d 418, 423 (7th Cir. 2013). Wlodarski now admits that the incident report is inaccurate. Since the report was inaccurate, then

9

Wlodarski's statements to Leon, Latham, Lewis, and Vinson were likewise inaccurate and thus false. Wlodarski's fabrications on August 19, 2016, provided inarguable, yet illusory, probable cause to further detain Lumar. Wlodarski's sworn deposition testimony, however, exposes the fabrications and destroys probable cause. Remember, the deposition testimony was given shortly after Wlodarski reviewed the video of the events of that day for the first time.

"A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued…" *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir. 1986); *accord McBride v. Grice,* 576 F.3d 703, 707 (7th Cir. 2009) (citations omitted). Wlodarski admitted that he has watched bullpen video in the past to determine who started a fight and who was involved. Here, Wlodarski never established probable cause to begin with, because he observed the baggie on the floor of a crowded room even before Lumar touched it. Since the "reasonableness" standard of the Fourth Amendment links the constitutional obligation to prudent conduct, when information an officer receives warrants further investigation a prudent officer must do more to determine probable cause. *Hebron v. Touhy,* 18 F.3d 421, 422-23 (7th Cir. 1994). Wlodarski should have reviewed the video before proclaiming that Tyler Lumar possessed the baggie, which is confirmed by the fact that Wlodarski materially altered his story after watching the video of the incident involving Tyler Lumar. However, Wlodarski didn't just close his eyes on August 19, 2016, he changed the facts.

We now know that Wlodarski's misleading and false story, as he reported on August 19, 2016, never happened as he then described. As the Seventh Circuit has explained, a detention not supported by probable cause and based only on "police fabrications" is unreasonable and in violation of the Fourth Amendment. *Lewis v. City of Chi.,* 914 F.3d at 477, *citing Manuel,* 137 S. Ct. at 919. Tyler Lumar's liberty was deprived by Wlodarski. If Wlodarski, the sole eyewitness, had not

submitted a false report and mislead Deputy Leon, Sgt. Latham, Lt. Lewis, and Chicago Police Officer Vinson, Lumar would have gone to bond court and gained his freedom, after posting the $50 bond using the money he had in his pocket.

Absent Wlodarski's actions, Tyler Lumar would have been presented to a Cook County judge and been admitted to bail as previously set by the Lee County judge. In Illinois, "[a] person for whom bail has been set has a right to be released from custody, subject to the conditions of the bail bond, when the appropriate amount of bail has been properly deposited. 725 ILCS 5/110-7(a), (b)." *People v. Harbach*, 698 NE 2d 281, 285-286 (2nd Dist. 1998). State courts are presumed to know and follow the law. *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002) (citations omitted).

Wlodarski caused Lumar's detention to be extended. "Wrongful arrest or detention creates a wrongful-seizure claim, plain and simple, and the constitutional objection is to wrongful custody rather than to a criminal prosecution." *Stone v. Wright,* 734 F. App'x 989 (7th Cir. 2018), *citing Manuel v. Joliet,* 137 S. Ct. 911, 917-20 (2017). In other words, "the wrong is the detention rather than the existence of criminal charges." *Manuel v. City of Joliet,* (*Manuel II*) 903 F.3d 667, 670 (7th Cir. 2018). Tyler Lumar, already suffering under an unconstitutional detention inflicted upon him by the City of Chicago, was subjected to further illegal and unconstitutional detention at the hands of Wlodarski. At 9:05 am, Wlodarski falsely claimed that he recovered cocaine from Tyler Lumar during a search, causing Lumar to be returned to the 11th District Police Station. An angry Tyler Lumar, ranting and raving, continuously denied that the cocaine was his. A little over two hours later, at 11:15 am, Lumar was found unconscious, hanging in a cell with his shirt tied around his neck.

Wlodarski never had probable cause to believe that Tyler Lumar knowingly possessed a controlled substance. Wlodarski fabricated a set of facts creating an illusion of probable cause.

11

Wlodarski was untruthful in both his written report and in his statements to fellow law enforcement officers. If Wlodarski had been truthful, he would have stated in his report, and orally, that he saw the baggie on the floor before Lumar even touched it, and that within seconds, he grabbed Lumar's empty hand and then retrieved the baggie from the floor.

Wlodarski mislead everyone into believing that what he saw was Lumar attempting to rid himself of drugs before a search. If real, it is a scenario where the *mens rea* for "knowing possession" is readily inferred. The true story however, viewing the record in the light most favorable to Wlodarski, was that Lumar, in a room crowded with other detainees, picked up a baggie from the floor and quickly abandoned it. "Knowing possession" never occurred. Indeed, it is plausible to infer that Lumar had no idea what that baggie contained before he picked it up and dropped it within seconds. When looked at objectively, there was never any probable cause here.

Wlodarski's fabrications caused Lumar to be returned to the Chicago Police instead of continuing to Bond Court to appear on a warrant where bond had already been set, where Lumar never denied he was the Tyler Lumar named in the warrant and where Lumar had more than enough money to post bond to gain his freedom. Wlodarski violated Tyler Lumar's constitutional rights under the Fourth Amendment and plainly caused Tyler Lumar's detention to be illegally extended further than it should have been. Wlodarski caused Lumar to be returned to the same police station he just came from, to spend more time in jail instead of being allowed to post $50 and go home. It is undisputed that Wlodarski was the sole eyewitness, his statements were false and Tyler Lumar's return to the Chicago Police and continued detention was based exclusively on those false statements. No reasonable jury could find otherwise. Plaintiff is entitled to summary judgment as to liability against Wlodarski.

## **CONCLUSION**

WHEREFORE the Plaintiff LISA ALCORN, for all the foregoing reasons, respectfully requests that this Honorable Court grant Plaintiff summary judgment against defendant Thomas Wlodarski as to Count III of her Third Amended Complaint, set this cause for a jury trial on damages, and grant such other relief as this court deems just and appropriate.

Respectfully submitted,

/S/*Donald J. Pechous*
Donald J. Pechous


Attorneys for Plaintiff:

Donald J. Pechous
The Khowaja Law Firm, LLC
8 S. Michigan Ave., Suite 2600
Chicago, IL 60603
312-388-1198
Email: dpechous@khowajalaw.com

Bryan J. O'Connor, Sr.
O'Connor Law Group, LLC
19 S. LaSalle St., Suite 1200
Chicago, IL 60603
312-236-1814
Email: boc@oconnorlawgroup.com