**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LISA ALCORN, as Independent Administrator )
of the Estate of TYLER LUMAR, )
                                     )
            Plaintiff, )        Case No. 17 CV 5859
                                     )
          v. )        Judge Virginia M. Kendall
                                     )        Magistrate Sunil R. Harjani
THE CITY OF CHICAGO, *et al.,* )
                                     )
            Defendants. )

**CITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

CELIA MEZA
Corporation Counsel of the City of Chicago

/s/ Elaine C. Davenport
Special Assistant Corporation Counsel
Elaine C. Davenport
Hugh O'Donnell
Sanchez Daniels & Hoffman LLP
333 West Wacker Drive, Suite 500
Chicago, IL 60606
(312) 641-1555
*Attorneys for Defendant Sergeant Kevin Geyer*

/s/ Elizabeth A. Ekl
Special Assistant Corporation Counsel
Terrence M. Burns
Elizabeth A. Ekl
Katherine C. Morrison
Reiter Burns LLP
311 South Wacker Drive, Suite 5200
Chicago, IL 60606
312-982-0090
*Attorneys for Defendant City of Chicago*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ........................................................................................................ 1

SUMMARY OF MATERIAL FACTS ......................................................................... 1

LEGAL STANDARD .................................................................................................. 4

ARGUMENT ............................................................................................................... 5

    I.    Plaintiff's Claim For Improper Detention against Sergeant Geyer (Count I) Must Be Dismissed In Its Entirety. ......................................................... 5

        A.    Lumar's Detention on a Valid Out-of-County Warrant Did Not Deprive Him of His Constitutional Rights. ....................................................... 5

        B.    Sergeant Geyer Did Not Conceal Lumar's Eligibility to Post Bond Directly Out of the 11th District Station, but Instead Properly Followed the Nondiscretionary BOP In Requiring Lumar to Attend Bond Court. .............. 7

        C.    Alternatively, Sergeant Geyer is Entitled to Qualified Immunity. .......................... 13

    II.    Plaintiff Has Failed to Present Sufficient Evidence to Establish a § 1983 *Monell* Claim Against the City (Count II). ................................................. 16

        A.    Lumar Did Not Suffer a Constitutional Injury. ....................................... 16

        B.    There is No Evidence the City Had Either an Express or Implicit Policy of Wrongfully Detaining Individuals Arrested by CPD on Out-of-County Warrants. ..................................................................... 17

        C.    The Evidence Does Not Support a Finding that the BOP Order Was Enacted and Enforced with Deliberate Indifference. ................................ 18

    III.    If City Defendants' Detention of Lumar Based on the BOP was Unlawful, the Detention Ended at the Moment Probable Cause Arose to Arrest Lumar for the Narcotics Charge. ......................................................... 19

    IV.    Lumar's Voluntary Act of Suicide Breaks Any Causal Link Between the Alleged Negligent Conduct and His Death. ................................................ 20

    V.    Plaintiff's Wrongful Death Claim (Count IX) Fails on Other Grounds ...................... 23

        A.    There is No Evidence CPD Detention Aide Errum Knew or Should Have Known that Lumar Was at a Substantial Risk for Suicide. .......................... 24

B.     Alternatively, Plaintiff's Wrongful Death Claim is Barred by the Tort Immunity Act. ...........................................................................................................25

CONCLUSION ....................................................................................................................26

# TABLE OF AUTHORITIES

**Cases:**                                                         **Page(s):**

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...........................................................................14

*Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969 (7th Cir. 2020) ...........................................4

*Blair v. Macoff*, 284 Ill. App. 3d 836 (1996) ....................................................................15, 16

*Brunson v. Murray*, 843 F.3d 698 (7th Cir. 2016) .................................................................5

*Calhoun v. Ramsey*, 408 F.3d 375 (7th Cir. 2005) ..........................................................17, 18

*Celotex Corp. v. Catrett*, 477 U.S. 317(1986) ......................................................................4

*Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146 (7th Cir. 1994) ............4

*City of Canton v. Harris*, 489 U.S. 378 (1989) ....................................................................19

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ..............................................................17

*City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) ..........................................................19

*Connick v. Thompson*, 563 U.S. 51 (2011) ..........................................................................19

*County of Los Angeles, Cal. v. Mendez*, 137 S. Ct. 1539 (2017) ...........................................22

*Crumpton v. Walgreen*, 871 N.E.2d 905 (1st Dist. 2007) ....................................................22

*Devenpeck v. Alford*, 543 U.S. 146 (2004) ..........................................................................20

*Doe v. Thomas*, 604 F. Supp. 1508 (N. D. Ill. 1985) .............................................................7

*Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525 (7th Cir. 2000) ...............19

*First Midwest Bank v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021) ...................................17

*Fisher v. Washington Metropolitan Transit Authority*, 690 F.2d 1133 (4th Cir. 1982) ...........7

*Flint v. City of Milwaukee*, 91 F. Supp. 3d 1032 (2015) .........................................................6

*Gibbs v. Lomas*, 755 F.3d 529 (7th Cir. 2014) ....................................................................14

*Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017) ......................................................18

*Holmes v. Village of Hoffman Estate*, 511 F.3d 673 (2007) ............................................20, 21

*Jackson v. Marion Cty.*, 66 F.3d 151 (7th Cir. 1995) ...........................................................18

*Johnson v. Wal-Mart Stores,* 588 F.3d 439 (7th Cir. 2009) .................................................22

*Jones v. City of Chicago,* 787 F.2d 200 (7th Cir. 1986) ....................................................18

*Jutzi-Johnson v. U.S.,* 263 F.3d 753 (7th Cir. 2001) .........................................................22

*Lapre v. City of Chicago,* 911 F.3d 424 (7th Cir. 2018) ...................................................19

*Leavitt v. Farwell Tower Ltd. P'ship,* 625 N.E.2d 48 (1993) .............................................24

*Malley v. Briggs,* 475 U.S. 335 (1986) .............................................................................14

*Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ..............................14

*Monell v. Dept. of Social Servs.,* 436 U.S. 658 (1978) .........................................16, 17, 18, 19, 20

*Mullenix v. Luna,* 136 S. Ct. 305 (2015) .........................................................................14

*Pearson v. Callahan,* 555 U.S. 223 (2009) ......................................................................14

*Petty v. City of Chicago,* 754 F.3d 416 (7th Cir. 2014) ....................................................17

*Phelan v. Cook Cnty.,* 463 F.3d 773 (7th Cir. 2006) ........................................................18

*Portis v. City of Chicago,* 613 F.3d 702 (7th Cir. 2010) (rehrg. *en banc* denied
Sept. 8, 2010) .......................................................................................................................7

*Sallenger v. City of Springfield,* 630 F.3d 499 (7th Cir. 2010) .........................................17

*Scott v. Harris,* 550 U.S. 372 (2007) ...............................................................................20

*Sims v. Mulcahy,* 902 F.2d 524 (7th Cir. 1990) *cert. denied, Sims v. Mulcahy,*
498 U.S. 897 (1990) ...........................................................................................................18

*Singer v. Raemisch,* 593 F.3d 529 (7th Cir. 2010) .............................................................5

*Speigel v. City of Chicago,* 106 F.3d 209 (7th Cir. 1997) .................................................16

