**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LISA ALCORN, as Plenary Guardian of the Estate and Person of TYLER LUMAR, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:17-cv-05859 |
| v. | ) ) | Honorable Judge Virginia M. Kendall |
| THE CITY OF CHICAGO, et al., | ) ) | Magistrate Judge Sunil R. Harjani |
| Defendants. | ) ) | |

**CITY DEFENDANTS' REPLY IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

/s/ Elaine C. Davenport
Special Assistant Corporation Counsel
Elaine C. Davenport
Hugh O'Donnell
Sanchez Daniels & Hoffman LLP
333 West Wacker Drive, Suite 500
Chicago, IL 60606
(312) 641-1555

*Attorneys for Defendant Sergeant Kevin Geyer*

CELIA MEZA
Corporation Counsel of the City of Chicago

/s/ Elizabeth A. Ekl
Special Assistant Corporation Counsel
Terrence M. Burns
Elizabeth A. Ekl
Katherine C. Morrison
Reiter Burns LLP
311 South Wacker Drive, Suite 5200
Chicago, IL 60606
312-982-0090

*Attorneys for Defendant City of Chicago*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

I.    Plaintiff's Claim for Improper Detention against Sergeant Geyer (Count I) Must be Denied ........................................................................................................................ 1

    A.    Sergeant Geyer Did Not Violate Tyler Lumar's Constitutional Rights. ......................... 1

    B.    Sergeant Geyer is Entitled to Qualified Immunity ............................................. 3

II.    Plaintiff Has Failed to Establish a *Monell* Claim (Count II) Against the City ............................. 4

    A.    Plaintiff Did Not Suffer a Constitutional Injury ................................................. 4

    B.    Plaintiff's *Monell* Claim Also Fails because there is No Evidence the City Had an Express Policy of Wrongfully Detaining Individuals Arrested by CPD on Out-of-County Warrants ................................................................................... 5

    C.    Illinois Law Does Not Support a Finding That the BOP Was Unconstitutional ......... 6

    D.    The General Administrative Order was Enacted by the Chief Judge of Cook County and was Valid .................................................................................. 9

    E.    The City Cannot be Liable Under an Express Theory of *Monell* for Enforcing an Order of the Chief Judge ............................................................................ 10

    F.    Plaintiff Abandoned her *de facto* or Widespread Practice Theory of Liability ............. 11

III.    If City Defendants' Detention of Lumar Based on the BOP was Unlawful, the Detention Ended at the Moment Probable Cause Arose to Arrest Lumar for the Narcotics Charge ...................................................................................................... 11

IV.    Plaintiff Failed to Present Any Evidence to Refute That Lumar's Voluntary Act of Suicide Breaks Any Causal Link Between the Alleged Negligent Conduct and His Death .... 12

V.    Plaintiff Concedes Plaintiff's Wrongful Death Claim is not Based on the Actions of Detention Aide Errum (Count IX) ................................................................................ 16

CONCLUSION ................................................................................................................ 17

i

# TABLE OF AUTHORITIES

**Cases:**                                                        **Page(s):**

*Bethesda Lutheran Homes & Services, Inc. v. Leean,*
  154 F.3d 716 (7th Cir. 1998) ................................................................. 10, 11

*City of Canton v. Harris,*
  489 U.S. 378, 388 (1989) ........................................................................ 9

*Crumpton v. Walgreen Co.,*
  871 N.E.2d 905 (Ill. App. 1st Dist. 2007) ........................................... 13, 14

*Duff v. Grandberry,*
  2017 WL 2424236 (N.D. Ill. June 5, 2017) ............................................ 5

*Gentry v. Duckworth,*
  65 F.3d 555 (7th Cir. 1995) ..................................................................... 2

*Hankins v. Kappa Alpha Sorority, Inc.,*
  447 F. Supp. 3d 672 (N.D. Ill. 2020) .................................................. 13, 14

*Jenkins v. Keating,*
  147 F.3d 577 (7th Cir. 1998) ................................................................... 2

*Johnson v. Wal-Mart Stores,*
  588 F.3d 439 (7th Cir. 2009) ................................................................. 12

*Jutzi-Johnson v. U.S.,*
  263 F.3d 753 (7th Cir. 2001) ................................................................. 13

*La Bombarbe v. Phillips Swager Associates Inc.,*
  130 Ill. App. 3d 896 (4th Dist. 1985) ................................................ 12, 13

*Lopez v. Vidljinovic,*
  2016 WL 4429637 (N.D. Ill. Aug. 22, 2016) ........................................... 5

*Malec v. Sanford,*
  191 F.R.D. 581 (N.D. Ill. 2000) ............................................................ 14

*Mervyn v. Nelson Westerberg, Inc.,*
  142 F. Supp. 3d 663 (N.D. Ill. 2015) .................................................... 15

*Pearson v. Callahan,*
  555 U.S. 223 (2009) ................................................................................. 3

*Petty v. City of Chicago,*
  754 F.3d 416 (7th Cir. 2014) ................................................................... 4

ii

*Portis v. City of Chicago,*
 613 F. 3d 702 (7th Cir. 2010) .................................................................. 9