*Stanphil v. Ortberg,* 2018 IL 122974 ..............................................................................22

*Swanigan v. City of Chicago,* 881 F.3d 577 (7th Cir. 2018) .............................................21

*Thompson v. Boggs,* 33 F.3d 847 (7th Cir. 1994) .............................................................17

*Thompson v. City of Chicago,* 472 F.3d 444 (7th Cir. 2006) ............................................24

*Thomas v. Cook County Sheriff's Dep't,* 604 F.3d 293 (7th Cir. 2009) .............................18

*Turcios v. The DeBruler Co.*, 2015 IL 117962 .......................................................................... 21, 22

*White v. City of Markham*, 310 F.3d 989 (7th Cir. 2002) ................................................... 16

*Wilkins v. May*, 872 F.2d 190 (7th Cir. 1989) .......................................................................... 21

*Williams v. Rodriguez*, 509 F.3d 392 (7th Cir. 2007) ........................................................ 26

*Williams v. Univ. of Chicago Hospitals*, 179 Ill.2d 80 (1997) ..................................... 23

**Statutes:**

42 U.S.C. § 1983 ............................................................................... 1, 16, 20, 21, 22

725 ILCS 5/109-2 .......................................................................................... 8, 15

735 ILCS 5/1-104 .............................................................................................. 15

740 ILCS 180/1 ......................................................................................... 1, 21, 24

745 ILCS 10/1-210 ............................................................................................ 26

745 ILCS 10/2-202 ...................................................................................... 25, 26

745 ILCS 10/2-204 ...................................................................................... 25, 26

745 ILCS 10/4-103 ............................................................................................ 25

Fed. R. Civ. P. 56(c) ............................................................................................. 4

IL S. Ct. Rule 21 ............................................................................................... 15

**Other Authority:**

Cook County Gen. Admin. Order No. 2015-06 (Procedures for
Arrests on Illinois Intrastate Warrants Issued Outside of Cook County) ................. 2, 3, 7-9, 11-15

## INTRODUCTION

Lisa Alcorn ("Plaintiff") brings this action, as independent administrator of the Estate of Tyler Lumar, under 42 U.S.C. § 1983 and 740 ILCS 180/1, *et seq.*, alleging that Sergeant Kevin Geyer ("Sergeant Geyer") and the City of Chicago ("City") (collectively "City Defendants") violated Tyler Lumar's ("Lumar") constitutional rights under the 4th and 14th Amendments to the United States Constitution when he was detained overnight on an out-of-county warrant on August 18, 2016. She alleges City Defendants are to blame for Lumar's suicide attempt (and subsequent death) while in the Chicago Police Department ("CPD") lockup. City Defendants are entitled to summary judgment because Plaintiff has failed to demonstrate: (1) Plaintiff was wrongfully detained in the hours following his arrest; and (2) City Defendants' conduct (including the City's policy and practices) caused Lumar's suicide attempt and subsequent death. (*See* City Defs' Rule 56.1(a) Statement of Material Undisputed Fact, (hereinafter "SOF ¶")). Accordingly, City Defendants are entitled to judgment as a matter of law.

## SUMMARY OF MATERIAL FACTS

Chicago Police Department ("CPD") Officers Daniel Warren and Carlos Vega were called to Madison Community Health Center on the afternoon of August 18, 2016 regarding a disruptive patient. SOF ¶ 4. Upon arrival, Warren and Vega learned the patient, identified as Tyler Lumar ("Lumar"), came into the clinic for treatment related to his asthma and then became enraged when the doctor refused to provide him with codeine. SOF ¶ 5. Officers learned that Lumar attempted to access a secured section of the clinic where the doctor had retreated to avoid Lumar; and yelled at office employees, "I'll come back and shoot this place up." SOF ¶ 5. At approximately 3:15 p.m., at the request of medical staff, Lumar with verbal notice that he was banned from the clinic property but was free to leave. SOF ¶ 6. Lumar left the Madison Family Health Center and proceeded to walk peacefully away from the clinic down Madison Street. SOF ¶ 7.

After leaving the health clinic, Warren and Vega discovered through their in-car personal terminal device that Lumar had an outstanding warrant out of Lee County. SOF ¶ 8. Thereafter, they located Lumar walking peacefully down the street, and arrested him on the outstanding warrant at approximately 3:58 p.m. SOF ¶ 9. Warren and Vega then transported Lumar to the 11th District police station at approximately 4:16 p.m. SOF ¶ 9. At approximately 4:48 p.m., CPD officers received verification from Lee County that the warrant was valid for failure to appear contempt non-pay, a misdemeanor, and that bond was set on the warrant in the amount of $500.00, 10% to apply. SOF ¶ 18. They also learned that Lee County would extradite if Lumar was unable to pay the bond on the warrant. SOF ¶ 18.

Upon arrival at the 11th District Police station, Lumar was searched and processed. SOF ¶ 20. He was screened for medical and mental health problems. SOF ¶ 24. He was asked about medications and responded that he was presently taking prescription medication for asthma. SOF ¶ 24. Lumar denied any prior suicide attempts. SOF ¶ 24. He was not acting despondent or irrational and cooperated with the detention aide throughout the processing procedure. SOF ¶ 23. Lumar was allowed to make several telephone calls during that time. SOF ¶ 21. At the conclusion of the screening process, Lumar was taken to lockup for further processing including fingerprinting. SOF ¶¶ 24, 25.

In February 2016, arrests of individuals by the CPD for out-of-county warrants were governed by CPD Bureau of Patrol Order 15-017415 (hereinafter, "BOP Order"). SOF ¶ 34. The BOP Order requires that "every person arrested by the Chicago Police Department on an arrest warrant issued by an Illinois state court outside of Cook County shall be required to appear in bond court." SOF ¶ 34. The BOP Order was created in response to Cook County General Administrative Order No. 2015-06-Procedures for Arrests on Illinois Intrastate Warrants Issued Outside of Cook County ("GAO"). SOF ¶ 35. The GAO was entered by Cook County Chief Judge Evans on June

2

17, 2015 and orders arresting agencies and the Circuit Court Clerk of Cook County to comply with a procedure that requires "Defendants taken into custody by an arresting agency located in Cook County on an arrest warrant issued by an Illinois state court outside of Cook County [] to appear in bond court in the appropriate district or division of this court." SOF ¶ 36.

Sergeant Geyer was the 11th District desk sergeant on August 18, 2016. SOF ¶ 43. He reviewed the paperwork, approved probable cause for Lumar's arrest, and made the determination, in accordance with the BOP Order, that Lumar was ineligible to post bond at the police station and must be held pending his transport to the Cook County Department of Corrections ("CCDOC") for bond court. SOF ¶¶ 43, 44. Lumar was placed into a cell in the lockup sometime after 6:40 p.m. SOF ¶ 45.