*Quinones v. City of Evanston,*
 58 F.3d 275 (7th Cir. 1995) .................................................................. 11

*Rasche v. Beecher,*
 336 F.3d 588 (7th Cir. 2004) .................................................................. 6

*Raymond v. Ameritech, Corp.,*
 442 F.3d 600 (7th Cir. 2006) .......................................................... 14, 15

*Sallenger v. City of Springfield Ill.,*
 630 F.3d 499 (7th Cir. 2010) .................................................................. 4

*Snyder v. King,*
 745 F.3d 242 (7th Cir. 2014) ................................................................ 10

*Stanphill v. Ortberg,*
 2018 IL 122974 .................................................................................... 16

*Stevo v. Frasor,*
 662 F.3d 880 (7th Cir. 2011) ................................................................ 15

*Surplus Store Exchange, Inc. v. City of Delphi,*
 928 F.2d 788 (1991) ......................................................................... 6, 11

*Virginia v. Moore,*
 553 U.S. 164 (2008) .............................................................................. 9

*Wilbon v. Plovanich,*
 67 F. Supp. 3d 927 (N.D. Ill. Sept. 9, 2014) .......................................... 2

*Wilson v. Warren City, Illinois,*
 830 F.3d 464 (7th Cir. 2016) .................................................................. 2

**Statutes:**

725 ILCS 5/109-2 ..................................................................... 3, 6, 7, 8, 9

725 ILCS 5/110-7 .................................................................................... 8

IL S. Ct. Rule 21 .................................................................................. 10

## INTRODUCTION

Defendants City of Chicago ("City") and Defendant Sergeant Kevin Geyer ("Defendant Geyer") (collectively "City Defendants") moved for summary judgment because Plaintiff failed to demonstrate: (1) Tyler Lumar ("Lumar") was wrongfully detained in the hours following his arrest; and (2) City Defendants' conduct (including the City's policy and practices) caused Lumar's suicide attempt and subsequent death. (Dkt. 348, 349). Plaintiff filed a cross-motion for summary judgment alleging she is entitled to summary judgment because Lumar was not allowed to post bond at the police station immediately following his arrest on a valid out-of-county warrant. (Dkt 345). Plaintiff's Response to City Defendants' Motion for Summary Judgment repeats the same arguments she makes in her Motion for Summary Judgment. See Dkt. 345, 366.

The facts in this case are straightforward and undisputed. In fact, Plaintiff "admitted" 74 out of 76 of the City Defendants' statement of facts. (Dkt. 365). The parties agree that the reason Lumar was sent to bond court was because City Defendants followed the GAO issued by Chief Judge Evans. The sole issue is whether the City Defendants' enforcement of BOP 15-0174 ("BOP" or "BOP Order") resulted in a violation of Lumar's Fourth Amendment rights. For the reasons set forth below (and in City Defendants' Motion and Memorandum for Summary Judgment, Dkt. 348, 349), City Defendants are entitled to summary judgment.

## ARGUMENT

### I.     Plaintiff's Claim for Improper Detention against Sergeant Geyer (Count I) Must be Denied.

#### A.     Sergeant Geyer Did Not Violate Tyler Lumar's Constitutional Rights.

Sergeant Geyer did not violate Lumar's constitutional rights, and as such judgment is warranted in his favor. First, Lumar did not suffer a constitutional violation stemming from any delay in the processing of his arrest. Lumar was arrested, processed, and placed into CPD custody until he could attend bond court before a judge, pursuant to the non-discretionary BOP. See Dkt. 349, at I.A.

1

In fact, Lumar was sent to the first available bond court after his arrest. As set forth in the City Defendants' motion for summary judgment, response to Plaintiff's cross-motion for summary judgment, and as iterated *infra* in paragraph II.A., there was no unreasonable delay, or delay for the sake of delay, amounting to a violation of the Fourth Amendment. As such, summary judgment is warranted as to Sergeant Geyer.

Secondly, Sergeant Geyer was not personally responsible for the purported deprivation of Lumar's rights in order to be held liability under Section 1983. *Wilson v. Warren City, Illinois*, 830 F.3d 464, 469 (7th Cir. 2016). A defendant is personally responsible "if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent." *Id. quoting Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Plaintiff concedes that Lumar's transfer to CCDOC to attend bond court was not a result of discretionary decision-making by Sergeant Geyer, but rather was solely the result of the City's non-discretionary administrative policy that Sergeant Geyer was required to implement. Sergeant Geyer's processing of Lumar's transfer to CCDOC bond court was merely clerical in nature. *See Wilbon v. Plovanich*, 67 F. Supp.3d 927, 943-944 (N.D. Ill. Sept. 9, 2014) (Aspen, J.) (defendant officer that only participated in post-arrest paperwork did not have sufficient personal involvement in causing or participating in plaintiff's arrest to be liable for false arrest); *Jenkins v. Keating*, 147 F.3d 577, 583-584 (7th Cir. 1998) (granting summary judgment on claim for false arrest to defendant officer who only prepared post-arrest paperwork). It is uncontested that Sergeant Geyer had no authority to decide whether Lumar should or should not attend bond court at CCDOC, and it is uncontested that Lumar went to bond court at CCDOC only because the City's BOP mandated it. Therefore, summary judgment is warranted as to Sergeant Geyer as he lacked the requisite personal involvement in Lumar's claimed deprivation of rights stemming from his requirement to attend bond court.