At approximately 12:08 a.m. on August 19, 2016, officers arrived to transport Lumar to Mt. Sinai Hospital after Lumar complained of shortness of breath attributed to his asthma. SOF ¶ 46. Lumar was uncooperative with the transport officers and EMS personnel who arrived to take him to Mt. Sinai Hospital for treatment. SOF ¶ 47. While sitting in the waiting room at Mt. Sinai Hospital, Lumar told the transporting officers that he wanted to go home and see his daughter. SOF ¶ 48. Lumar did not appear to exhibit any signs of suicidal ideation to the CIT-trained transport officer present with him in the waiting room. SOF ¶ 49. However, in the opinion of the emergency department physician, Dr. Ferguson, Lumar did not exhibit any signs of suicidal ideation, and Lumar was released back into police custody. SOF ¶¶ 50, 51. According to Dr. Ferguson, she would not have released Lumar back into police custody if she was concerned about his mental health. SOF ¶ 51. Lumar was returned to the 11th District police station from Mt. Sinai at approximately 7:00 a.m. that same morning. SOF ¶ 52.

At 8:40 a.m., two transport officers arrived to take Lumar to the CCDOC to be held pending his appearance in bond court that morning. SOF ¶ 53. After being placed into a bullpen in

the CCDOC with other detainees, Cook County correctional officers reportedly observed Lumar drop a package containing twelve individually packaged small white rocks (believed to be a controlled substance) behind a bullpen bench. SOF ¶ 61. Cook County correctional officers reported their observations to CPD officers and released him back into the custody of CPD to be processed for possession of a controlled substance. SOF ¶ 62.

Lumar was returned to the 11th District and placed back into a cell at 11:04 a.m. SOF ¶¶ 63, 66, 73. At approximately, 11:15 a.m., while conducting a routine check, CPD Detention Aide Charles Barry discovered Lumar hanging by his t-shirt in his cell. SOF ¶ 73. Barry immediately called for assistance and other CPD officers, including Detention Aide Johnathan Errum, responded and Lumar was cut down. SOF ¶ 74. A CPD sergeant called 911 and CPR was started by CPD personnel. ¶ 75. Paramedics continued CPR after arriving at the 11th District and transported Lumar to Mt. Sinai Hospital, where it was determined he was brain dead. SOF ¶ 75. Lumar succumbed to his injuries on April 18, 2018. SOF ¶ 76.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Though the movant bears the burden of showing that summary judgment is appropriate, the non-moving party may not rest upon mere allegations in the pleadings nor upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence.'" *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (internal citation omitted). Therefore, unless Plaintiffs "can point to sufficient evidence regarding such issues of judgment to allow [them] to prevail on the merits, [they] cannot prevail at the

summary judgment stage." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010) (internal citations omitted).

## ARGUMENT

### I.    Plaintiff's Claim For Improper Detention against Sergeant Geyer (Count I) Must Be Dismissed In Its Entirety.

The sole pending issue against Sergeant Geyer alleges a violation under the Fourth Amendment based on Lumar's detention pending his transport to bond court as required by the BOP Order. Sergeant Geyer properly followed the nondiscretionary BOP Order requiring Lumar's detention until he could be brought to bond court and did not violate Lumar's Fourth Amendment rights. Sergeant Geyer's reliance on the BOP Order in determining that Lumar was required to attend bond court to service his warrant entitles him to qualified immunity since Lumar's constitutional rights were not violated by the application of the BOP Order, nor did a constitution right exist that was clearly established at the time of the alleged violation. For the reasons set forth *infra*, judgment is warranted in Sergeant Geyer's favor.

### A.    Lumar's Detention on a Valid Out-of-County Warrant Did Not Deprive Him of His Constitutional Rights.

The only constitutional claims against City Defendants are based on Lumar's alleged unlawful detention. Plaintiff alleges he was unlawfully detained pursuant to the BOP Order, which prevented him from being able to post bond at the police station.[1] Plaintiff alleges his unlawful detention continued after he was purportedly found to be in possession of narcotics in the CCDOC and returned to the 11th District lockup.

---

[1] This Court previously found that Lumar's initial arrest by CPD Officers on a facially valid warrant and transport to the 11th District was proper under the Fourth Amendment. Dkt. 116, at 11-12, see *Brunson v. Murray*, 843 F.3d 698, 709 (7th Cir. 2016) (officer receiving facially valid arrest warrant is ordinarily expected to act upon it and not second-guess the court's decision to issue it; and does not personally violate the Constitution by making an arrest the court has authorized).

5

The relevant facts are not in dispute: at approximately 3:58 p.m., CPD Officers arrested Lumar on an outstanding warrant out of Lee County. SOF ¶¶ 8, 9. They transported Lumar to the 11th District police station at approximately 4:16 p.m. SOF ¶ 9. At 4:48 p.m., CPD officers received verification from Lee County that the warrant was valid for failure to appear contempt non-pay, a misdemeanor, and that bond was set on the warrant in the amount of $500.00, 10% to apply. SOF ¶ 18. Lee County indicated it would extradite if Lumar was unable to pay the bond on the warrant. SOF ¶ 18. Lumar was in possession of enough money to post the required bond amount. SOF ¶ 27. However, pursuant to the BOP Order, Lumar was held in CPD custody pending transport to CCDOC where he would be held for bond court. SOF ¶¶ 44, 45. Lumar was placed into a cell in the CPD 11th District lockup sometime after 6:40 p.m. SOF ¶ 45. At approximately 12:08 a.m. on August 19, 2016, officers arrived to transport Lumar to Mt. Sinai Hospital after he complained of shortness of breath attributed to his asthma. SOF ¶ 46. Lumar was returned to the 11th District police station from Mt. Sinai at approximately 7:00 a.m. that same morning. SOF ¶ 52. At 8:40 a.m., Lumar was transported to the CCDOC to be held pending his appearance in bond court that morning. SOF ¶ 53. After Lumar was purportedly found to be in possession of narcotics by Cook County Correctional Officers, Lumar was returned to the 11th District and placed back into a cell at 11:04 a.m. SOF ¶¶ 63, 66. Lumar was discovered hanging by his t-shirt in his cell at approximately 11:15 a.m. SOF ¶ 73.

Plaintiff cannot show that Lumar's detention pursuant to the GAO/BOP Order was unreasonable. An arrestee can be detained for a reasonable amount of time incident to a lawful arrest. *See* Flint v. City of Milwaukee, 91 F. Supp. 3d 1032, 1062 (2015); *see* Portis v. City of Chicago, 613 F.3d 702, 704 (7th Cir. 2010) (rehng. *en banc* denied Sept. 8, 2010); *see also* Doe v. Thomas, 604 F. Supp 1508, 1513 (N. D. Ill 1985) *relying on* Fisher v. Washington Metropolitan Transit Authority, 690 F.2d 1133 (4th Cir. 1982). The detention period may include that time reasonably necessary to complete the

administrative steps incident to the arrest. _Portis,_ 613 F.3d at 704 (noting that arrested person bears the burden of establishing that the length of his custody is unreasonable).

In this case, Lumar's detention was reasonable in length and justified since Lumar was held only long enough to perform the administrative steps of processing him into CPD custody to await transport Cook County for bond court. From the time Plaintiff was arrested (3:58 p.m.) until the time he left the 11th District to go to CCDOC for bond court (8:40 a.m.), was a total of approximately 17 hours. _See Doe,_ 604 F. Supp. at 1513 _relying on Fisher,_ 690 F.2d 1133 (15-hour administrative delay not unreasonable_)._ Inclusive of that time, Lumar spent 7 hours, from 12:08 midnight until 7:01 a.m., at Mt. Sinai Hospital to treat his asthma. Lumar was on the first available transport to CCDOC after the time of his arrest, and he was not held any longer than the time it took to secure his transport to CCDOC for bond court in compliance with the administrative mandate of the GAO. As such, judgment is warranted in favor of Defendant Geyer as to Count I in its entirety as Plaintiff cannot meet her burden to show that Lumar's detention was unreasonable.