**B. Sergeant Geyer is Entitled to Qualified Immunity.**

Sergeant Geyer is entitled to qualified immunity as Plaintiff has failed to demonstrate that Plaintiff's constitutional rights were violated and that Sergeant Geyer should have known that processing the BOP administrative order as compelled of him violated clearly established statutory or constitutional rights. *Pearson v. Callahan*, 555 U.S. 223 (2009). First, for the same reasons as set forth in City Defendants' summary judgment motion, response to Plaintiff's cross-motion for judgment, and in argument II.A. *infra*, Lumar did not suffer a constitutional deprivation by having to attend bond court at CCDOC. As such, Sergeant Geyer is entitled to qualified immunity.

Second, Plaintiff failed to demonstrate that Sergeant Geyer, and any reasonable officer in his place, should have known that he was violating clearly established law by complying with the BOP directive. *See* City Def.s' summary judgment (dkt. 348, 349), and response to Plaintiff's cross-motion for judgment (dkt. 367). Although Plaintiff cites to cases asserting that "delay" in processing arrestees may give rise to a constitutional violation, Plaintiff fails to cite to any case or authority demonstrating that it is clearly established that the BOP, or the requirement that out-of-county warrant arrestees be processed through CCDOC, is unconstitutional. There is no such authority. Furthermore, all indications to Sergeant Geyer or any other reasonable officer are that following the BOP was lawful. The directive was prepared by the Bureau of Patrol, and he was instructed to follow it or face reprimand. A reasonable officer would suspect that such a directive from superiors was lawful. Furthermore, the BOP is directly derived from the GAO issued by the presiding judge of the Circuit Court of Cook County. It would be unreasonable to believe that a police desk sergeant should know that an order issued by the presiding judge was unlawful. Lastly, the GAO and BOP are consistent with the Illinois statute for Persons Arrested in Another County (725 ILCS 5/109-2). *See Infra* II.C. All authority establishes that Sergeant Geyer had no reason to believe that processing Lumar to CCDOC bond court was unlawful. As Plaintiff has failed to demonstrate that Sergeant Geyer was

aware that he was violating clearly established law, Sergeant Geyer is entitled to qualified immunity and summary judgment is warranted in his favor.

## II.     Plaintiff Has Failed to Establish a *Monell* Claim (Count II) Against the City.

Plaintiff fails to establish that Lumar suffered a constitutional injury, as required for Plaintiff's *Monell* claim in Count II. Plaintiff's *Monell* claim also fails because Plaintiff has not shown that the City's enforcement of an express policy caused his alleged constitutional injuries

### A.     Plaintiff Did Not Suffer a Constitutional Injury.

As set forth in City Defendants' Summary Judgment Memorandum, the first inquiry in any § 1983 suit is whether the plaintiff has been deprived of a Constitutional right. *See* Dkt. 349, at §§ I.A. and II.A., which are incorporated as if fully stated herein. Plaintiff's claim fails at this first step because Lumar's detention pending his appearance in bond court was not unconstitutional. *See Petty v. City of Chicago, 754 F.3d 416, 424 (7th Cir. 2014)* (to establish municipal liability and prevail on his *Monell* claim, plaintiff must establish that *he* suffered a constitutional injury); *see also Sallenger v. City of Springfield Ill., 630 F.3d 499, 504 (7th Cir. 2010)* ("a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee.").

Plaintiff argues the BOP was enforced against Tyler Lumar by Sergeant Geyer and caused a legally unreasonable, excessive detention in violation of the Fourth Amendment. Dkt. 366, at 5. Plaintiff alleges a needless delay, or delay for delay's sake, violates the Fourth Amendment. However, there was no needless delay, or delay for delay's sake in this case. As discussed in City Defendants' Memorandum, Lumar was arrested, processed, and placed into CPD custody until he could attend bond court before a judge, pursuant to the BOP. See Dkt. 349, at I.A. Lumar's total time in CPD custody was approximately 17 hours, seven of which included time spent being transported to/from Mt. Sinai and receiving treatment. *Id.* Lumar returned back to the 11th District from Mt. Sinai at approximately 7:00 a.m. on August 19, 2016 and was transported to the custody of the CCSO shortly

thereafter at approximately 8:40 a.m. SOF ¶¶ 52, 53. The undisputed facts demonstrate Lumar was held for a reasonable period of time while he was processed by CPD and cared for at Mt. Sinai before transport to the custody of CCSO to be taken to bond court where a judicial determination of bond would be made. Accordingly, Plaintiff fails to establish facts that entitle her to summary judgment against the City.