**B. Sergeant Geyer Did Not Conceal Lumar's Eligibility to Post Bond Directly Out of the 11th District Station, but Instead Properly Followed the Nondiscretionary BOP In Requiring Lumar to Attend Bond Court.**

It is not in dispute that Sergeant Geyer's determination that Lumar was ineligible to post bond at the 11th District and instead was required to attend bond court was based solely on the application of the non-discretionary BOP Order. The GAO and the subsequent BOP Order are reiterations of state statute 725 ILCS 5/109-2. The BOP Order was a nondiscretionary directive. The BOP Order 15-0174.01/15-0174.01 states in pertinent part:

> In June 2015, Chief Judge Timothy C. Evans issued an order stating that every person arrested by the Chicago Police Department on an arrest warrant issued by an Illinois State court outside of Cook County shall be required to appear in bond court. SOF ¶ 34.

Chief Judge Timothy Evan's <u>GAO 2015-06</u> declares:

Defendants taken into custody by an arresting agency located within Cook County on an arrest warrant issued by an Illinois state court outside of Cook County **shall** be required to appear in bond court…A bail hearing shall be held, and the defendant shall be remanded by mittimus to the custody of the Cook County Sheriff. (emphasis added). SOF ¶ 35.

<u>725 ILCS 5/109-2</u>, states:

(a) Any person arrested in a county other than the one in which a warrant for his arrest was issued shall be taken without unnecessary delay before the nearest and most accessible judge in the county where the arrest was made or, if no additional delay is created, before the nearest and most accessible judge in the county from which the warrant was issued. He shall be admitted to bail in the amount specified in the warrant or, for offenses other than felonies, in an amount as set by the judge, and such bail shall be conditioned on his appearing in the court issuing the warrant on a certain date. The judge may hold a hearing to determine if the defendant is the same person as named in the warrant.

(b) Notwithstanding the provisions of subsection (a), any person arrested in a county other than the one in which a warrant for his arrest was issued, may waive the right to be taken before a judge in the county where the arrest was made. If a person so arrested waives such right, the arresting agency shall surrender such person to a law enforcement agency of the county that issued the warrant without unnecessary delay.

It is uncontested that the BOP Order was issued by the CPD Bureau of Patrol and was non-discretionary to officers within the Districts, with officers facing internal discipline if they failed to follow its directive. SOF ¶ 37. The BOP Order mandated that any person arrested on an out-of-county warrant, such as Lumar, shall go to bond court. SOF ¶ 38. Sergeant Geyer was required to follow the BOP Order in the same manner as he would a General or Special Order issued by the CPD. SOF ¶ 37. The BOP Order was distributed to district station supervisors and a copy of the BOP Order was kept at the district front desks. SOF ¶ 42. As of 18 August 2016, Sergeant Geyer was aware of the BOP Order and its mandate requiring that any person arrested on an out-of-county warrant be sent to bond court at Cook County. SOF ¶ 44. There has not been an iota of evidence to suggest that Sergeant Geyer did not properly follow the BOP as written, or that Lumar

was sent to bond court at Cook County for any reason other than pursuant to the GAO/BOP Order.

Plaintiff baselessly asserts in the TAC[2] that Sergeant Geyer and others knew that Lumar's warrant was bondable but nefariously withheld bond eligibility from Lumar in order to purposefully force Lumar to attend bond court. These allegations of hiding bond eligibility are wholly unsupported by the record and all uncontested evidence is that Sergeant Geyer determined Lumar must attend bond court pursuant to the BOP Order mandated upon him by the Bureau of Patrol.

Upon arriving at the 11th District police station, after lawfully arresting Lumar on an outstanding warrant learned of through a LEADS "hit." (Dkt. 128), arresting Officer Vega contacted Civilian Corrina Esteban at CPD's LEADS desk located at police headquarters at approximately 4:26 p.m. SOF ¶ 10. Esteban printed the LEADS response, confirmed the serviceability of the warrant, memorialized the descriptors that demonstrated Vega had the correct person in custody, and issued a clerical HOLD number. SOF ¶¶ 11.

Esteban confirmed the serviceability, or geographical boundaries, of the warrant by reading the geographical boundaries written in the LEADS response. SOF ¶ 12. ("This warrant shall not be executed at any location outside the court-issued geographic limits specified…[including]…Cook"). Once Esteban confirmed that the warrant was serviceable in Cook County, she confirmed with Officer Vega that the person they had in custody, Lumar, matched the description of the person identified in LEADS. SOF ¶ 11. Once the serviceability was confirmed and Lumar's identity matched LEADS, Esteban issued a "HOLD" number Z14221 which she wrote onto the LEADS printout. SOF ¶ 15. The "HOLD" number is utilized for filing/tracking purposes. SOF ¶ 15. The

---

[2] "TAC" refers to Plaintiff's Third Amended Complaint, Dkt. 279.

HOLD number was provided to Vega and Esteban physically walked her attestation paper to the Extradition department.  SOF ¶ 16.

After Esteban confirmed the validity of the warrant and provided Vega a HOLD number, Arresting Officers Warren and Vega prepared Lumar's arrest report. SOF ¶ 28. The charge, or offense as cited, entered by Warren and Vega was "725 ILCS 5.0-110-3 / ISSUANCE OF WARRANT / Class Z - "  SOF ¶ 30. This charge was selected through a drop-down box in the computer system which generates the arrest reports. SOF ¶ 30. The charge of "Issuance of Warrant/Class Z" is the drop-down selection utilized for Illinois warrants *regardless* of whether the warrant was issued from within Cook County or from an out-of-county warrant: It is simply the "catch all" warrant charge. SOF ¶ 31. The selection of "725 ILCS 5.0-110-3/ISSUANCE OF WARRANT/Class Z-" is the only applicable selection from the CPD's computerized CLEAR program's drop-down options for Lumar's arrest from which Warren and Vega could have chosen. SOF ¶ 32; *see* Ex. A to Affidavit, identified as Ex. 3, screen shot photo (options: (1) Fugitive from Justice – out of state warrant; (2) Issuance of Warrant (chosen by Warren/Vega); and (3) Child Protection Warrant). Despite numerous depositions and discovery, Plaintiff failed to elicit a shred of evidence that the charge selection of "Issuance of Warrant/Class Z" was an improper charge for Lumar, or even that there was a more applicable charge. Furthermore, not a grain of support has been harvested to support Plaintiff's false contention that the "Issuance of Warrant/Class Z" charge was somehow indicative of a non-bondable offense or that caused Lumar's bond ineligibility in any way. Plaintiff's claim that the arrest report was falsified and fabricated to include "non-bondable charges" is without an ounce of merit.

Plaintiff's complaint further baselessly asserts that "[Sergeant Geyer] falsely reported on Lumar's arrest report that 'Bond Information Not Available' even though the Bond Information was provided by Lee County/LEADS at 4:48 p.m. on August 18, 2016." SAC, at ¶ 33; TAC, at ¶ 36.