> **B.** **Plaintiff's *Monell* Claim Also Fails because there is No Evidence the City Had an Express Policy of Wrongfully Detaining Individuals Arrested by CPD on Out-of-County Warrants.**

Plaintiff alleges the City of Chicago maintained and enforced an express unconstitutional policy in reference to the BOP. Dkt. 366, at 10; *see also* TAC ¶¶ 103-104, 107. However, Plaintiff has not identified any specific language in the policy that explicitly violates arrestees' constitutional rights. This failure is fatal to her express policy claim. *See Duff v. Grandberry*, 2017 WL 2424236, at *3 (N.D. Ill. June 5, 2017) (explaining that the plaintiff must point to specific language in the defendant's policy that is constitutionally suspect to prevail on an express policy theory); *see also Lopez v. Vidljinovic*, 2016 WL 4429637, at *3 (N.D. Ill. Aug. 22, 2016) ("[Plaintiff] never identifies specific language in any of these policies which is 'explicitly' violative of a person's constitutional rights when applied.").

The BOP requires persons arrested on warrants issued by an Illinois state court, other than Cook County, to appear in bond court. The BOP directs that after local processing,

> all persons arrested on an arrest warrant issued by an Illinois state court outside of Cook County will be transported to the appropriate holding facility as determined by Special Order S06-12-02 "Non-Traffic Arrest Warrant Procedures. *See* City Def.s' Ex. 11.

Special Order S06-12-02 directs that the district station supervisor ensure that persons arrested on warrants issued in the State of Illinois, if not picked up by the issuing agency, appear *at the next regularly scheduled court session*. City Def.s' Ex. 34, at ¶ IV.C.1 (emphasis added). Plaintiff cites no authority to support a finding that the BOP's requirement that individuals be taken to bond court for a judicial determination of bond status and collection of the appropriate bail amount by the clerk of the court

is unconstitutional. Nor does she cite any authority to support her suggestion that bail must be made at the arresting police station. Indeed, she can point to no language in the BOP that is explicitly violative of an individual's constitutional rights when applied.

Plaintiff argues that enforcement of the BOP's requirement that Lumar be brought before a judge was unnecessary because "Lumar did not dispute he was the individual named in the warrant" and he could have posted $50 bail and been released at the station. Dkt. 366, at 8. Essentially, she argues that enforcement of the policy against *Lumar* was unreasonable under the circumstances of *his* arrest. Courts have specifically rejected this approach unless an omission in the policy caused the constitutional deprivation, which Plaintiff does not argue here. *See Rasche v. Beecher*, 336 F.3d 588, 599 (7th Cir. 2004); *Calhoun*, 408 F.3d 375, 380 (7th Cir. 2005).

Further, in order for a § 1983 plaintiff "to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights," the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Rasche, at 599* (citation omitted). Plaintiff's argument fails here too because there is no evidence in the record to support that unreasonable detentions are the known or obvious consequence of requiring individuals to go to bond court for a judicial determination of bail. *See* City Def.s' Mem., Dkt. 349 at § II.C.

**C.** **Illinois Law Does Not Support a Finding That the BOP Was Unconstitutional.**

Plaintiff argues that although "mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability" Dkt. 366, at 8-9 (citing *Surplus Store Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (1991)), violation of a state statute gives rise to a § 1983 violation "if the right encompassed in the state statute is guaranteed under the United States Constitution." *Id.*, at 9. She asserts that the BOP is unconstitutional because it violates the Illinois statute for Persons Arrested in Another County (725 ILCS 5/109-2) which "undoubtedly" protects rights guaranteed by the Fourth

Amendment. *Id.* Plaintiff's argument fails because she cannot point to any constitutional safeguard in the state statute that is absent from the GAO or the BOP.

Plaintiff correctly notes that the Illinois statute "guarantees Fourth Amendment rights because it directs that the arrestee be brought before a judge in the county of arrest without unnecessary delay and guarantees that the arrestee can contest probable cause to detain them." Dkt. 366, at 14. The referenced provisions, are contained in section (a), which states:

> any person arrested in a county other than the one in which a warrant for his arrest was issued shall be taken without unnecessary delay before the nearest and most accessible judge in the county where the arrest was made or, if no additional delay is created, before the nearest and most accessible judge in the county from which the warrant was issued.

725 ILCS 5/109-2(a). These constitutional provisions are also present in the GAO and BOP and, therefore, do not support a finding that the BOP is unconstitutional. *See supra*, at II.B; City Def.s' Ex.s 11 (BOP) (incorporating by reference by Special Order S06-12-02 "Non-Traffic Arrest Warrant Procedures) and 12 (GAO).

Plaintiff's argument also fails to the extent it is premised on section (b) of the Illinois statute, which permits a person to surrender to the law enforcement agency of the county that issued the warrant (and thus, waive his right to appear before a judge in the county of the arresting agency who can assess bond). 725 ILCS 5/109-2(b). Although the BOP does not contain a similar waiver provision, Plaintiff cites no authority to support a finding that individuals have a constitutional right *to waive* a bail hearing. Specifically, that portion of the statute does not "encompass a right" under the Fourth Amendment. Nor does the statute provide a mechanism by which the arrested person may post bail and be released from the police station of the arresting agency if an individual waives their right to a bond hearing in the arresting county pursuant to section (b). To the contrary, the statute requires that the arresting agency surrender a person who has waived their right to immediate bond review to a law enforcement agency of the county that issued the warrant. Accordingly, the statute at issue does not support Plaintiff's *Monell* claim.