First, the LEADS Response generated at 4:48 p.m. did not contain any bond information. SOF ¶ 13. Second, the section "Bond Info" is not completed *until* someone *posts* bond and includes all the details of that *posted* bond. SOF ¶ 33. The "Bond Info" section is left to indicate "No Bond Information Available" for anyone who does *not* bond out, like Lumar, since there is no *posted* bond information to record. SOF ¶ 33. In this case, Plaintiff never bonded out of the police station since he was ineligible pursuant to the <u>GAO</u>/BOP, and therefore the Bond Info section has not been completed. Had Lumar actually bonded out, then and only then would the Bond Info section have been completed to include the details of the posted bond. Ultimately, Plaintiff puts the carriage before the horse. The blank "No Bond Information" did not cause Lumar to not be able to be bonded out, instead Lumar's ineligibility to bond out caused the blank "No Bond Information." Plaintiff has failed to demonstrate that the Bond Info section was improperly prepared, much less that there was a falsification of charge information.

Moreover, Plaintiff has failed to produce any evidentiary support that the fields within the arrest report, other than the description of Lumar's warrant being an outside-Cook County warrant, played any role in Lumar being sent to bond Court.

Furthermore, it was documented that Lumar was going to be sent to bond court independent of Sergeant Geyer's involvement, again evidencing that Lumar was sent to CCDOC for no other reason other than BOP protocol and not because of any discretionary ill will or willful behavior by Sergeant Geyer. On 18 August 2016, Lumar was arrested at approximately 3:58 p.m. SOF ¶ 9. He was transported back to the 11th District police station by Warren and Vega. SOF ¶ 9. At approximately 4:26 p.m., Vega contacted Esteban in the LEADS Department at headquarters to confirm the validity of the warrant. SOF ¶ 10. Esteban then forwarded her LEADS attestation to the Extradition Department at police headquarters. SOF ¶ 16. At 4:43 p.m., Detective John Tripoli of Extradition contacted Lee County via computer to request the warrant and its information. SOF

¶ 17. Within this computer message, Det. Tripoli remarks: "Held at: Chicago Police Department," and that, "Subject will be transported to bond court and then to Cook County jail." SOF ¶ 17. This procedural notification by Extradition to Lee County that Lumar would go to bond court is not only consistent with protocol of the BOP Order and GAO but was generated by Extradition at police headquarters independent of any involvement of Sergeant Geyer. Sergeant Geyer would not have received the extradition paperwork until 5:10 p.m. at the earliest when it was faxed to the 11th District. SOF ¶ 19. Clearly, it was evident *ab initio* irrespective of Sergeant Geyer that Lumar would be required to attend bond court.

Plaintiff's assertion that the lack of a document formally labeled "Intrastate Hold Affidavit" [hereinafter, "IHA"] demonstrates that Lumar was not transferred to CCDOC for bond court pursuant to the GAO/BOP Order, but for other unclear nefarious reasons, is nothing but an argument of smoke and mirrors. Once it was determined that Lumar would have to attend bond court at CCDOC on 19 August 2016 pursuant to the GAO/BOP Order, Lumar's court packet was compiled by the 11th District so that Lumar could be transported. In order for an arrestee to be transported to and accepted by Cook County, the court packet must include certain documents. SOF ¶ 54. Lumar's packet of required documents included his arrest report, criminal history, transport transmittal sheet, and the four-page Extradition facsimile. SOF ¶ 55. In the morning of 19 August 2020, two transport officers arrived to take Lumar and other arrestees to CCDOC. SOF ¶ 53. Transport Officer Dietrice Alexander was responsible for checking all arrestee's packets for completeness and found Lumar's packet was complete with all necessary paperwork required to transport him to and be accepted by CCDOC. SOF ¶ 55.

Defendant Geyer acknowledges that the record contains confusion as to the identification of the IHA, which is identified as being required when processing "Non-Traffic Arrest Warrant Procedures." Ultimately, this specifically formatted document has no consequential bearing on

Lumar's case, since all the required paperwork to send Lumar to bond court was compiled and he was in fact sent to CCDOC for transport to Cook County bond court. Sergeant Geyer is not familiar with a document called an "IHA," nor does he have knowledge that such a document is required to be included in the court packet before transport to CCDOC for bond court. SOF ¶ 58. An IHA form is not required when the actual warrant accompanies the court packet. SOF ¶ 59. The record does suggest, however, that all of the substantive IHA information was in fact included in Lumar's packet, albeit not on a specifically titled document. SOF ¶ 60. Therefore, in substance, if not in a specifically labeled form, all IHA information was included in the Lumar's court packet and sent with Lumar to Cook County. Most importantly, any argument over the specific format of paperwork is irrelevant for purposes of the determination of any constitutional rights violations as they pertain to Lumar since Lumar was successfully sent to bond court, with or without a specifically formatted document entitled "IHA."

The record is devoid of any material fact that would suggest that Lumar was sent to bond court for any reason other than the GAO/BOP Order. To baselessly suggest that Lumar was sent to bond court because of some unknown, unarticulated mal intent by Sergeant Geyer rather than pursuant to the BOP disregards the robust evidentiary record. _Flint_, 91 F. Supp 3d at 1037 _citing Matsushita Elec. Indus. v. Zenith Radio Corp._, 475 U.S. 574, 586 (1986) (to have a genuine dispute about a material fact, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts").

### C. Alternatively, Sergeant Geyer is Entitled to Qualified Immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not clearly violate established statutory or constitutional rights of which a reasonable person would have known." _Pearson v. Callahan_, 555 U.S. 223, 231 (2009). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate

13

the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (U.S. 2015) (quoting *Malley* v. *Briggs*, 475 U.S. 335, 341 (1986)). "Determining whether a defendant state officer is entitled to qualified immunity involves two inquiries: '(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation.' If *either* inquiry is answered in the negative, the defendant official is entitled to summary judgment." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014) (emphasis in original) (internal citation omitted).

Qualified immunity is warranted in favor of Sergeant Geyer as Plaintiff has failed to demonstrate that Lumar's constitutional rights were violated simply because he was required to attend bond court. *See* argument, supra § I.A. Qualified immunity is also warranted in favor of Sergeant Geyer since a constitutional violation was not clearly established in the law. For a right to be clearly established "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In this case, it was not clearly established that it was unconstitutional for Lumar to be sent to bond court pursuant to the GAO/BOP Order, which follows state statute 725 ILCS 5/109-2. To the contrary, all indications would be that it was legal and appropriate to send Lumar to bond court as not only was it a non-discretionary directive by the CPD, but it was also ordered by the Chief Judge of the Circuit Court of Cook County and was set forth in state statute.

The GAO is a valid promulgation of instructions as to court procedures when handling arrests on Illinois intrastate warrants issued out of Cook County. Administrative handling of court dockets is an inherent right of the court and, as subject to Supreme Court Rules, circuit courts may make rules regulating their dockets, calendars, and "business." *Blair v. Macoff*, 284 Ill. App. 3d 836 (1996) citing Section 1-104 of Act 5 of the Illinois Code of Civil Procedure.