Plaintiff argues that even if "the rights encompassed in Illinois statute 725 ILCS 5/109-2 are not guaranteed under the United States Constitution, the violations of state law nonetheless demonstrate that once administrative processing was completed, there was no legal justification or lawful purpose to continue to hold Tyler Lumar." Dkt. 366, at 9-10. Plaintiff reasons that "if the challenged policy [the BOP] obeyed state law rather than violated it…Chicago Police would have no legitimate reason or need to hold Lumar and would have surrendered him to the Lee County Sheriff." *Id.* Here too, taking aside the speculative facts upon which Plaintiff's argument is based, her reasoning is flawed and does not provide support for her Fourth Amendment claim against the City. *Id.,* at 10. The Illinois statute does not contain a provision requiring an arresting agency to collect bail on an out-of-county warrant. Per the Illinois statute, a person may waive their right to a bail hearing before a judge in the county of the arresting agency and exercise a right to *continued detention* until such time as the person is surrendered to the County that issued the warrant. The fact that this provision was not included in the BOP does not advance Plaintiff's *Monell* theory or support a finding that the City acted with deliberate indifference to detainees' Fourth Amendment rights.

Plaintiff also argues the BOP is contrary to Illinois law providing that, "[a] person for whom bail has been set has a right to be released from custody, subject to the conditions of the bail bond, when the appropriate amount of bail has been properly deposited." Dkt. 366, at 8, citing 725 ILCS 5/110-7 ("Bail Statute"). Plaintiff's argument again requires a selective reading of the statute. Section (b) of the Bail Statute recognizes a person's right to be released from custody, subject to the conditions of the bail bond, when the appropriate amount of bail has been properly deposited. 725 ILCS 5/110-7(b). However, Plaintiff disregards section (a), which requires bail to be deposited with the clerk of the court and sets forth a mechanism for that process. Here, consistent with the state statute, the BOP and GAO require individuals arrested on out-of-county warrants to appear in bond court where the clerk of the court can collect bail, as deemed appropriate. Even if the Illinois statute provided a "right"

to post bond and be released from the police station, enforcement would be a matter of state law. "The fourth amendment does not create remedies for violations of state or local law." *Portis v. City of Chicago,* 613 F.3d 702, 704 (7th Cir. 2010) *citing Virginia v. Moore,* 553 U.S. 164, 170 (2008).

> **D.     The General Administrative Order was Enacted by the Chief Judge of Cook County and was Valid.**

Plaintiff argues it was improper for the City to rely on the GAO, which she claims improperly modified Illinois law and was invalid. Dkt. 366, 12. Similar to her complaints regarding the BOP, Plaintiff alleges the GAO was inconsistent with the Illinois statute for Persons Arrested in Another County (725 ILCS 5/109-2). In order for Plaintiff to prove the GAO was invalid, Plaintiff must first show that the GAO was inconsistent with Illinois law. As discussed above, the GAO (and BOP) do not modify Illinois law and are in fact consistent with the statute, as the BOP and GAO require individuals arrested on out-of-county warrants to appear in bond court where the clerk of the court can collect bail, as deemed appropriate.

Moreover, even if the GAO was invalid, Plaintiff still fails to meet her burden in prevailing on her *Monell* claim against the City because she cannot establish the requisite degree of culpability on the City's part—namely, enforcement of the BOP, which stemmed from the GAO, were carried out with "deliberate indifference" to their known or obvious consequences. *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). As discussed in City Defendants' Memorandum (Dkt. 349, at 25), Plaintiff has presented no evidence of other similarly situated individuals whose constitutional rights have been violated as a result of enforcement of the City's policy of sending arrestees on out-of-county warrants to bond court. As a result, there is no evidence the City knew or should have known that enforcement of the GAO requiring CPD officers to take individuals to bond court following arrest on valid out-of-county warrants, would violate their constitutional rights. Therefore, regardless of whether the GAO was invalid, Plaintiff's *Monell* claim still fails.

### E. The City Cannot be Liable Under an Express Theory of *Monell* for Enforcing an Order of the Chief Judge.

The policy that individuals arrested on out-of-county warrants be taken to bond court was enacted by Cook County Chief Judge Evans and is set forth in the GAO. City Def.s' Ex. 12; DSOF, at ¶ 34. The BOP was created by CPD in response to the GAO and specifically advises CPD Bureau of Patrol officers that "Chief Judge Timothy C. Evans issued an order stating that every person arrested by the [CPD] on an arrest warrant issued by an Illinois State court outside of Cook County shall be required to appear in bond court." *See* City Def.s' Ex. 11; DSOF, at ¶ 35.