It has not been clearly established that it would be unconstitutional for Sergeant Geyer to follow the GAO/BOP Order. The GAO is not a mere suggestion, but instead calls for "arresting agencies" adherence to court procedures and administration. *See* Ex. 12, GAO ("IT IS HEREBY **ORDERED** that, effective July 6, 2015, **arresting agencies** and the circuit clerk **shall** comply with the following procedures:…Defendants taken into custody by an arresting agency located within Cook County on an arrest warrant issued by an Illinois state court outside of Cook County **shall** be required to appear in bond court…") (emphasis added). To this end, IL S. Ct. Rule 21 authorizes court proceedings to compel any person who fails to follow an administrative order of the chief circuit judge.  Ill. S. Ct. R. 21(d). Rule 21(d) sets forth in pertinent part:

> Any proceeding to compel a person or agency other than personnel of the circuit court to comply with an administrative order of the chief circuit judge shall be commenced by filing a complaint and summons and shall be tried without a jury by a judge from a circuit other than the circuit in which the complaint was filed.  The proceedings shall be held as in other civil cases." Ill. S. Ct. R. 21(d).

There is no clearly established law that following the Chief Judge of the Circuit Court of Cook County's administrative Order relating bond procedures would be unconstitutional. Under the well-established principle that judicial power includes the administration of the courts, it is recognized that that the judiciary possesses the constitutional authority to promulgate procedural rules to facilitate the discharge of its duties. *Blair,* 284 Ill. App. 3d at 843. In our case, there is no established law that an individual's constitutional rights are deprived when the GAO/BOP is followed.

There is also no established law that one's right to bond directly from the police district rather than bonding out from Cook County bond court outweighs the court's right to establish bond procedures. *See generally, White v. City of Markham,* 310 F.3d 989 (7th Cir. 2002) (Officers entitled to qualified immunity when it was not clearly established that Plaintiff's rights were greater than landlord who had court order to take possession of property…); *see also Speigel v. City of Chicago,*

106 F.3d 209, 210 (7th Cir. 1997) (Court did not find whether or not a seizure occurred because it ruled that qualified immunity attached when Plaintiff could not show that the police did not have a right to prevent him from entering an apartment that landlord had taken pursuant to court order). As such, Sergeant Geyer is entitled to qualified immunity, and judgment should be entered in his favor, and Count I dismissed in its entirety.

## II. Plaintiff Has Failed to Present Sufficient Evidence to Establish a § 1983 *Monell* Claim Against the City (Count II).

To recover under *Monell*[3], a plaintiff must present evidence raising a triable issue of fact that (1) he suffered a deprivation of a constitutional right, (2) as a result of an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was (3) the moving force behind the constitutional deprivation. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021).

### A. Lumar Did Not Suffer a Constitutional Injury.

The first step Plaintiff must take in proving a *Monell* claim is to establish that she suffered a constitutional injury. *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994). Plaintiff's claim fails at this first step because, as set forth *supra*, at § I.A., Lumar's overnight detention on the valid out-of-county warrant pending his appearance in bond court was not unlawful. Lumar's initial arrest and detention was based on probable cause (*see* dkt. 116, at 11-12) and his brief detention for the purpose of bringing him to bond court was not unreasonable. Absent a showing that Lumar's detention was unconstitutional, Plaintiff's *Monell* claim must fail. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also* *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) (to establish municipal liability and prevail on his *Monell* claim, court held it was not enough for Petty to allege

---

[3] *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690–91 (1978).

that CPD's alleged policy injured him, he must establish that *he* suffered a constitutional injury); *see also Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010) ("a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee.").

**B.** **There is No Evidence the City Had Either an Express or Implicit Policy of Wrongfully Detaining Individuals Arrested by CPD on Out-of-County Warrants.**

Plaintiff alleges the City had both an express policy (the BOP Order) and widespread practice of wrongfully detaining persons arrested on out-of-county warrants to be taken to bond court. TAC ¶¶ 103-104, 107. Plaintiff's *Monell* claim fails under both theories.

"The express policy theory applies, as the name suggests, where a policy explicitly violates a constitutional right when enforced." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). The policy at issue is the BOP Order, which requires persons arrested on arrest warrants issued by an Illinois state court, other than Cook County, to appear in bond court. SOF ¶ 34. The BOP Order requires that, after local processing, such persons be transferred to the local holding facility for bond court. SOF ¶ 35. This policy does not support Plaintiff's *Monell* claim because there is nothing in the language of the BOP Order that explicitly violates a constitutional right when enforced. There is nothing patently unconstitutional about requiring an individual arrested on a valid warrant from outside of Cook County to be held until he or she can appear in bond court.

Absent an express policy, *Monell* liability can be imposed where the plaintiff introduces "evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Phelan v. Cook Cnty.*, 463 F.3d 773, 790 (7th Cir. 2006). "To succeed on this *de facto* custom theory, the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) citing *Jackson v. Marion Cty.*, 66 F.3d 151, 152 (7th Cir. 1995). "[T]here is no clear consensus as to how frequently such conduct

must occur to impose *Monell* liability, except that it must be more than one instance, or even three." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (citations and internal quotations omitted); *see also Calhoun*, 408 F.3d at 380 (a widespread practice claim requires proof of more than one incident). "Isolated" acts committed by non-policymaking officials do not amount to a "custom," which "implies a habitual practice of a course of action that characteristically is repeated under like circumstances." *Sims v. Mulcahy*, 902 F.2d 524, 542 (7th Cir. 1990) (*quoting Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986)), *cert. denied, Sims v. Mulcahy*, 498 U.S. 897 (1990).

There is no evidence in this case to create a genuine issue of material fact to support the existence of a widespread, enduring practice that violated constitutional rights in a systematic manner. Plaintiff alleges the "Chicago Police Department engaged in a widespread practice in which it would arbitrarily and capriciously allow some persons arrested on Illinois warrants issued out of Cook County to post bond at the police station..." TAC at ¶ 107. Plaintiff also alleges the City of Chicago police officers "arbitrarily" enforce the BOP. TAC at ¶ 108. However, Plaintiff does not allege a pattern, or practice of officers denying similarly situated detainees the right to bond out. Nor is Plaintiff able to present evidence of other similarly situated individuals whose constitutional rights have been violated as a result of the City's practice of sending arrestees on out-of-county warrants to bond court. In other words, Plaintiff has failed to develop a pervasive widespread practice of constitutional practices stemming from the City's enforcement of the BOP. As a result, Plaintiff's *Monell* claim likewise fails to the extent it is based on a *de facto* or widespread practice theory.

### C. The Evidence Does Not Support a Finding that the BOP Order Was Enacted and Enforced with Deliberate Indifference.

Plaintiff's *Monell* claim also fails because she cannot establish the requisite degree of culpability on the City's part—namely, that the alleged municipal practices were carried out with "deliberate indifference" to their known or obvious consequences. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a

municipal actor disregarded a known or obvious consequence of his action." *Lapre v. City of Chicago*, 911 F.3d 424, 434 (7th Cir. 2018) (citing *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011)).