It is long settled that municipalities cannot be liable in section 1983 actions where the proximate cause of the alleged injury is state law, rather than municipal conduct. *E.g.*, *Snyder v. King*, 745 F.3d 242, 247 (7th Cir. 2014) ("To say that [a]…direct causal link exists when the only local government 'policy' at issue is general compliance with the dictates of state law is a bridge too far; under those circumstances, the state law is the proximate cause of the plaintiff's injury"). "When the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury." *Bethesda Lutheran Homes & Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998). This same reasoning applies to general administrative orders. General administrative orders are provided the force of law by Illinois Supreme Court Rule 21, which authorizes court proceedings against any person who fails to follow an administrative order of the chief circuit judge. *See* IL S. Ct. Rule 21(d)

Plaintiff's argument suggests that to avoid being accused of "adopting" an administrative order as the City's own policy, the City should encourage its officers to ignore, or at a minimum remain ignorant to, the court's administrative orders. Similar to the enforcement of state law, forcing municipalities to make policy decisions about whether to follow administrative orders "would render meaningless the entire body of precedent from the Supreme Court and 7th Circuit that requires culpability on the part of a municipality and/or its policymakers before the municipality can be held

liable under § 1983." *Surplus Store*, 928 F.2d at 791 n.4. Cases related to the enforcement of state law are instructive. *E.g., id.* at 791-92 (the choice to enforce state law is not alone sufficient to give rise to municipal liability also applies to administrative orders); *see also Bethesda Lutheran Homes*, 154 F.3d at 718-19; *Quinones v. City of Evanston*, 58 F.3d 275, 278 (7th Cir. 1995). Under these principles, the City cannot be liable for injuries, if any, proximately caused by the GAO. Accordingly, Plaintiff's *Monell* theory based on an express policy theory fails and must be dismissed.

### F. Plaintiff Abandoned her *de facto* or Widespread Practice Theory of Liability.

In her TAC, Plaintiff alleges the "Chicago Police Department engaged in a widespread practice in which it would arbitrarily and capriciously allow some persons arrested on Illinois warrants issued out of Cook County to post bond at the police station..." TAC at ¶ 107. Plaintiff also alleges that City of Chicago police officers "arbitrarily" enforce the BOP. TAC at ¶ 108. City Defendants moved for summary judgment on Plaintiff's implicit policy claim under *Monell* because there is no evidence in this case to create a genuine issue of material fact to support the existence of a widespread, enduring practice that violated constitutional rights in a systematic manner. Dkt. 349, at 17-18. Plaintiff failed to address her implicit policy theory in response to City Defendants' motion. By abandoning this theory in her Response, Plaintiff has conceded the issue. As a result, Plaintiff's *Monell* claim fails to the extent it is based on a *de facto* or widespread practice theory and the City is entitled to summary judgment.

### III. If City Defendants' Detention of Lumar Based on the BOP was Unlawful, the Detention Ended at the Moment Probable Cause Arose to Arrest Lumar for the Narcotics Charge.

Even if this Court finds that Lumar's lawful detention based on the warrant arrest became unlawful at the moment he was deemed ineligible to post bond directly from the station, any such unlawful detention ceased at the moment CPD Officers had probable cause to arrest Lumar for possession of narcotics. *See* Dkt. 116, at 19 (holding Chicago Police had probable cause to arrest

Lumar on 19 August 2016 after being notified by Cook County Sheriff Officer Wlodarski that Lumar possessed narcotics).

Plaintiff argues the City Defendants "started the ball rolling with Lumar's unconstitutional detention" because they "delivered Lumar to Cook County Jail…. and exposed him to Deputy Wlodarski." Dkt. No. 366, at 16. Plaintiff further alleges Lumar was still being held pursuant to the City's unconstitutional policy when he was returned to the 11th District. *Id.* This is simply untrue. Lumar was returned back to the 11th District because he was arrested for possession of narcotics based on Deputy Wlodarski's observations; not because the BOP required him to be returned back to CPD. Lumar was lawfully seized by CPD officers on 19 August 2016 based on the existence of probable cause to arrest Lumar on narcotics charges. Dkt. 116 (finding probable cause existed to arrest Lumar on narcotics charges based on statements from Sheriff Officer Wlodarski). Therefore, Plaintiff's claim for unlawful detention, including any claim for damages following his drug arrest in the Cook County lockup, must fail against the City Defendants.

## IV. Plaintiff Failed to Present Any Evidence to Refute That Lumar's Voluntary Act of Suicide Breaks Any Causal Link Between the Alleged Negligent Conduct and His Death.

As discussed in detail in City Defendants' Memorandum (Dkt. 349, at 20-23), Plaintiff cannot produce any evidence of causation because it is well established under Illinois law, that suicide is an intervening cause that breaks the chain of causation because suicide is not foreseeable. *Johnson v. Wal-Mart Stores*, 588 F.3d 439, 442 (7th Cir. 2009). Plaintiff urges this Court to find that this is "one of those rare cases" where suicide does not break the chain of causation and bar her wrongful death claim. However, she fails to provide the Court with any basis upon which a reasonable jury could make such a finding.

Plaintiff argues that Lumar's suicide was foreseeable because it is "reasonably foreseeable that an inmate may attempt suicide." Pl.'s Resp., Dkt. No. 366, at 19, citing *La Bombarbe v. Phillips Swager*

*Associates Inc.,* 130 Ill. App. 3d 896, 898 (4th Dist. 1985) and *Jutzi-Johnson v. U.S.,* 263 F.3d 753, 757 (7th Cir. 2001). However, as noted by the Court in *La Bomarbe,* that "the foreseeability among inmates in general is much less than that among those inmates [] who threaten to commit suicide." *La Bombarbe,* 263 F. 3d at 899. Here, Lumar never threatened suicide or demonstrated signs of suicidal ideation while in CPD custody. As discussed in City Defendants' Memorandum (Dkt. 349, p. 22) there is no evidence Lumar said or did anything to suggest he was suicidal on August 18, 2016.