Assuming, *arguendo*, Plaintiff could establish that Lumar's detention was the result of unconstitutional conduct, a single instance does not demonstrate the City's deliberate indifference to the constitutional rights of all arrestees on out-of-county warrants for whom the BOP Order applies. *See Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 531 (7th Cir. 2000) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy."). As set forth *supra* § II.B., Plaintiff has presented no evidence of other similarly situated individuals whose constitutional rights have been violated as a result of enforcement of the City's policy of sending arrestees on out-of-county warrants to bond court. As a result, there is no evidence the City knew or should have known that enactment of the BOP Order requiring CPD officers to take individuals to bond court following arrest on valid out-of-county warrants, would violate their constitutional rights.

Because Plaintiff is unable to present any evidence to a jury that would prove any required element of a §1983 *Monell* claim, Count II must be summarily dismissed.

## III. If City Defendants' Detention of Lumar Based on the BOP was Unlawful, the Detention Ended at the Moment Probable Cause Arose to Arrest Lumar for the Narcotics Charge.

City Defendants submit that probable cause existed for Lumar's arrest pursuant to the valid warrant and the duration of his detention was reasonable under the circumstances. *See supra*, at § I.A. However, if this Court finds that Lumar's lawful detention based on the warrant arrest became unlawful at the moment he was deemed ineligible to post bond directly from the station, any such unlawful detention ceased at the moment CPD Officers had probable cause to arrest Lumar for possession of narcotics. *See* Dkt. 116, p. 19 (Court finds that Chicago Police had probable cause to

arrest Lumar on 19 August 2016 after being notified by Cook County Sheriff Officer Wlodarski that Lumar possessed narcotics).

A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007). An arrested individual is no more seized when he is arrested on multiple grounds rather than one. *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (2007). As long as there is a reasonable basis for the arrest, the seizure of that individual is justified on that basis *even if* any other grounds cited are flawed. *Id.* referring to *Devenpeck v. Alford*, 543 U.S. 146, 153-155 (2004) (probable cause to believe that a person has committed any crime will preclude false arrest even if person is arrested on additional or different charges for which there was no probable cause). A seizure pursuant to arrest is lawful under the Fourth Amendment, even if one ground is valid (narcotics arrest), and other grounds are flawed (detention due to ineligibility to post bond). *Holmes*, 511 F.3d at 682; *see also Swanigan v. City of Chicago*, 881 F.3d 577, 584 (7th Cir. 2018) *citing Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989) (a person is either seized or not). In this case, Lumar was lawfully seized by CPD officers on 19 August 2016 based on the existence of probable cause to arrest Lumar on narcotics charges. Dkt. 116 (Court finds probable cause existed to arrest Lumar on narcotics charges based on statements from Sheriff Officer Wlodarski). Therefore, even if Lumar was unlawfully seized prior to CPD turning his custody over to Cook County, he was then lawfully seized pursuant to the existence of probable cause to arrest for narcotics when he was returned to the 11th District on 19 August 2016. Consequentially, any claim for unlawful detention, including any claim for damages following his drug arrest in the Cook County lockup, must fail against the City Defendants.

## IV. Lumar's Voluntary Act of Suicide Breaks Any Causal Link Between the Alleged Negligent Conduct and His Death.

Even if an issue of fact exists related to the lawfulness of Lumar's detention, Plaintiff cannot produce admissible evidence from which a jury could reasonably find that Lumar's death was caused

by City Defendants. Both 42 U.S.C. § 1983 and the Illinois wrongful death statute (740 ILCS 180/1, *et seq*) require evidence of causation to survive summary judgment. Plaintiff claims City Defendants' actions under each theory of liability caused Lumar's death. *See* TAC ¶¶ 91 (Count I), 120-21 (Count II), 316 (Count IX). Because Plaintiff cannot produce any evidence of causation, there is no basis for a reasonable jury to find for Plaintiff on this key element. Accordingly, Plaintiff's claims against the City Defendants must be dismissed.

The Illinois wrongful death statute allows a decedent's estate to sue a party whose alleged "wrongful act, neglect or default" caused the death. 740 ILCS 180/1. The proximate cause element has two components: cause in fact and legal cause. *Turcios v. The DeBruler Co.*, 2015 IL 117962, ¶ 23. "Cause in fact" is established where there is reasonable certainty that the injury would not have occurred "but for" the defendant's conduct or where a defendant's conduct was a "substantial factor" in bringing about the harm. *Id.* A defendant's conduct under the "but for" test, "is not the cause of an event if the event would have occurred without it." *Id.* Legal cause is established only when it can be said that the injury was reasonably foreseeable. *Stanphil v. Ortberg*, 2018 IL 122974, ¶ 34. In other words, legal cause requires facts suggesting Lumar's suicide was a likely result of City Defendants' conduct. *See Stanphil*, at ¶ 35 (where plaintiff can show that the suicide was a reasonably foreseeable result of the defendant's conduct, liability will attach). The test to determine whether an injury is "reasonably foreseeable" is objective. *Id.* The question is what a *reasonable person* would see the likely result to be. *Id.* (citations omitted). These common law principals of causation also apply to Plaintiff's constitutional tort claim under § 1983. *County of Los Angeles, Cal. v. Mendez*, 137 S. Ct. 1539, 1548-49 (2017).

In cases involving suicide, the general rule is that the injured party's voluntary act of suicide is an independent intervening act, which is unforeseeable as a matter of law and breaks the causal link between any alleged negligent conduct and the injury. *Stanphil*, 2018 IL 122974, ¶ 35; *Turcios*,

2015 IL 117962, ¶ 20. "It is well established under Illinois law that a plaintiff may not recover for a decedent's suicide following a tortious act because suicide is an independent intervening event that the tortfeasor cannot be expected to foresee." *Johnson v. Wal-Mart Stores*, 588 F.3d 439, 442 (7th Cir. 2009) (citing *Crumpton v. Walgreen*, 871 N.E.2d 905, 910 (1st Dist. 2007); *see also Jutzi-Johnson v. U.S.*, 263 F.3d 753, 755 (7th Cir. 2001) (When failure to prevent suicide is claimed to be negligent, the issue of foreseeability is analyzed under the rubric of "supervening cause" and the general rule is that the negligent actor is not liable for the victim's decision to kill himself.).

The undisputed evidence does not support a finding that City Defendants' actions caused Lumar's death. Lumar was arrested by CPD in the afternoon of August 18, 2018 on a valid warrant and transported to the 11th District. SOF ¶ 9. Lumar was detained in the 11th District until he could be transported to Cook County for bond court. As part of processing into the 11th District after his arrest, Lumar was searched, photographed, and fingerprinted. SOF ¶¶ 20, 25. He was asked about any medical conditions and medications and relayed only that he takes medication for asthma. SOF ¶ 24. Lumar denied prior suicide attempts. SOF ¶ 24. There is no evidence Lumar said or did anything at that time to suggest he was suicidal. Hours later, at approximately 12:08 a.m. on August 19, 2016, officers arrived to transport Lumar to Mt. Sinai Hospital for treatment related to his asthma and shortness of breath. SOF ¶ 46. The hospital staff did not provide the officers with any indication that Lumar was suicidal and he was returned to the 11th District from the hospital at approximately 7:00 a.m. SOF ¶¶ 50, 52. At 8:40 a.m., Lumar was transported to the CCDOC to be held in the custody of the Cook County Sheriff pending bond court. SOF ¶ 53. Lumar was released back into CPD custody a second time after CCSO correctional officers reportedly determined Lumar to be in possession of drugs in their holding facility. SOF ¶ 62. He was returned to the 11th District pursuant to his narcotics arrest in the Cook County lockup. SOF ¶ 63. There is no evidence that when officers returned to CCDOC to pick up Lumar that he was exhibiting any behavior from

22

which the CPD officers knew or should have known he was suicidal. At approximately 11:04 a.m., Lumar was placed into a CPD 11th District holding cell. SOF ¶ 66. He was found hanging in his cell by his shirt at 11:15 a.m. SOF ¶ 73.