The fact that Lumar was "upset, ranting and raving" about the events that occurred at CCSO when he returned to the 11th District is insufficient to support a finding that his suicide attempt was foreseeable. As noted by the court in *Jutzi-Johnson,* "the conditions of incarceration place the prisoners under considerable psychological strain." 263 F.3d at 757. "Abnormal behavior in jails and prisons is therefore common." *Id. See Crumpton v. Walgreen Co.,* 871 N.E.2d 905, 913 (Ill. App. 1st Dist. 2007) (finding the decedent's overt behavior that did not rise to the level of psychotic was insufficient to establish the suicide was reasonably foreseeable). There is no evidence that Lumar's behavior should have alerted the City to an increased risk that Lumar would attempt to take his life.

Plaintiff's argument that Lumar's suicide attempt was the foreseeable result of Lumar being wrongfully detained, falsely accused of a felony, and required to attend bond court is also unpersuasive. As in *Jutzi-Johnson,* no one knows why Lumar attempted suicide. But, more importantly, Plaintiff provides no support for a finding that individuals who have been wrongfully detained, falsely accused of a felony, and/or required to attend bond court are at an increased risk of suicide. Even assuming the City knew Lumar's felony drug arrest was false, which it did not, Plaintiff is unable to establish that Lumar's suicide attempt was a reasonably foreseeable result of any City conduct.

Plaintiff's reliance upon *Hankins v. Kappa Alpha Sorority, Inc.,* 447 F. Supp. 3d 672 (N.D. Ill. 2020), is misplaced. In *Hankins,* the court found the plaintiff had sufficiently plead foreseeability for the decedent's mental condition. *Hankins,* 447 F. Supp. 3d at 683. As Plaintiff correctly states, the

*Hankins* court made the determination that the elements of foreseeability were properly **plead** and denied defendants' motions to dismiss**:**

> At the pleading stage, these explicit allegations are enough to hold that suicide would have been a reasonably foreseeable outcome of the hazing. And for what it is worth, there does not appear to be any Illinois precedent foreclosing liability based on allegations that a victim explicitly told defendants that (1**) their misconduct was triggering symptoms of the victim's mental-health issues; and (2) the victim had a plan to commit suicide.** It is of course possible that discovery will eventually reveal facts that undermine the causal link. But for now, Hankins has sufficiently pled proximate causation.

*Hankins*, 447 F. Supp. 3d at 683 (emphasis added). The exception carved out in *Hankins* does not exist in this case because Lumar did not explicitly tell the defendants their conduct was triggering symptoms of mental-health issues and that he had a plan to commit suicide. Unlike *Hankins*, discovery is complete in this case, and after years of written and oral discovery, the record is void of anything close to the facts plead in *Hankins*. Here, Plaintiff relies on the fact that Lumar was "ranting and raving" about what occurred at CCSO. However, such evidence is insufficient to establish that it was reasonably foreseeable that Lumar would attempt suicide. See *Crumpton v. Walgreen Co.*, 871 N.E.2d at 913.

In support of her foreseeability argument, Plaintiff also asserts that she has "placed evidence into the record of the expert opinion of Dr. John Fabian" related to Fabian's post-mortem diagnosis that Lumar was suffering from "other specific personality disorder" and "other specified personality disorder with antisocial and borderline features." *See* Dkt. 366, at 19-20. However, Plaintiff fails to cite to any factual assertions in her Rule 56.1 Statement in support of her argument. Indeed, there are no factual assertions in Plaintiff's Rule 56.1 Statement related to findings by Dr. Fabian. *See* Dkt. 364, Pl.s' Stmt. of Add'l. Material Facts Pursuant to L.R. 56.1(b). Nor does she provide citation to anything in "the record" that supports her argument. This District has held that a party must support factual assertions by citation to a separately filed Rule 56.1 Statement. *See Malec v. Sanford*, 191 F.R.D. 581, 585–86 (N.D. Ill. 2000); *see also Raymond v. Ameritech*, Corp. 442 F.3d 600, 604 (7th Cir. 2006) ("district

courts are entitled to expect strict compliance with Local Rule 56.1"). Local Rule 56.1 statements and responses establish the bridge between the record and the parties' arguments, and the value of those statements and responses is largely lost if the parties' briefs ignore them and instead cite the record. *Mervyn v. Nelson Westerberg, Inc.,* 142 F. Supp. 3d 663, 666 (N.D. Ill. 2015). As the Seventh Circuit instructs, "[b]ecause of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filing." *Stevo v. Frasor,* 662 F.3d 880, 886–87 (7th Cir. 2011). Accordingly, Plaintiff's unsupported argument should be stricken.