Proximate cause is a question of fact for the jury unless there is no material issue regarding the matter or only one conclusion is clearly evident. _Williams v. Univ. of Chicago Hospitals_, 179 Ill.2d 80, 88 (1997). Here, Lumar's suicide attempt is a supervening cause of the eventual loss of his life, breaking the chain of responsibility that would otherwise link the loss to the alleged negligent acts. Because there is no evidence to support a finding that Lumar's suicide attempt and resulting injuries were reasonably foreseeable, Plaintiff's claims must fail.

Plaintiff cannot meet her burden to show the City Defendants' actions caused Lumar's death. Accordingly, all of Plaintiff's claims against City Defendants (Counts I, II, and IX) must fail.

## V. Plaintiff's Wrongful Death Claim (Count IX) Fails on Other Grounds.

In order to prove a claim under the Wrongful Death Act (740 ILCS 180/1, _et seq._), Plaintiff must establish "(1) defendant owed a duty to decedent; (2) defendant breached that duty; (3) the breach of duty proximately caused decedent's death; and pecuniary damages arising therefrom to persons designated under the Act." _Thompson v. City of Chicago_, 472 F.3d 444, 457 (7th Cir. 2006) (_quoting Leavitt v. Farwell Tower Ltd. P'ship_, 625 N.E.2d 48, 52 (1993)). In support of her claim, Plaintiff alleges in her TAC that the City through its employee, Detention Aide Jonathan Errum, knew Lumar was in need of immediate medical care as he knew Lumar was suicidal, and willfully and wantonly failed to take reasonable actions to summon medical care, failed to put Lumar on suicide watch and instead placed him in a cell unattended. TAC, ¶ 311. However, there is no evidence in the case to support a finding that Errum knew or should have known Lumar was suicidal and in need of immediate medical care. Alternatively, Plaintiff's wrongful death claim is barred by the Illinois Tort Immunity Act.

23

### A. There is No Evidence CPD Detention Aide Errum Knew or Should Have Known that Lumar Was at a Substantial Risk for Suicide.

Detention Aide Jonathan Errum ("Errum") was assigned to the lockup on 19 August 2016 when Lumar returned from the CCDOC. SOF ¶ 65. Errum buzzed Lumar back into lock-up when Lumar returned from Cook County at approximately 10:55 a.m. SOF ¶ 66. Within five minutes of buzzing Lumar into lock-up, Errum secured Lumar in a cell 11:04. SOF ¶ 66. During Errum's brief interaction with Lumar, Lumar repeatedly stated "this is bullshit" and appeared agitated and upset about being back at the lock-up. SOF ¶ 67. Errum did not perceive Lumar's agitation as out of the ordinary, as Errum testified that "pretty much everyone coming into the jail is agitated as no one likes to be in jail." SOF ¶ 68. Errum told Lumar to calm down; asked Lumar if he wanted a phone call, which Lumar refused; and walked Lumar to his cell without incident. SOF ¶ 69. Lumar never told Errum that he was suicidal and did not report any prior suicide attempts to Errum. SOF ¶ 70. Lumar did not appear to be under the influence of drugs or alcohol, nor did he show signs of drug or alcohol withdrawal. SOF ¶ 71. Lumar did not appear despondent during his interactions with Errum. SOF ¶ 72. Lumar did not report any serious mental problems, nor did Errum feel that Lumar exhibited any signs that Lumar had any mental health issues or that he may attempt suicide. SOF ¶ 72.

The undisputed facts do not support a finding that Errum was on notice that Lumar posed a risk of self-harm or suicide. Errum's brief interaction with Lumar reflects a detainee who was unhappy about being arrested and returned to the 11th District lockup for possession of a controlled substance while in the CCSO lockup. In Errum's experience, Lumar's reaction was not unusual. SOF ¶ 68. However, even if Lumar's behavior could be characterized as "bizarre or irrational," such evidence is insufficient to put Errum on notice that Lumar was suicidal. *See Estate of Novak*, 226 F.3d at 530 (strange or bizarre behavior is insufficient to put a jail official on notice of

24

potential suicidality). Accordingly, Plaintiff's wrongful death claim (Count IX) against the City must be dismissed.

### B. Alternatively, Plaintiff's Wrongful Death Claim is Barred by the Tort Immunity Act.

Plaintiff's wrongful death claim is also barred by the Local Governmental and Governmental Employees Tort Immunity Act (the "Tort Immunity Act"). 745 ILCS 10/2-204, 10/2-202, and 10/4-103. The statute protects public officials from liability for conduct within the scope of their employment "unless such act or omission constitutes willful or wanton conduct." 745 ILCS 10/2-204 and 10/2-202. Conduct is "willful and wanton" under the Act if it shows a "conscious disregard for the safety of others." 745 ILCS 10/1-210. The Seventh Circuit has likened this standard to the deliberate indifference standard. *Williams v. Rodriguez*, 509 F.3d 392, 404– 05 (7th Cir. 2007). Plaintiff alleges that Errum knew or should have known Lumar was in need of immediate medical care. TAC ¶ 311. However, as set forth *supra* at V.A., this allegation is unsupported by the record. Because there is no evidence to support that Errum, or any City employee acted with a conscious disregard for Lumar's safety, the City is entitled to immunity under the Tort Immunity Act.

Plaintiff also alleges that "Errum's actions in failing to have a cut down/rescue tool on hand deprived Lumar of oxygen needed to survive" and was the proximate cause of his injuries and ultimate death. TAC ¶ 312. However, this Court struck Plaintiff's allegations regarding "post-hanging claims" as untimely (*See* dkt. No. 306, at 2) and there is no evidence in the record to support that the City had a duty to equip Errum with a cut down/rescue tool. Nonetheless, the allegation fails because the Tort Immunity Act. Section 4–103 expressly immunizes local public entities and public employees from claims arising out of the failure to provide sufficient equipment, personnel, supervision or facilities therein. 745 ILCS 10/4–103. Although it is a disputed fact as to whether Errum had a cut down/rescue tool "on hand," even accepting this fact as true for purposes of

summary judgment, the City is immune from liability to the extent it is based on allegations that the City failed to sufficiently equip Errum to cut down Lumar.

Accordingly, the City is entitled to summary judgment on Plaintiff's wrongful death claim (Count IX).

## CONCLUSION

For the reasons set forth above, City Defendants request this Court enter judgment in their favor and against Plaintiffs on each claim and for any other relief this Court deems appropriate.

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2021, I served the foregoing City Defendants'
Memorandum of Law in Support of Their Motion for Summary Judgment on all counsel of record
via the Court's (ECF) electronic filing service.


s/Elizabeth A. Ekl