The only reference to Dr. Fabian that City Defendants were able to identify in the record, is contained in "Plaintiff's Statement of [Additional] Material Facts and Supporting Exhibits Pursuant to Local Rule 56.1(b)," filed in response to the Sheriff's Office Defendants' Motion for Summary Judgment, which includes Dr. Fabian's report (Dkt. 362, ¶¶ 36-38; Ex. 12) and the Sheriff's Office Defendants' response thereto, which includes excerpts of Dr. Fabian's deposition testimony (Dkt. 373, ¶¶ 36-38; Dkt. 373-1, Fabian Dep. Tran). Because Plaintiff's factual assertions related to Dr. Fabian were not included in her statement of additional facts in response to City Defendants' motion, City Defendants have not had an opportunity to respond to those assertions. However, to the extent this Court allows Plaintiff to rely on Dr. Fabian's report and/or deposition testimony, they do not support a finding that Lumar's suicide was foreseeable. As an initial matter, there is no evidence that City Defendants had knowledge at the time of Lumar's incarceration that he suffered from "other specified personality disorder with antisocial and borderline features." Nor is there any evidence that City Defendants were aware that Lumar suffered from "severe mental illness." Indeed, Dr. Fabian, admitted Lumar never put anyone on notice that he was suicidal. (Dkt. 372, Ex. 2, Dr. Fabian Deposition Transcript Part II, 192: 11- 194:13, 197: 16-20, 199: 19-202:2, 206:8-22, 221:1-18). Dr.

Fabian acknowledged that Lumar's family did not believe Lumar was suffering from depression or had suicidal ideations. (Dkt. 362, Plaintiff's Exhibits in Support of Motion for Summary Judgment) Dr. Fabian acknowledges that Lumar's grandmother, Linda Augustus, did not believe Lumar was suffering from depression or anxiety. (*Id.*, at 21 of Report). He further acknowledges that neither Lumar's father, John Alcorn, nor Lumar's mother, Lisa Alcorn, believed Lumar to have any mental health issues. *Id.*, at 27, 35. Dr. Fabian opined it was "in the realm of possibility" that Lumar would attempt suicide at CPD. *Id.*, at 52 of Report. However, the "realm of possibility" is insufficient to show Lumar's attempted suicide was reasonably foreseeable to CPD and its officers. *Stanphill v. Ortberg*, 2018 IL 122974, ¶ 34. (Legal cause is established only when it can be said that the injury was reasonably foreseeable). In fact, Dr. Fabian concedes that his opinions are "somewhat speculative," and limited based on his inability to interview or evaluate Lumar. Dkt. 372, Ex. 1, at 43- 46.

Despite the lack of evidence to support the foreseeability of Lumar's suicide attempt, Plaintiff urges this Court to deviate from the "traditional rule" that suicide breaks the chain of causation. But Plaintiff fails to cite any legal or evidentiary support for a finding of foreseeability. Because there is no evidence to support a finding that Lumar's suicide attempt and resulting injuries were reasonably foreseeable, Plaintiff's claims must fail. Plaintiff cannot meet her burden to show the City Defendants' actions caused Lumar's death. Accordingly, all of Plaintiff's claims against City Defendants (Counts I, II, and IX) must fail.

## V.     Plaintiff Concedes Plaintiff's Wrongful Death Claim is not Based on the Actions of Detention Aide Errum (Count IX).

Plaintiff alleges in her TAC that the City through its employee, Detention Aide Jonathan Errum, knew Lumar was in need of immediate medical care as Errum knew Lumar was suicidal, and willfully and wantonly failed to take reasonable actions to summon medical care, failed to put Lumar on suicide watch and instead placed him in a cell unattended. TAC, ¶ 311. Plaintiff also alleges that "Errum's actions in failing to have a cut down/rescue tool on hand deprived Lumar of oxygen needed

to survive" and was the proximate cause of his injuries and ultimate death. TAC ¶ 312.

In Plaintiff's Response, she concedes that she is no longer making a claim on the insufficiency of the City's equipment, personnel, supervisor, or facilities. Dkt. 366, p. 31. Plaintiff further admits this Court previously struck her claim regarding the City's failure to provide cut-down tools to detention personnel, which allegedly caused a delay in the attempted rescue of Lumar. Plaintiff further concedes the allegations regarding Errum's failure to provide suicide screening is not a stand-alone claim, but rather Plaintiff believes such allegation is evidence offered to demonstrate foreseeability. Dkt. 366, p. 33.

Plaintiff's Response confirms that Plaintiff's sole claim in this case is "directed at the unconstitutional BOP Order" and Cook County Sheriff Officer Wlodarski's fabrications that caused Lumar to be illegally detained against his will. *Id.* As such, City Defendants are entitled to summary judgment on Count IX of Plaintiff's TAC.

## CONCLUSION

For the reasons set forth above and in City Defendants' Memorandum, City Defendants request this Court enter judgment in their favor and against Plaintiff on each claim and for any other relief this Court deems appropriate.

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 17, 2021, I served the foregoing City's Defendant's Reply in Support of their Motion for Summary Judgment on all counsel of record via the Court's (ECF) electronic filing service.

s/Elizabeth A. Ekl             